# **Exhibits**

1) Complaint
2) Filed Summons
3) Civil Case Cover Sheet
4) First Amended Complaint
5) Proof of Service
6) Proof of Service
7) Proof of Service
8) Certificate of Service
9) Second Amended Complaint
10) Demurrer filed by Capital One Auto Finance
11) Demurrer filed by Ron Baker Chevrolet ("RBC")
12) Motion to Strike filed by RBC
13) Opposition to Motion to Strike filed by Plaintiff
14) Opposition to RBC's Demurrer
15) Opposition to Capital One's Demurrer
16) Request for Judicial Notice filed by Capital One
17) Reply in Support of Capital One's Demurrer
18) Reply in Support of RBC's Motion to Strike
19) Reply in Support of RBC's Demurrer
20) Tentative Ruling
21) Tentative Ruling
22) Tentative Ruling
23) Minutes
24) Minutes
25) Minutes
26) Answer filed by Capital One
27) Cross-Complaint filed by Capital One
28) Answer filed by RBC
29) Cross-Complaint filed by RBC

30) Amended Answer filed by RBC
31) Proof of Service of Third Party Complaint
32) Case Management Statement filed by Plaintiff
33) Case Management Statement filed by RBC
34) Case Management Statement filed by Capital One
35) Minutes
36) Notice of Hearing
37) Notice of Jury Fee Deposit by RBC
38) Answer filed by RBC
39) Notice of Jury Fee Deposit filed by Plaintiff
40) Answer filed by BPI Custom Printing, Inc. ("BPI")
41) Case Management Statement filed by BPI
42) Minutes
43) Motion to Quash Subpoena filed by Perry Ford
44) Motion to Quash Subpoena filed by Marvin K. Brown
45) Motion for Judgment on the Pleadings filed by BPI
46) Opposition to Motion for Judgment on the Pleadings
47) Opposition to Request for Judicial Review filed by BPI
48) Reply in Support of Motion filed by BPI
49) Tentative Ruling
50) Minutes
51) Notice of Ruling on Motion for Judgment on the Pleadings
52) Stipulation
53) Stipulation
54) Proof of Service
55) Motion to Compel Discovery filed by Plaintiff
56) Motion to Compel Discovery filed by Plaintiff
57) Motion to Compel Discovery filed by Plaintiff
58) Motion to Compel Discovery filed by Plaintiff
59) Ex Parte Application filed by Plaintiff
60) Minutes
61) Motion for Class Certification filed by Plaintiff

EXHIBIT 1

1 | ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN: 109740
2 | Christopher P. Barry, SBN: 179308
Angela J. Smith, SBN: 216876
3 | 10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
4 | TEL: (858) 348-1005 / FAX: (858) 348-1150

5 | ROMANO STANCROFF & MIKHOV, PC
Steve Mikhov, SBN: 224676
6 | 640 S. San Vicente, Suite 350
Los Angeles, California 90048
7 | TEL:  (323) 936-2274
FAX:  (323) 939-7973

8 |

Attorneys for Plaintiff
9 |

CENTRAL DIVISION

2011 DEC 30  PM 2: 36

CLERK SUPERIOR COURT
SAN DIEGO COUNTY. CA

10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 | **IN AND FOR THE COUNTY OF SAN DIEGO**

12 | JOSE MONDRAGON, individually and on behalf of all others similarly
13 | situated,

14 |                Plaintiff,

15 |        v.

16 | RON BAKER CHEVROLET, a California Corporation;
17 | CAPITAL ONE AUTO FINANCE, a business entity form unknown; and
18 | DOES 1 through 10, inclusive,

19 |

20 |                Defendants.

21 |

CASE NO.  37-2011-00103236-CU-CO-CTL

**CLASS ACTION**

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND DAMAGES:

1.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS 1 CLAIM;
2.  VIOLATION OF THE AUTOMOBILE SALES FINANCE ACT – INDIVIDUAL AND CLASS 1 CLAIM;
3.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES – CLASS 1 CLAIM;
4.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS 2 CLAIM;
5.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES – CLASS 2 CLAIM;
6.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS 3 CLAIM;
7.  VIOLATION OF THE AUTOMOBILE SALES FINANCE ACT – CLASS 3 CLAIM;
8.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES – CLASS 3 CLAIM;
9.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – INDIVIDUAL CLAIM; AND
10. UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES - INDIVIDUAL CLAIM.

COPY

Plaintiff JOSE MONDRAGON, individually as to all causes of action, and on behalf of all others similarly-situated as to the First through Eighth Causes of Action, alleges as follows on information and belief, formed after an inquiry reasonable under the circumstances:

**INTRODUCTION**

1.     Defendant Ron Baker Chevrolet ("Ron Baker") is an automobile dealership in National City, California, that engages in a series of unlawful and deceptive business practices. These business practices are engaged in for one purpose – to sell vehicles to customers and earn extra profits. In this action Plaintiff seeks to put an end to these unlawful and deceptive practices and provide remedies for other affected consumers. The unlawful and deceptive practices engaged in by Ron Baker for which Plaintiff seeks class-wide redress relate to Ron Baker's systematic violations of California's financial disclosure laws.

2.     In every vehicle sale in California, dealerships – such as Ron Baker – submit various fees to the California Department of Motor Vehicles ("DMV") on behalf of their customers. Dealerships are legally required, under the Automobile Sales Finance Act (Civil Code Section 2981 *et seq.*) ("ASFA"), to disclose fees paid to public officials, including the DMV, on customers' Retail Installment Sale Contracts ("RISC"). For example, dealerships must disclose license fees paid to the DMV on Line 2.A. and "registration, transfer, and titling fees" paid to the DMV on Line 2.B. of the RISC.

3.     Moreover, in new vehicle sales to California residents, vehicle purchasers will *always* be charged registration and titling fees. (Vehicle Code Section 9250 *et seq.*) In used vehicle sales, purchasers will *always* have to pay a transfer fee to the DMV to transfer registration from the prior owner. (Vehicle Code Section 9255.) Thus, one or more of these fees will be due in *every* vehicle sale in California to California residents.

4.     However, Plaintiff is but one of many customers who, during the past four years, purchased a vehicle from Ron Baker and who entered into a RISC prepared by

1

1  Ron Baker that failed to itemize and disclose registration, transfer, and/or titling fees.

2  Regarding new and used vehicles alike, Ron Baker misstated the amount of license,

3  registration, transfer, and titling fees due and owing to the DMV.

4       5.     Additionally, the California Department of Motor Vehicles ("DMV")

5  established a Business Partner Automation Program whereby "Business Partners" can

6  offer to perform certain registration matters in exchange for a fee.  The Code of

7  Regulations permits Business Partners to charge a fee to consumers who agree to make

8  use of the Program.  The Code of Regulations further requires Business Partners

9  disclose the fee on any purchase contract as an "Optional DMV Electronic Filing Fee."

10  Ron Baker is permitted to charge the consumers – who *agree* to participate in the

11  Program – a maximum fee. However, it has been Ron Baker's practice to automatically

12  insert a charge for the Optional DMV Electronic Filing Fee on customers' purchase

13  contracts, regardless of whether the customer was even informed of, let alone agreed

14  to pay, for the extra service.

15       6.     Plaintiff was also defrauded by Ron Baker during the course of his

16  individual transaction. First, contrary to California law, Ron Baker sold the subject

17  vehicle to Plaintiff for more than the advertised price.  Second, Ron Baker

18  misrepresented that the price of the vehicle included the cost of an alarm and then

19  charged Plaintiff extra for the alarm.  Third, Ron Baker "packed" Plaintiff by selling

20  him after-market products, such as GAP insurance and a service contract, without

21  Plaintiff's knowledge or consent. Fourth, Ron Baker failed to disclose that the vehicle

22  Plaintiff was purchasing had previously been involved in an accident. Fifth, Ron Baker

23  improperly ran Plaintiff's credit without his permission.  Finally, Ron Baker failed to

24  properly disclose Plaintiff's deferred down payment.

25       7.     The conduct herein described violates, *inter alia*, the Automobile Sales

26  Finance Act ("ASFA") (Civil Code § 2981, *et seq.*), the Consumers Legal Remedies Act

27  ("CLRA") (Civil Code § 1750, *et seq.*), and the Unfair Competition Law ("UCL") (Bus.

28  & Prof. Code § 17200, *et seq.*).

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

9.     This Court has jurisdiction over Defendants because each are individuals, associations, or corporations that are either authorized to conduct or, in fact, do conduct substantial business in the State of California, County of San Diego.

10.     Venue is proper in this County pursuant to Code of Civil Procedure § 395(b) because the acts upon which this action is based occurred in this County. The contracts for products and services at issue in this case were entered into in this County and communications from Defendants were received in this County. Thereby, Plaintiff and Class members were injured and/or subjected to irreparable harm in this venue. Defendants received substantial compensation and profits from its products and services in this County, caused misrepresentations to be disseminated, entered into agreements and transactions, and breached agreements in this County. Thus, Defendants' liability arose primarily in this County.

## PARTIES

11.     Plaintiff Jose Mondragon is an individual who, at all times material, resided in the City of Chula Vista, County of San Diego, State of California.

12.     Defendant Ron Baker Chevrolet ("Ron Baker"), a California corporation, is a new and used car dealership conducting business in the City of National City, County of San Diego, State of California.

13.     Defendant Capital One Auto Finance ("Capital One"), business entity form unknown, is and was, at all times material, doing business in the County of San Diego, State of California. Plaintiff is informed and believes that Capital One was previously doing business in California, as a Texas corporation, under the corporate name of Capital One Auto Finance, Inc., but its registration with the California Secretary of State was surrendered in 2011.

14.    Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendants sued herein as Does 1 through 10, inclusive, under the provisions of Section 474 of the California Code of Civil Procedure. Defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are legally liable to Plaintiff and the class. Plaintiff will set forth the true names and capacities of the fictitiously-named Defendants together with appropriate charging allegations when ascertained.

15.    All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

16.    Each Defendant, whether actually or fictitiously-named herein, was the principal, agent (actual or ostensible), or employees of each other Defendant and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff and the classes for the relief prayed for herein.

## CLASS ALLEGATIONS

17.    This action is brought, and may properly be maintained, as a class action pursuant to the provisions of California Code of Civil Procedure Section 382 and/or Civil Code Section 1781(a).

18.    Plaintiff brings this action on behalf of himself and all others similarly-situated as a representative member of the following proposed classes:

(a)    "CLASS 1:" All persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from Ron Baker for personal use to be registered in the State of California, and (2) signed a RISC that failed to separately disclose, on the RISC, the amounts paid for license fees and/or the amounts paid for registration, transfer, and/or titling fees.

///

1   Plaintiff proposes a Subclass for all persons for whom Capital One is the holder and/or
2   assignee of their RISC.

3         (b)    "**CLASS 2:**" All persons who, in the four years prior to the filing
4              of this complaint, (1) purchased a vehicle from Defendant Ron
5              Baker for personal use, (2) signed a Retail Installment Sale
6              Contract ("RISC"), and (3) Ron Baker automatically included a
7              charge on the RISC for the "Optional DMV Electronic Filing Fee."

8         (c)    "**CLASS 3:**" All persons who, in the four years prior to the filing of
9              this complaint, (1) purchased a vehicle in California for personal
10             use to be registered in the State of California, (2) signed a RISC
11             that failed to separately disclose on the RISC the amounts paid for
12             registration/transfer/titling fees, and (3) whose RISC was assigned
13             to Capital One.

14      19.    In this lawsuit, Plaintiff and the Classes seek both equitable relief,
15  including declaratory, injunctive, restitutionary, and other equitable monetary relief
16  and economic and statutory damages as set forth more fully below, including, but not
17  limited to, full restitution and/or rescission of any RISC entered into by any Class
18  Member.

19      20.    Specifically excluded from the proposed Classes are the Court and its
20  staff, Defendants, any entity in which any of the Defendants has a controlling interest,
21  and the officers, directors, affiliates, legal representatives, heirs, successors,
22  subsidiaries, and/or assigns of any such individual or entity.

23  **A.   NUMEROSITY OF THE CLASSES**

24      21.    The proposed Classes are so numerous that the individual joinder of the
25  Class Members in one action is impracticable. The exact number and the identities of
26  the Members of the Classes are unknown at this time and can only be ascertained
27  through appropriate investigation and discovery.

28  ///

**B.  EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT**

22.   Common questions of law and fact arising out of the claims here at issue exist as to all members of the Classes and predominate over any individual issue. These common legal and factual questions include, but are not limited to, the following:

a.   whether Ron Baker and/or Capital One violated this state's consumer protection statutes;

b.   whether Ron Baker's failure to separately itemize and disclose license fees from registration/transfer/titling fees on customers' RISCs and Capital One's acceptance of and failure to require RISCs containing proper itemizations constitutes a violation of the ASFA, CLRA, and/or the UCL;

c.   whether Ron Baker's practice of automatically charging consumers an "Optional DMV Electronic Filing Fee" constitutes a violation of the CLRA, and/or the UCL;

d.   the amount of revenues and profits Ron Baker and Capital One received, and/or the amount of monies or other obligations imposed on, or lost by, Class Members as a result of such wrongdoing;

e.   whether Class Members are threatened with irreparable harm and are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

f.   whether Class Members are entitled to rescission, payment of actual, incidental, consequential, exemplary, punitive, and/or statutory damages plus interest thereon, and, if so, what is the nature of such relief.

**C.  TYPICALITY OF CLAIMS**

23.   Plaintiff's claims are typical of the claims of members of the Classes.

24.   Ron Baker engaged in the standard practice and/or procedure of failing to separately itemize and disclose registration, transfer, and/or titling fees paid by

1   Plaintiff and Class 1 Members on Line 2.B. of the Itemization of the Amount Financed
2   on their RISCs. In fact, Plaintiff's and Class 1 Members' RISCs failed to list any
3   amount for registration/transfer/titling fees on Line 2.B.   Rather, those RISCs
4   contained the notation "Incl." on Line 2.B.  In Plaintiff's case, there was a particular
5   amount due to the DMV for a transfer fee for the vehicle, which amount should have
6   been disclosed on Line 2.B. rather than a notation that such fees were "Incl."  The
7   notation "Incl.", which presumably is short for "Included," does not inform the customer
8   the amount of the fees due, whether they are included in another amount disclosed on
9   the contract, or the dealership is paying the fees as "included" in the amount otherwise
10  being paid for the vehicle.  The use of the notation "Incl." fails to provide the consumer
11  any information about the amount of the fees and whether the consumer is charged for
12  the fees.

13      25.     Additionally, Ron Baker engaged in the standard practice or procedure
14  of automatically including a charge in the RISCs of Plaintiff and each Class 2 Member
15  for the "Optional DMV Electronic Filing Fee" without disclosure to Plaintiff and the
16  Class 2 Members that they did not have to pay this fee.

17      26.     The RISCs entered into by Plaintiff and the Class 3 Members were all
18  assigned to Capital One and failed to itemize on their face the
19  registration/transfer/titling fees due in the transaction.

20      27.     Accordingly, Plaintiff and all members of the Classes had their legal
21  rights infringed upon, sustained injuries, losses, and damages as described herein,
22  and/or are facing irreparable harm arising out of Defendant Ron Baker and Capital
23  One's common course of conduct. The right of Plaintiff and each member of the Classes
24  to payment of any actual, incidental, consequential, exemplary, and/or statutory
25  damages or restitution resulting therefrom were proximately caused by Defendants'
26  wrongful conduct, in violation of state law as alleged herein.

27  / / /

28  / / /

**D.     ADEQUATE REPRESENTATION**

28.    Plaintiff will fairly and adequately protect the interests of the members of the Classes in that he does not have irreconcilable conflicts with or interests materially antagonistic to those of other Class Members.

29.    Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer class actions.

**E.     SUPERIORITY AND SUBSTANTIAL BENEFITS OF CLASS LITIGATION**

30.    To the extent it is an element for establishing class certification for certain causes of action, a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy and, as applicable, possesses substantial benefits.    Individual joinder of all Class Members is impracticable, and no other group method of adjudication of all claims asserted herein is more efficient and manageable while at the same time provides all the remedies available to ensure the full purpose of this State's consumer protection laws are effectuated.  Furthermore, as the damages suffered by each individual Class Member may be relatively small and the relief sought discrete, the expense and burden of individual Class Members to redress the wrongs done to them, and the cost to the court system of adjudicating such litigation on an individual basis, would be substantial. To counsel's knowledge there has not been any substantial litigation concerning this controversy commenced against the parties.  It is not anticipated that there will be any difficulties in the management of this litigation due to the focus of the wrongdoing on Ron Baker and Capital One's conduct and their knowledge of the true facts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expenses of all parties and the court system resulting from multiple trials asserting the same factual issues. The conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of

each Class Member as compared to other methods for the group-wide adjudication of this controversy. Thus, the Classes and the court system achieve substantial benefits by the prosecution of this action on a class-wide basis by avoiding the burden of multiple litigation involving identical claims, as well as by aiding legitimate business enterprises in curtailing illegitimate competition and ensuring a therapeutic effect on those companies such as Ron Baker and Capital One that indulge in fraudulent practices.

31.   Notice of the pendency of any resolution of this action can be provided to the Class Members by publication and/or individual mailed notice, as appropriate under California law, and the costs of such notice are properly imposed on Ron Baker and/or Capital One.

32.   This action should be certified to proceed on a class-wide basis because:

a.   the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Ron Baker and/or Capital One;

b.   due to the nature of the relief sought, the prosecution of separate actions by individual Class Members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications or could substantially impair or impede the ability of such Class Members to protect their interests;  and

c.   Ron Baker and Capital One act or refuse to act in respects generally applicable to the Classes, thereby making appropriate final injunctive relief with regard to the Class Members as a whole in terms of the equitable relief sought.

///

///

## SUMMARY OF FACTS COMMON TO CLASS 1

33.    During the Class period, it was Ron Baker's practice and/or procedure to fail to disclose on RISCs any amounts due and owing to the California DMV for registration, transfer, and/or titling fees.   Rather than separately itemize the registration, transfer, and/or titling fees on Line 2.B. of the Itemization of the Amount Financed Section on its customers' RISCs, Ron Baker instead uses the notation "Incl.," failing to indicate where or in what charge, if any, the registration/transfer/titling fees are included in "Incl." or "included."

34.    Each Member of Class 1 purchased a vehicle from Ron Baker for personal use to register in the State of California.   Each Class 1 Member executed a RISC with Ron Baker.   Each Class 1 Member's RISC failed to separately itemize and disclose the registration/transfer/titling fees on Line 2.B., as required by California law.   Each Class Member's RISC states the registration/transfer/titling fees are "Incl."

35.    Each member of the Subclass had their RISC assigned to Capital One, or had their RISC acquired by Capital One such that Capital One is the holder and/or assignee of their RISC.

## SUMMARY OF FACTS COMMON TO CLASS 2

36.    During the Class period, it was also Ron Baker's practice and/or procedure to charge all customers an "Optional DMV Electronic Filing Fee," regardless of whether or not the customer had agreed to pay such a fee.

37.    Each Class 2 Member purchased a vehicle from Ron Baker, for personal use, and executed a RISC with Ron Baker for that vehicle. Each Class 2 Member's RISC, which was prepared by Ron Baker, included a charge for the "Optional DMV Electronic Filing Fee" in the Itemization of the Amount Financed Section of the RISC.

## SUMMARY OF FACTS COMMON TO CLASS 3

38.    During the Class period, it was Capital One's practice to accept assignment of RISCs for vehicle purchases in California where the amount due and owing to the California DMV for registration/transfer/titling fees were not separately

disclosed on the RISC. Rather than only accept assignment of RISCs that properly and separately itemize the registration/transfer/titling fees on Line 2.B. of the Itemization of the Amount Financed section on the RISCs, Capital One accepted assignment of RISCs that failed to separately disclose the registration/transfer/titling fees on the RISC. The RISCs Capital One accepted assignment of fail to contain all disclosures required under California law.

39.     Each Member of Class 3 purchased a vehicle in California for personal use to be registered in the State of California. Each Class 3 Member executed a RISC that was assigned to Capital One. Each Class 3 Member's RISC failed to separately itemize and disclose the registration/transfer/titling fees on Line 2.B., as required by law.

## SUMMARY OF FACTS RELATIVE TO PLAINTIFF'S INDIVIDUAL PURCHASE

40.     On April 28, 2010, Jose Mondragon went to Ron Baker's dealership in National City to purchase a vehicle. Mr. Mondragon selected a 2008 Chevrolet Silverado, VIN: 3GCEC13CX8G220374 (the "Vehicle"). The Vehicle had a window sticker identifying the price as approximately $17,000.

41.     While negotiating with the salesman Carlos Ortiz, Mr. Mondragon was told Ron Baker was including an alarm at no charge to him. Mr. Mondragon told Ron Baker he could afford to pay approximately $450 as a monthly payment. Mr. Ortiz told Mr. Mondragon the best he could get him was $550, and he would need to make a $4,500 down payment in order to have monthly payments of approximately $550.

42.     Mr. Mondragon never attended high school, and is not able to read and understand written English. Similarly, his ability to read and understand written Spanish is also limited. Mr. Mondragon's transaction was negotiated entirely in Spanish.

43.     When Mr. Mondragon told Mr. Ortiz he did not have $4,500 for a down payment, Ron Baker told him he could pay a portion of the $4,500 that day and the rest

1   at a later date.  Based on Mr. Ortiz's representations, Mr. Mondragon agreed to

2   purchase the Vehicle.

3       44.   Mr. Mondragon was then introduced to Ron Baker's Finance Manager,

4   Mr. Robert Montejano.   Ron Baker prepared a Retail Installment Sale Contract

5   ("RISC #1") for Mr. Mondragon to purchase the Vehicle.  Mr. Mondragon was simply

6   instructed where to sign and initial the documents.  Attached hereto as Exhibit 1 is a

7   true and correct copy of RISC #1, which was executed by Mr. Mondragon and Ron

8   Baker on April 28, 2010.

9       45.   RISC #1 states the cash price for the Vehicle is $23,995, which was almost

10  $7,000 more than the advertised price.  RISC #1 also included a charge for $500 for a

11  theft deterrent device or alarm, even though Ron Baker told Mr. Mondragon the alarm

12  was included at no cost.

13      46.   RISC #1 included a $29 charge for the "Optional DMV Electronic Filing

14  Fee," even though no one at Ron Baker asked Mr. Mondragon whether he wanted to

15  pay the fee to receive the service.

16      47.   RISC #1 included a $2,000 charge for a service contract from Western

17  General, even though Ron Baker had not discussed with Mr. Mondragon the purchase

18  of a service contract for the Vehicle.  Furthermore, contrary to California law, Ron

19  Baker did not provide Mr. Mondragon with any paperwork relating to a service

20  contract.

21      48.   Additionally, RISC #1 included a $750 charge for GAP Insurance. As with

22  the Optional DMV Electronic Filing Fee and the service contract, Ron Baker did *not*

23  discuss with Mr. Mondragon whether he wanted to purchase a Gap Contract, and

24  Mr. Mondragon does not know what Gap Insurance is.

25      49.   Moreover, RISC #1 includes a charge $427 as "license fees" on Line 2.A.

26  of the Itemization of the Amount Financed Section and includes the notation "Incl." on

27  Line 2.B. for registration, transfer, and titling fees, without disclosing the amount due

28  or what other figure on the contract the amount due might be included in. To the

1    extent the registration, transfer, and titling fees were included on another line, such

2    as the license fees line, the license fee disclosure is therefore inaccurate and overstated.

3         50.     Finally, RISC #1 states Mr. Mondragon made a $4,500 cash down

4    payment. In fact, Mr. Mondragon did not pay any money on April 28, 2010. Rather,

5    Mr. Mondragon's first payment towards the down payment on the Vehicle was only

6    $1,800, which was made on the following day, April 29, 2010. RISC #1 does not

7    disclose that Mr. Mondragon and Ron Baker agreed his down payment would be paid

8    in parts, or what the schedule was for Mr. Mondragon to make the payments.

9         51.     On May 3, 2010, Mr. Mondragon returned to Ron Baker. While there,

10   Mr. Montejano told Mr. Mondragon he had to sign a new purchase contract for the

11   Vehicle. It was not explained to Mr. Mondragon why he needed to sign a new contract,

12   nor was Mr. Mondragon told that if he did not want to sign a new contract he could

13   return the Vehicle and get his down payment back. Not knowing he had any other

14   option, Mr. Mondragon agreed to sign another contract for the Vehicle.

15        52.     In the new Retail Installment Sale Contract for the Vehicle ("RISC #2"),

16   Ron Baker raised Mr. Mondragon's Annual Percentage Rate ("APR") from 15.99% to

17   16.85%, decreased the cash price of the car by $500, and decreased the cost of the

18   service contract by $500. The net effect of the changes was to reduce Mr. Mondragon's

19   monthly payment from $554.35 to $543.42. However, none of these changes were

20   discussed with Mr. Mondragon. Attached hereto as Exhibit 2 is a true and correct copy

21   of RISC #2, which was executed by Mr. Mondragon and Ron Baker on or about

22   May 3, 2010.

23        53.     RISC #2 still included a charge for the alarm, a charge for a Gap Contract,

24   a charge for a service contract, and a charge for the "Optional DMV Electronic Filing

25   Fee," all without Mr. Mondragon's knowledge he was being charged for these items.

26        54.     Again, RISC #2 (like RISC #1) did not list an amount for registration,

27   transfer, and titling fees – merely included the notation "Incl." on Line 2.B. of the

28   Itemization of the Amount Financed Section of the RISC. Ron Baker disclosed a $427

1  charge as "license fees" on Line 2.A. of RISC #2, which is believed to be an inflated or

2  false amount for license fees actually due and owing to the DMV.

3    55.    Finally, RISC #2 stated Mr. Mondragon had made a $4,500 cash down

4  payment. This statement was false when made by Ron Baker. As of May 3, 2010,

5  Mr. Mondragon had only paid $1,800 as a down payment.   In fact, while

6  Mr. Mondragon was at the dealership on May 3, 2010, Mr. Montejano told him he had

7  30 days to pay the remaining $2,700 due on the down payment.   To that end,

8  Mr. Mondragon paid Ron Baker $2,700 on June 1, 2010.

9    56.    Plaintiff is informed and believes that Ron Baker did not pay *any* money

10  to the DMV for license, registration, transfer, or titling fees for the Vehicle.  The

11  Vehicle had previously been registered in July 2009 and, accordingly, the only fee due

12  and owing when Mr. Mondragon purchased it in May 2010 should have been the $15

13  transfer fee.  Moreover, Mr. Mondragon received a bill from the DMV, and paid the

14  2010 license and registration fees on June 30, 2010, within a few months of purchasing

15  the Vehicle from Ron Baker. As such, Ron Baker could not have submitted to the DMV

16  the $427 it listed on RISC # 2 and that it collected from Mr. Mondragon.  Ron Baker

17  has not, to this date, refunded any of the improper $427 charge to Mr. Mondragon.

18    57.    Subsequent to his purchase of the Vehicle, Mr. Mondragon has come to

19  believe the Vehicle was in an accident prior to it being sold to him, a fact Ron Baker

20  did *not* disclose to him at the time of the purchase.

21    58.    Finally, although Ron Baker obtained Mr. Mondragon's credit scores,

22  Mr. Mondragon was never asked to, and never did, sign a credit application

23  authorizing Ron Baker to obtain his credit scores.

24    59.    At some point after May 3, 2010, RISC #2 for the sale of the Vehicle to

25  Plaintiff was assigned by Ron Baker to Defendant Capital One.  The improper

26  disclosure of the registration/transfer/titling fees appears on the face of RISC #2.

27    60.    RISC #2 for the Vehicle included the following language:

28

1   NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT
2   IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE
3   DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR
4   SERVICES OBTAINED PURSUANT HERETO OR WITH THE
5   PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR
6   SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR
7   HEREUNDER.

8   61.   This "holder" clause in RISC #2 makes Capital One liable for all claims
9   and defenses that could be raised against Ron Baker, with respect to the sale of the
10  Vehicle.

11  62.   Plaintiff has made his monthly payments to Capital One in accordance
12  with the terms of RISC #2.

13  63.   California Vehicle Code § 11614(a) provides it is unlawful for a lessor-
14  retailer licensed in this state to "Make or disseminate, or cause to be made or
15  disseminated, before the public in this state, in any newspaper or other publication, or
16  any advertising device, or by oral representation, or in any manner or  any means
17  whatsoever, any statement that is untrue or misleading and that is known, or which
18  by the exercise or reasonable care should be known, to be untrue or misleading . . . ."

19  64.   California Vehicle Code § 11713(a) provides it is unlawful for any licensed
20  dealer to "Make or disseminate, or cause to be made or disseminated, before the public
21  in this state, in any newspaper or other publication, or any advertising device, or by
22  public outcry or proclamation, or in any manner or  any means whatsoever, any
23  statement that is untrue or misleading and that is known, or which by the exercise or
24  reasonable care should be known, to be untrue or misleading . . . ."

25  65.   Ron Baker is, on information and belief, a licensed dealer and lessor-
26  retailer in this state within the terms of the California Vehicle Code Sections 285 and
27  373.

28  ///

## FIRST CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et seq.* – Class 1 Claim – Injunctive Relief Only – As Against Defendants Ron Baker, Capital One, and Does 1-10**

66.  Plaintiff, on her own behalf and on behalf of the Class 1 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 65, inclusive, of this Complaint and further alleges as follows.

67.  The vehicles purchased by Plaintiff and each Class 1 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

68.  Plaintiff and each Class 1 Member are "consumers" pursuant to Civil Code Section 1761(d).

69.  Defendants Ron Baker, Capital One, and Does 1-10 are "persons" pursuant to Civil Code Section 1761(c).

70.  The advertisement and sale of the vehicles to Plaintiff and each Class 1 Member are "transactions" pursuant to Civil Code Section 1761(e).

71.  The acts and/or practices engaged in by Ron Baker and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 1 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

(a)  Ron Baker represented that the transactions had been supplied in accordance with previous representations when they had not; and

(b)  Ron Baker represented that the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

72.  Plaintiff alleges the amounts disclosed as "license fees" on his RISC, and the RISCs of the members of Class 1, were false and overstated.

///

73. Plaintiff alleges the notation "Incl." as used to disclose the amount of registration, transfer, and titling fees due is false and misleading, as it does not indicate whether the amount due for those fees is included in the purchase price, included in some other disclosure on the RISC, or being paid by Ron Baker.

74. On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 1 identified above. The letter was received by Ron Baker on December 14, 2011.

75. Plaintiff and the Class 1 Members relied on Ron Baker to prepare legal and enforceable contracts as a licensed automobile dealership. Plaintiff and Subclass Members relied on Capital One to accept for assignment only legal and enforceable contracts as an assignee and holder to their conditional sale contracts. Plaintiff and the Class 1 and Subclass Members suffered damages by making payments pursuant to unenforceable contracts and/or paying overstated license fees to which they are entitled to refunds. Plaintiff was not aware of Ron Baker's and Capital One's deceptive conduct until contacting attorneys in 2011.

76. The Consumers Legal Remedies Act provides that a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification. Plaintiff will amend this Complaint to add a claim for damages under the Consumers Legal Remedies Act for violation of Civil Code Sections 1770(a)(14) and (16), including statutory damages of up to $1,000 per consumer and/or up to $5,000 per consumer who qualifies as a "senior citizen" under the CLRA, should the statutory thirty-day period expire without a complete cure of Ron Baker's violations.

77. Section 1780(a)(2) of the Act provides that a consumer is entitled to an injunction prohibiting acts or practices which violate the Act. Plaintiff alleges Ron Baker has a pattern and practice of failing to properly and separately itemize, on RISCs, the registration, transfer or titling fees owing on the vehicles it sells,

1   overstating the amount of license fees due, and/or violating the Single Document Rule

2   of the ASFA.

3       78.   Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to

4   Capital One and/or Capital One is the holder of these RISCs. The improper disclosure

5   of the registration/transfer/titling fees appears on the face of the RISCs.

6       79.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,

7   except for damages at this time, including an order enjoining Defendants from the acts,

8   methods, and practices as set forth in this Complaint, and attorneys' fees and costs

9   according to proof at time of trial.

10                      **SECOND CAUSE OF ACTION**

11    **Action for Rescission of Conditional Sales Contract for the Sale of Goods**

12    **Pursuant to Civil Code § 1689(b) for Violation of the Automobile Sales**

13    **Finance Act, Civil Code Section 2981, *et seq.* – Individual and Class 1**

14    **Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

15      80.   Plaintiff, on his own behalf and on behalf of the Class 1 Members,

16   incorporates by reference each and every allegation set forth in Paragraphs 1 through

17   79, inclusive, of this Complaint and further alleges as follows.

18      81.   The RISCs executed by Plaintiff and each Class 1 Member for their

19   vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a).

20      82.   Ron Baker, Capital One, and Does 1-10 are "sellers" pursuant to Civil

21   Code Section 2981(b).

22      83.   Plaintiff and each Class 1 Member are "buyers" pursuant to Civil Code

23   Section 2981(c).

24      84.   The vehicles purchased by Plaintiff and each Class 1 Member are "motor

25   vehicles" pursuant to Civil Code Section 2981(k).

26      85.   Civil Code Section 2982(a) provides a list of the disclosures which a

27   conditional sale contract for the sale of a motor vehicle shall contain.

28   ///

---

COMPLAINT

86.   When Ron Baker disclosed, on Line 2.B. of Plaintiff's and Class 1 Members' RISCs, a notation of "Incl." as the amount paid for registration/transfer/titling fees, it violated Civil Code Section 2982(a)(2)(B) by failing to disclose the actual amount paid for those fees.

87.   Plaintiff is informed and believes Ron Baker inflated the amount due for license fees and that the amount disclosed as license fees on his RISC and the RISCs of the members of Class 1 were false and overstated.

88.   The "Single Document Rule" in Civil Code Section 2981.9 requires that all of the agreements between the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle be contained in a single document.  The RISCs of Plaintiff and the Class 1 Members do not show the true and correct cost of the license and registration fees due, and therefore violate the Single Document Rule because not all of the terms of cost are set forth in the RISCs.  That amount can only be learned by resorting to other documents.

89.   Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to Capital One and/or Capital One is the holder of these RISCs.  The improper disclosure of the registration/transfer/titling fees appears on the face of the RISCs.

90.   Ron Baker did not correct the willful violation of the ASFA appearing on the face of Plaintiff's and the Class 1 Members' RISCs within 30 days of execution of the contracts.  Capital One did not correct the willful violation of the ASFA appearing on the face of Plaintiff's and the Subclass Members' RISCs within 20 days of the assignment of such RISCs to Capital One.

137.   Plaintiff and each Class 1 Member have been damaged by Ron Baker's violations of the ASFA.   Since the violations include violations of Civil Code Sections 2981.9 and 2982(a), Plaintiff and each Class 1 Member are entitled to statutory remedies pursuant to Civil Code Sections 2983 and 2983.1.  Plaintiff also seeks his attorneys' fees and costs pursuant to Civil Code Section 2983.4.

/ / /

### THIRD CAUSE OF ACTION

**Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Class 1 Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

91.    Plaintiff, on his own behalf and on behalf of the Class 1 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 90, inclusive, of this Complaint and further alleges as follows.

92.    Ron Baker's acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful and/or unfair business acts and/or practices within the meaning of California Business & Professions Code Sections 17200, *et seq.*

93.    Plaintiff and the Class 1 Members have suffered injury in fact and have lost money as a result of Ron Baker's unfair competition, including, but not limited to, their statutory damages under the ASFA caused by Ron Baker's acts and overpaying amounts due for license fees.

94.    Ron Baker engaged in "unlawful" business acts and practices by failing to properly and separately itemize, on RISCs, the registration, transfer or titling fees owing on the vehicles it sells, overstating license fees, and failing to disclose in a single document all of the agreements as to the terms of payment for the vehicles purchased by Plaintiff and the Class 1 Members. These business policies, acts, and/or practices were intended to and did violate, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, and the ASFA. Accordingly, Ron Baker violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Ron Baker from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

95.    Ron Baker also engaged in an "unfair" business act or practice in that the justification for selling vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is

20

immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers.

96.   The above-described unlawful or unfair business acts and practices conducted by Ron Baker continue to this day and present a threat to Plaintiff and the Class 1 Members, and the general public in that Ron Baker failed to publicly acknowledge the wrongfulness of its actions and provide full equitable injunctive and monetary relief as required by the statute.

97.   Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to Capital One and/or Capital One is the holder of these RISCs. The improper disclosure of the registration/transfer/titling fees appears on the face of the RISCs.

98.   Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful and/or unfair business acts and practices set forth in this Complaint and from failing to fully disclose the true nature of their misrepresentations, and ordering Defendants to engage in a corrective notice and advertising campaign. Plaintiff additionally requests an order from the Court requiring Defendants to provide complete equitable monetary relief so as to prevent Defendants from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

/ / /

/ / /

/ / /

/ / /

/ / /

### FOURTH CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et
seq*. – Class 2 Claim – Injunctive Relief Only – As Against Defendants Ron
Baker and Does 1-10**

99.     Plaintiff, on his own behalf and on behalf of the Class 2 Members,
incorporates by reference each and every allegation set forth in Paragraphs 1 through
98, inclusive, of this Complaint and further alleges as follows.

100.    The vehicles purchased by Plaintiff and each Class 2 Member constitute
"goods" bought for use primarily for personal, family, or household purposes pursuant
to Civil Code Section 1761(a).

101.    Plaintiff and each Class 2 Member are "consumers" pursuant to
Civil Code Section 1761(d).

102.    Defendants Ron Baker and Does 1-10 are "persons" pursuant to Civil Code
Section 1761(c).

103.    The advertisement and sale of the vehicles to Plaintiff and each Class 2
Member are "transactions" pursuant to Civil Code Section 1761(e).

104.    The acts and/or practices engaged in by Ron Baker and alleged herein
were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the
Class 2 Members primarily for personal, family, or household purposes, and violated
and continued to violate the CLRA in at least the following respects:

    (a)     Ron Baker represented the transactions had been supplied in accordance
with previous representations when they had not; and

    (b)     Ron Baker represented that the transactions conferred or involved rights,
remedies, or obligations which they did not have or involve, or which were
prohibited by law.

105.    On or about December 13, 2011, Plaintiff served Defendants via certified
mail, return receipt requested, a Consumers Legal Remedies Act notification and

22

1   demand letter, seeking both individual relief and relief on behalf of Class 2 identified

2   above.  The letter was received by Ron Baker on December 14, 2011.

3        106.   Plaintiff and the Class 2 Members relied on Ron Baker to prepare legal

4   and enforceable contracts as a licensed automobile dealership. Plaintiff and

5   Class 2 Members suffered damages by being automatically charged, and therefore

6   paying, an optional fee and related finance charges on such amount.  Plaintiff was not

7   aware of Ron Baker's deceptive conduct until contacting attorneys in 2011.

8        107.   Plaintiff and the Class 2 Members suffered further damages as a result

9   of Ron Baker's practices in that they paid fees they would not have had to pay had Ron

10  Baker disclosed that the fees were optional, rather than automatically charging them.

11       108.   The Consumers Legal Remedies Act provides a complaint for violation of

12  the Act may be amended without leave of court should the violation not be remedied

13  within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a

14  claim for damages under the Consumers Legal Remedies Act for violation of Civil Code

15  Sections 1770(a)(14) and (16), including statutory damages of up to $1,000 per

16  consumer and/or up to $5,000 per consumer who qualifies as a "senior citizen" under

17  the CLRA, should the statutory thirty-day period expire without a complete cure of Ron

18  Baker's violations.

19       109.   Civil Code Section 1780(a)(2) provides a consumer is entitled to an

20  injunction prohibiting acts or practices which violate the CLRA.  Plaintiff alleges Ron

21  Baker has established a pattern and/or practice of automatically charging customers

22  the "Optional DMV Electronic Filing Fee," without telling customers the fee is optional

23  and they can refuse to pay it.

24       110.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,

25  except for damages at this time, including an order enjoining Ron Baker from the acts,

26  methods, and practices as set forth in this Complaint, and attorneys' fees and costs

27  according to proof at time of trial.

28  / / /

1

## FIFTH CAUSE OF ACTION

2   Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. &

3   Prof. Code Section 17200, *et seq.* – Class 2 Claim – As Against Defendants

4   Ron Baker and Does 1-10

5       111.   Plaintiff, on his own behalf and on behalf of the Class 2 Members,

6   incorporates by reference each and every allegation set forth in Paragraphs 1 through

7   110, inclusive, of this Complaint and further alleges as follows.

8       112.   Defendant Ron Baker's omissions, misrepresentations, practices, and/or

9   non-disclosures constituted unlawful and/or unfair business acts and/or practices

10   within the meaning of California Business & Professions Code Sections 17200, *et seq.*

11       113.   Plaintiff and the Class 2 Members suffered injury in fact and lost money

12   as a result of Ron Baker's unfair competition, including, but not limited to, paying for

13   a service they were automatically charged by Ron Baker, but were not required to pay

14   for.

15       114.   Defendant Ron Baker engaged in "unlawful" business acts and/or

16   practices by automatically charging customers the Optional DMV Electronic Filing

17   Fee, without telling customers that the fee is optional and that they can refuse to pay

18   it.   This business act and/or practice was intended to and did violate, *inter alia*,

19   California Civil Code § 1709, *et seq.*, and the CLRA.  Accordingly, Ron Baker has

20   violated Business & Professions Code Section 17200's proscription against engaging

21   in an "unlawful" business act and/or practice.  Plaintiff seeks an order enjoining Ron

22   Baker engaging in the acts, methods, and/or practices as set forth in this Complaint

23   and for payment of restitution.

24       115.   Ron Baker also engaged in an "unfair" business act and/or practice in that

25   the justification for selling vehicles based on the misrepresentations and omissions of

26   material fact delineated above is outweighed by the gravity of the resulting harm,

27   particularly considering the available alternatives, and offends public policy, is

28

1   immoral, unscrupulous, unethical, and offensive, or causes substantial injury to

2   consumers.

3        116.   The above-described unlawful and/or unfair business acts and/or practices

4   conducted by Ron Baker continue to this day and present a threat to Plaintiff and the

5   Class 2 Members, and the general public because Ron Baker failed to publicly

6   acknowledge the wrongfulness of its actions and provide full equitable injunctive and

7   monetary relief as required by the statute.

8        117.   Pursuant to California Business & Professions Code Section 17203,

9   Plaintiff may seek an order of this Court requiring Ron Baker to immediately cease

10  such acts of unfair competition and enjoining Ron Baker from continuing to conduct

11  business via the unlawful and/or unfair business acts and/or practices set forth in this

12  Complaint and from failing to fully disclose the true nature of their

13  misrepresentations, and ordering Ron Baker to engage in a corrective notice and

14  advertising campaign.   Plaintiff additionally requests an order from the Court

15  requiring Ron Baker to provide complete equitable monetary relief so as to prevent Ron

16  Baker from benefitting from the practices that constitute unfair competition or the use

17  or employment of any monies resulting from the sale of these vehicles, including

18  requiring the payment of restitution of any monies as may be necessary to restore any

19  money or property which may have been acquired by means of such acts of unfair

20  competition.

21                        **SIXTH CAUSE OF ACTION**

22      **Violation of Consumers Legal Remedies Act, Civil Code Section 1750,** *et*

23      *seq.* **– Class 3 Claim – Injunctive Relief Only – As Against Defendants**

24                      **Capital One and Does 1-10**

25       118.   Plaintiff, on his own behalf and on behalf of the Class 3 Members,

26  incorporates by reference each and every allegation set forth in Paragraphs 1 through

27  117, inclusive, of this Complaint and further alleges as follows.

28  ///

119.   The vehicles purchased by Plaintiff and each Class 3 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

120.   Plaintiff and each Class 3 Member are "consumers" pursuant to Civil Code Section 1761(d).

121.   Defendant Capital One and Does 1-10 are "persons" pursuant to Civil Code Section 1761(c).

122.   The advertisement and sale of the vehicles to Plaintiff and each Class 3 Member are "transactions" pursuant to Civil Code Section 1761(e).

123.   The acts and/or practices engaged in by Capital One and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 3 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

    (a)    Ron Baker represented that the transactions had been supplied in accordance with previous representations when they had not; and

    (b)    Ron Baker represented that the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

124.   On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 3 identified above.

125.   Plaintiff and Class 3 Members relied on Ron Baker to prepare legal and enforceable purchase contracts as a licensed automobile dealership.  Plaintiff and Class 3 Members relied on Capital One to accept for assignment only legal and enforceable contracts as an assignee and holder of their conditional sale contracts. Plaintiff and Class 3 Members suffered damages by making payments pursuant to

26

COMPLAINT

1 unenforceable contracts.  Plaintiff was not aware of Ron Baker's and Capital One's

2 deceptive conduct until contacting attorneys in 2011.

3       126.   The Consumers Legal Remedies Act provides a complaint for violation of

4 the Act may be amended without leave of court should the violation not be remedied

5 within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a

6 claim for damages under the Consumers Legal Remedies Act for violation of Civil Code

7 Sections 1770(a)(14) and (16), including statutory damages of up to $1,000 per

8 consumer and/or up to $5,000 per consumer who qualifies as a "senior citizen" under

9 the CLRA, should the statutory thirty-day period expire without a complete cure of

10 Capital One's violations.

11       127.   Civil Code Section 1780(a)(2) provides a consumer is entitled to an

12 injunction prohibiting acts or practices which violate the CLRA.  Plaintiff alleges

13 Capital One has a pattern and practice of accepting, for assignment, retail installment

14 sale contracts for sales made in California that fail to separately itemize and disclose

15 registration/transfer/titling fees paid to the DMV.  Accordingly, Plaintiff seeks an order

16 prohibiting Defendant Capital One from accepting, for assignment, retail installment

17 sale contracts for sales made in California where the retail installment sale contract

18 fails to separately itemize and disclose registration/transfer/titling fees on Line 2.B. of

19 the Itemization of the Amount Financed section of the contracts.

20       128.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,

21 except for damages at this time, including an order enjoining Capital One from the

22 acts, methods, and/or practices as set forth in this Complaint, and attorneys' fees and

23 costs according to proof at time of trial.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

## SEVENTH CAUSE OF ACTION

### Action for Rescission of Conditional Sales Contract for the Sale of Goods Pursuant to Civil Code § 1689(b) for Violation of the Automobile Sales Finance Act, Civil Code Section 2981, *et seq.* – Class 3 Claim – As Against Defendants Capital One and Does 1-10

129.    Plaintiff, on his own behalf and on behalf of the Class 3 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 128, inclusive, of this Complaint and further alleges as follows.

130.    The RISCs executed by Plaintiff and each Class 3 Member for their vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a).

131.    Capital One is holder and assignee of Plaintiff's and each Class 3 Member's RISCs.

132.    Plaintiff and each Class 3 Member are "buyers" pursuant to Civil Code Section 2981(c).

133.    The vehicles purchased by Plaintiff and each Class 3 Member are "motor vehicles" pursuant to Civil Code Section 2981(k).

134.    Civil Code Section 2982(a) provides a list of the disclosures which a conditional sale contract for the sale of a motor vehicle shall contain.

135.    The RISCs of Plaintiff and the Class 3 Members failed to disclose on Line 2.B. of the Itemization of the Amount Financed section of the RISC the actual amount due and owing for registration/transfer/titling fees.    These improper disclosures violate Civil Code Section 2982(a).

136.    The "Single Document Rule" in Civil Code Section 2981.9 requires that all of the agreements between the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle be contained in a single document.  The RISCs of Plaintiff and the Class 3 Members do not show the true and correct cost of the registration/transfer/titling fees due, and therefore violate the Single Document Rule. That amount can only be learned by resorting to other documents.

137.   Since the violations include violations of Civil Code Sections 2981.9 and 2982(a), Plaintiff and each Class 3 Member are entitled to all statutory remedies pursuant to Civil Code Sections 2983 and 2983.1.  Plaintiff also seeks his attorneys' fees and costs pursuant to Civil Code Section 2983.4.

## EIGHTH CAUSE OF ACTION

**Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Class 3 Claim – As Against Defendants Capital One and Does 1-10**

138.   Plaintiff, on his own behalf and on behalf of the Class 3 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 137, inclusive, of this Complaint and further alleges as follows.

139.   Capital One's acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful and/or unfair business acts and/or practices within the meaning of California Business & Professions Code Sections 17200, *et seq.*

140.   Plaintiff and the Class 3 Members have suffered injury in fact and have lost money as a result of Capital One's unfair competition, including, but not limited to, their statutory damages under the ASFA caused by Capital One's acts.

141.   Capital One engaged in "unlawful" business acts and/or practices by accepting assignment of RISCs that fail to properly and separately itemize the registration, transfer, or titling owing on vehicles and failing to disclose in a single document all of the agreements as to the terms of payment for the vehicles purchased by Plaintiff and the Class 3 Members.  These business acts and/or practices were intended to and did violate, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, and the ASFA.  Accordingly, Capital One violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Capital One from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

/ / /

142.   Capital One also engaged in an "unfair" business act or practice in that the justification for financing vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers.

143.   The above-described unlawful or unfair business acts and practices conducted by Capital One continue to this day and present a threat to Plaintiff and the Class Members, and the general public in that Capital One failed to publicly acknowledge the wrongfulness of its actions and provide full equitable injunctive and monetary relief as required by the statute.

144.   Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court requiring Capital One to immediately cease such acts of unfair competition and enjoining Capital One from continuing to conduct business via the unlawful and/or unfair business acts and practices set forth in this Complaint and from failing to fully disclose the true nature of their misrepresentations, and ordering Capital One to engage in a corrective notice and advertising campaign.   Plaintiff additionally requests an order from the Court requiring Capital One to provide complete equitable monetary relief so as to prevent Capital One from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

/ / /

/ / /

/ / /

/ / /

## NINTH CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et seq*. – Individual Claim – Injunctive Relief Only – As Against Defendants Ron Baker, Capital One, and Does 1-10**

145.   Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 144, inclusive, of this Complaint, and further alleges as follows. This cause of action is brought by Plaintiff individually.

146.   The Vehicle sold to Plaintiff constitutes "goods" purchased for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

147.   Plaintiff is a "consumer" pursuant to Civil Code Section 1761(d).

148.   Defendants are "persons" pursuant to Civil Code Section 1761(c).

149.   The advertisement and sale of the vehicle to Plaintiff is a "transaction" pursuant to Civil Code Section 1761(e).

150.   The acts and/or practices engaged in by Defendant Ron Baker and alleged herein were intended to, and did, result in the sale of the Vehicle to Plaintiff primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

(a)   Ron Baker represented that the goods or services had sponsorship, characteristics, uses, or benefits which they did not have;

(b)   Ron Baker represented that the goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;

(c)   Ron Baker advertised goods with intent not to sell them as advertised;

(d)   Ron Baker represented that the transaction had been supplied in accordance with previous representations when it had not; and

///

///

(e)     Ron Baker represented that the transaction conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law.

151.   On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual relief under the CLRA.  The letter was received by Ron Baker on December 14, 2011.

222.   Plaintiff relied on Ron Baker to prepare legal and enforceable purchase contracts as a licensed automobile dealership.  Plaintiff suffered damages by making payments pursuant to an unenforceable contract and paying for products he was not aware he was purchasing.  Plaintiff was not aware of Ron Baker's deceptive conduct until contacting attorneys in 2011.

152.   The Consumers Legal Remedies Act provides a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a claim for damages under the Consumers Legal Remedies Act for violation of Civil Code Sections 1770(a)(5), (7), (9), (14) and (16) should the statutory thirty-day period expire without a complete cure of Defendants' violations.

153.   Section 1780(a)(2) of the Act provides a consumer is entitled to an injunction prohibiting acts or practices which violate the Act.  Plaintiff alleges Ron Baker has established a pattern and practice of: (1) selling vehicles over advertised price; (2) failing to disclose prior accident damage; (3) "packing" customers with after-market products and services, such as GAP insurance and service contracts, without the customers' knowledge or consent; (4) falsely representing that an alarm is being provided free of charge and then charging the customer for it; (5) failing to properly disclose, on a customer's RISC, that a customer has made a cash down payment, a portion of which is being deferred until a later date; (6) obtaining credit reports for potential purchasers without obtaining the potential purchaser's consent; and

(7) failing to advise customers they do not have to sign a subsequent contract for the same vehicle but can, instead, return the vehicle and obtain their down payment back.

154.   Ron Baker assigned Plaintiff's RISC to Capital One and/or Capital One is the holder of Plaintiff's RISC #2.

155.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief, except for damages at this time, including an order enjoining Defendants from the acts, methods, and practices as set forth in this Complaint, and attorneys' fees and costs according to proof at time of trial.

## TENTH CAUSE OF ACTION

**Commission of Unlawful, Unfair, and/or Fraudulent Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Individual Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

156.   Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 155, inclusive, of this Complaint, and further alleges as follows. This cause of action is brought by Plaintiff individually.

157.   Defendants' acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful, unfair, and/or fraudulent business acts and/or practices and untrue and misleading advertising within the meaning of California Business & Professions Code §§17200, *et seq.*

158.   Plaintiff suffered injury in fact and lost money as a result of Defendant Ron Baker's unfair competition, including, but not limited to, his statutory damages under the ASFA caused by Defendant's acts, and being charged for goods and/or services he did not agree to.

159.   Defendant Ron Baker has engaged in "unlawful" business acts and/or practices by the following: (1) selling vehicles over advertised price; (2) failing to disclose prior accident damage; (3) "packing" customers with after-market products and services, such as GAP insurance and service contracts, without the customers' knowledge or consent; (4) falsely representing that an alarm is being provided free of

charge and then charging the customer for it; (5) failing to properly disclose, on a customer's RISC, that a customer has made a cash down payment, a portion of which is being deferred until a later date; (6) obtaining credit reports for potential purchasers without obtaining the potential purchaser's consent; and (7) failing to advise customers they do not have to sign a subsequent contract for the same vehicle but can, instead, return the vehicle and obtain their down payment back.  Plaintiff seeks an order enjoining Defendant Ron Baker from the acts, methods, and/or practices as set forth in the complaint and for payment of restitution.  These business acts and/or practices violated numerous provisions of both state and federal law including, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, the ASFA, Business and Professions Code Sections 17500 and 17531, and California Vehicle Code Sections 11614(a), 11713(a).  Accordingly, Defendant Ron Baker has violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Defendant from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

160.   Defendant Ron Baker also engaged in a "fraudulent" business act or practice in that the representations and omissions of material fact described above have a tendency and likelihood to deceive purchasers of these vehicles.

161.   Defendant Ron Baker also engaged in an "unfair" business act or practice in that the justification for selling vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers.

162.   The above-described unlawful, fraudulent, and/or unfair business acts and/or practices conducted by Defendant continue to this day and present a threat to Plaintiff and the general public in that Defendant failed to publicly acknowledge the

1  wrongfulness of its actions and provide full equitable injunctive and monetary relief

2  as required by the statute.

3       163.   Ron Baker assigned Plaintiff's RISC to Capital One and/or Capital One

4  is the holder of Plaintiff's RISC #2.

5       164.   Pursuant to California Business & Professions Code Section 17203,

6  Plaintiff seeks an order of this Court requiring Defendants to immediately cease such

7  acts of unfair competition and enjoining Defendants from continuing to conduct

8  business via the unlawful, fraudulent, and/or unfair business acts and practices set

9  forth in this Complaint and from failing to fully disclose the true nature of their

10  misrepresentations, and ordering Defendants to engage in a corrective notice and

11  advertising campaign.   Plaintiff additionally requests an order from the Court

12  requiring Defendants to provide complete equitable monetary relief so as to prevent

13  Defendants from benefitting from the practices that constitute unfair competition or

14  the use or employment of any monies resulting from the sale of these vehicles,

15  including requiring the payment of restitution of any monies as may be necessary to

16  restore any money or property which may have been acquired by means of such acts

17  of unfair competition.

18                        **PRAYER FOR RELIEF**

19       WHEREFORE, Plaintiff prays for judgment as follows, on behalf of himself, and

20  the members of the Classes, as appropriate for the particular causes of action:

21       1.    An Order certifying the Classes under the appropriate provisions of

22             California law, and appointing Plaintiff and his counsel to represent the

23             Classes.

24       2.    For the declaratory, equitable, and/or injunctive relief requested as

25             permitted under the Consumers Legal Remedies Act and Business &

26             Professions Code Section 17203.

27       3.    For general, special, and actual damages according to proof at trial.

28       4.    For rescission and/or restitution of all monies required to be expended.

5. For incidental and consequential damages according to proof at trial.

6. For the specified causes of action, punitive and/or statutory damages.

7. For pre-judgment interest at the legal rate.

8. For reasonable attorneys' fees and costs of suit as specified under, *inter alia*, Code of Civil Procedure Section 1021.5, and Civil Code Sections 1717, 1780(d), 1794, and 2983.4.

9. For such other and further relief as the Court deems just and proper under the circumstances.

DATED: December 29, 2011                    ROSNER, BARRY & BABBITT, LLP

By: _____
CHRISTOPHER P. BARRY
Attorneys for Plaintiff

# EXHIBIT 1

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

Dealer Number __2672__   Contract Number _____   R.O.S. Number _____   Stock Number __53552__

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| JOSE O MONDRAGON<br>360 OXFORD ST #3<br>CHULA VISTA, CA 91911<br>SAN DIEGO | | BOB BAKER CHEVROLET<br>2301 NATIONAL CITY BLVD<br>NATIONAL CITY, CA 91950 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2008 | CHEVROLET SILVERADO | 35690 | 3GCEC13GX8G220374 | ☒ personal, family, or household<br>☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 4500.00 is |
|---|---|---|---|---|
| 15.99 % | $ 14509.07 (e) | $ 25404.13 | $ 39913.20 (e) | $ 44413.20 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| 71 Payments | 554.35 | Monthly, Beginning 6-12-10 |
| N/A Payments | N/A | Monthly, Beginning N/A |
| One Final Payment | 554.35 (e) | 5-12-16 |
| N/A | N/A | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges and security interest.

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories ............................ $ 23995.00 (A)
      1. Cash Price Vehicle ....................................... $ 23995.00
      2. Cash Price Accessories .................................. $ N/A
      3. Other (Nontaxable)
         Describe _____ $ N/A
         Describe _____ $ N/A
   B. Document Preparation Fee (not a governmental fee) ................... $ 55.00 (B)
   C. Smog Fee Paid to Seller ............................................. $ N/A (C)
   D. (Optional) Theft Deterrent Device (to whom paid) ULTIMATE .......... $ 500.00 (D)
   E. (Optional) Theft Deterrent Device (to whom paid) _____ ........ $ N/A (E)
   F. (Optional) Theft Deterrent Device (to whom paid) _____ ........ $ N/A (F)
   G. (Optional) Surface Protection Product (to whom paid) _____ ....... $ N/A (G)
   H. (Optional) Surface Protection Product (to whom paid) _____ ....... $ N/A (H)
   I. Sales Tax (on taxable items in A through H) ........................ $ 2148.13 (I)
   J. Optional DMV Electronic Filing Fee ................................. $ 29.00 (J)
   K. (Optional) Service Contract (to whom paid) WESTERN GENERAL ......... $ 2000.00 (K)
   L. (Optional) Service Contract (to whom paid) _____ .............. $ N/A (L)
   M. (Optional) Service Contract (to whom paid) _____ .............. $ N/A (M)
   N. (Optional) Service Contract (to whom paid) _____ .............. $ N/A (N)
   O. (Optional) Service Contract (to whom paid) _____ .............. $ N/A (O)
   P. Prior Credit or Lease Balance paid by Seller to
      _____ $ N/A (P)
      (see downpayment and trade-in calculation)
   Q. (Optional) Gap Contract (to whom paid) CLASSIC GAP ................. $ 750.00 (Q)
   R. (Optional) Used Vehicle Contract Cancellation Option Agreement ..... $ N/A (R)
   S. Other (to whom paid) _____ ................................... $ N/A (S)
      For _____
      Total Cash Price (A through S) .................................... $ 29477.13 (1)
2. Amounts Paid to Public Officials
   A. License Fees Estimated ............................................. $ 427.00 (A)
   B. Registration/Transfer/Titling Fees ................................. $ TUEL (B)
   C. California Tire Fees ................................................ $ N/A (C)
   D. Other .............................................................. $ N/A (D)
   Total Official Fees (A through D) ..................................... $ 437.00 (2)
3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a + b) ............. $ N/A (3)
4. Smog Certification or ☐ Exemption Fee Paid to State .................. $ N/A (4)
   $ 3984.13 (5)

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

#### Vehicle Insurance

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | Mos. | $ N/A |
| $ N/A Ded. Collision | Mos. | $ N/A |
| Bodily Injury $ N/A Limits | Mos. | $ N/A |
| Property Damage $ N/A Limits | Mos. | $ N/A |
| Medical N/A | Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | $ None (b) |

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X Jose O Mondragon
Co-Buyer X
Seller X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

#### Application for Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life N/A | Mos. N/A | $ | N/A |
| Credit Disability N/A | Mos. N/A | $ | N/A |
| Total Credit Insurance Premiums | | $ | N/A (b) |

Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

N/A X Jose O Mondragon
Date Buyer Signature Age
N/A X
Date Co-Buyer Signature Age

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown

(Total premiums from Statement of Insurance column a + b) $ ___ N/A ___ (3)

4. ☐ Smog Certification or ☐ Exemption Fee Paid to state $ ___ N/A ___ (4)
5. Subtotal (1 through 4) $ 25904.13 (5)
6. Downpayment:
   A. Agreed Trade-In Value  Yr N/A ___ Make ___ $ N/A (A)
      Model ___ Odom ___
      VIN ___
   B. Less Prior Credit or Lease Balance $ N/A (B)
   C. Net Trade-In (A less B) (indicate if a negative number) $ N/A (C)
   D. Deferred Downpayment $ N/A (D)
   E. Manufacturer's Rebate $ N/A (E)
   F. Other ___ $ N/A (F)
   G. Cash $ 4500.00 (G)
   Total Downpayment (C through G) $ 4500.00
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above)
7. Amount Financed (5 less 6) $ 25404.13 (7)

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: N/A
Amount $ N/A  Finance Charge $ N/A
Total $ N/A  Payable in N/A
installments of $ N/A to N/A
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable:
N/A

OPTIONAL GAP CONTRACT A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1O of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term 72 Mos. CLASSIC GAP
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

OPTIONAL SERVICE CONTRACT(S) You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1K,1L,1M,1N, and/or 1O.
1K Company WESTERN GENERAL
Term ___ Mos. or ___
1L Company N/A
Term ___ Mos. or ___ Miles
1M Company N/A
Term ___ Mos. or ___ Miles
1N Company N/A
Term ___ Mos. or ___ Miles
1O Company N/A
Term ___ Mos. or ___ Miles
Buyer X _____

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.
Buyer Signs X _____
Co-Buyer Signs X _____

SELLER'S RIGHT TO CANCEL If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.
X _____ Buyer   X _____ Co-Buyer

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A . SELLER'S INITIALS ___

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL-REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
S/S X _____

Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund the difference to you. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund due from the Seller.

Buyer Signature X _____  Co-Buyer Signature X _____

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer signature X _____  Co-Buyer signature X _____

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date 4-28-10  Co-Buyer Signature X _____ Date ___
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other Owner Signature X _____ Address N/A

GUARANTY: To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay or one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.
Guarantor X N/A _____ Date ___  Guarantor X N/A _____ Date ___
Address ___  Address N/A

Seller Signs _____ Date 4-28-10  By X ROBERT _____ Title FINANCE MANAGER

LAW FORM NO. 553-CA

CUSTOMER / TRUTH IN LENDING COPY

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Creditor-Seller may receive part of the Finance Charge.
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   **GAP LIABILITY NOTICE**
   In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.

   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security Interest.
   You give us a security interest in:
   • The vehicle and all parts or goods installed on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle.
   d. Insurance you must have on the vehicle.
   You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the

   f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.
   g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

3. **WARRANTIES SELLER DISCLAIMS**
   If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

4. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation. Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

5. **Applicable Law**
   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

6. **Warranties of Buyer.** You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

### CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays

either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type, and the charge you must pay. The charge will be the premium for the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. What happens to returned insurance, maintenance, service or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means:
• You do not pay any payment on time;
• You give false, incomplete, or misleading information on a credit application;
• You start a proceeding in bankruptcy or one is started against you or your property;
• The vehicle is lost, damaged or destroyed; or
• You break any agreements in this contract.
The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. You may have to pay collection costs. You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you. We may do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. How you can get the vehicle back. If we take it, if we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate the contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action, to cure the default. We will provide you all notices required by law to tell you when and how much to pay, and/or what action you must take to redeem the vehicle.

ment(s), we cannot try to collect what you owe or foreclose upon or repossess any collateral until three calendar months after your first missed payment is due, or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 45 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

---

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, whose name the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | (Assignee) at (address) |
|---|---|
| | under the terms of Seller's agreement(s) with Assignee. |
| ☐ Assigned with recourse ☐ Assigned without recourse ☐ Assigned with limited recourse | |

| Seller | By | Title |
|---|---|---|

Form No. 553-CA 1/10

# EXHIBIT 2

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

Dealer Number _____ 2017 _____   Contract Number _____   R.O.S. Number _____   Stock Number ___ 23550 ___

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| JOSE O MONDRAGON<br>360 OXFORD ST #3<br>CHULA VISTA, CA 91911<br>SAN DIEGO | | RON BAKER CHEVROLET<br>2301 NATIONAL CITY BLVD<br>NATIONAL CITY, CA 91950 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2006 | CHEVROLET SILVERADO | 35690 | 3GCEC13CX8G220374 | ☒ personal, family, or household<br>☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 4500.00 is |
|---|---|---|---|---|
| 16.85 % | $ 14765.86 (e) | $ 24360.38 | $ 39126.24(e) | $ 43626.24 (e) |

(e) means an estimate

YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| 71 Payments | 543.42 | Monthly, Beginning 6-17-10 |
| N/A Payments | N/A | Monthly, Beginning N/A |
| One Final Payment of | 543.42 (F) | 5-17-16 |
| N/A | N/A | N/A |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories ..... $ 23495.00 (A)
      1. Cash Price Vehicle ..... $ 23495.00
      2. Cash Price Accessories ..... $ N/A
      3. Other (Nontaxable)
         Describe _____ ..... $ N/A
         Describe _____ ..... $ N/A
   B. Document Preparation Fee (not a governmental fee) ..... $ 55.00 (B)
   C. Smog Fee Paid to Seller ..... $ N/A (C)
   D. (Optional) Theft Deterrent Device (to whom paid) ULTIMATE ..... $ 599.00 (D)
   E. (Optional) Theft Deterrent Device (to whom paid) _____ ..... $ N/A (E)
   F. (Optional) Theft Deterrent Device (to whom paid) _____ ..... $ N/A (F)
   G. (Optional) Surface Protection Product (to whom paid) _____ ..... $ N/A (G)
   H. (Optional) Surface Protection Product (to whom paid) _____ ..... $ N/A (H)
   I. Sales Tax (on taxable items in A through H) ..... $ 2104.38 (I)
   J. Optional DMV Electronic Filing Fee ..... $ 29.00 (J)
   K. (Optional) Service Contract (to whom paid) WESTERN GENERAL ..... $ 1500.00 (K)
   L. (Optional) Service Contract (to whom paid) _____ ..... $ N/A (L)
   M. (Optional) Service Contract (to whom paid) _____ ..... $ N/A (M)
   N. (Optional) Service Contract (to whom paid) _____ ..... $ N/A (N)
   O. (Optional) Service Contract (to whom paid) _____ ..... $ N/A (O)
   P. Prior Credit or Lease Balance paid by Seller to
      _____ ..... $ N/A (P)
      (see downpayment and trade-in calculation)
   Q. (Optional) Gap Contract (to whom paid) CLASSIC GAP ..... $ 790.00 (Q)
   R. (Optional) Used Vehicle Contract Cancellation Option Agreement ..... $ N/A (R)
   S. Other (to whom paid) _____ ..... $ N/A (S)
      For _____
      Total Cash Price (A through S) ..... $ 28433.38 (1)
2. Amounts Paid to Public Officials
   A. License Fees ..... $ 427.00 (A)
   B. Registration/Transfer/Titling Fees ..... $ Incl. (B)
   C. California Tire Fees ..... $ N/A (C)
   D. Other ..... $ N/A (D)
      Total Official Fees (A through D) ..... $ 427.00 (2)
3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a + b) ..... $ N/A (3)
4. ☐ Smog Certification or ☐ Exemption Fee Paid to State ..... $ N/A (4)

### STATEMENT OF INSURANCE
NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

#### Vehicle Insurance

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | Mos. | $ N/A |
| $ N/A Ded. Coll. Collision | Mos. | $ N/A |
| Bodily Injury $ N/A Limits | Mos. | $ N/A |
| Property Damage $ N/A Limits | Mos. | $ N/A |
| Medical $ N/A | Mos. | $ N/A |
| N/A | Mos. | $ None |
| Total Vehicle Insurance Premiums | | $ |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _(signature)_
Co-Buyer X
Seller X _(signature)_

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

#### Application for Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | N/A | N/A |
| Credit Disability | N/A Mos. | N/A | N/A |
| Total Credit Insurance Premiums | | $ | N/A (b) |

Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that (1) You are not eligible for insurance if you have reached your 65th birthday, (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

You want to buy the credit insurance.

N/A
Date    Buyer Signature _(signature)_    Age
N/A
Date    Co-Buyer Signature    Age

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra

3. Amount Paid to Insurance Companies
(Total premiums from Statement of Insurance column a + b)   $ _____ N/A _____ (3)
4. ☐ Smog Certification or ☐ Exemption Fee Paid to State   $ _____ N/A _____ (4)
5. Subtotal (1 through 4)   $ _____ 23566.38 _____ (5)
6. Total Downpayment
A. Agreed Trade-In Value  Yr _N/A_ _____ Make _____   $ _____ N/A _____ (A)
   Model _____ Odom _____
   VIN _____
B. Less Prior Credit or Lease Balance   $ _____ N/A _____ (B)
C. Net Trade-In (A less B) (indicate if a negative number)   $ _____ N/A _____ (C)
D. Deferred Downpayment   $ _____ N/A _____ (D)
E. Manufacturer's Rebate   $ _____ N/A _____ (E)
F. Other _____   $ _____ N/A _____ (F)
G. Cash   $ _____ 4500.00 _____ (G)
   Total Downpayment (C through G)   $ _____ 4500.00 _____ (6)
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above)
7. Amount Financed (5 less 6)   $ _____ 24366.38 _____ (7)

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED ON THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: _____ N/A _____
Amount $ _____ N/A _____ Finance Charge $ _____ N/A _____
Total $ _____ N/A _____ Payable in _____
installments of $ _____ N/A _____ $ _____ N/A _____
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: _____ N/A _____

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.
X _____ Buyer     X _____ Co-Buyer

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1O of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term _72_ Mos. of _CLASSIC GAP_
                    Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1K, 1L, 1M, 1N, and/or 1O.

| | | |
|---|---|---|
| 1K Company | WESTERN GENERAL | |
| Term | 68 Mos. or 100000 Miles |
| 1L Company | N/A | |
| Term | N/A Mos. or N/A Miles |
| 1M Company | N/A | |
| Term | N/A Mos. or N/A Miles |
| 1N Company | N/A | |
| Term | N/A Mos. or N/A Miles |
| 1O Company | N/A | |
| Term | N/A Mos. or N/A Miles |
| Buyer X | | |

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.
Buyer Signs X _____
Co-Buyer Signs X _____

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____ , Year _____ N/A _____ SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
S/S X _____ S _____

Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund the difference to you. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund due from the Seller.
Buyer Signature X _____ Co-Buyer Signature X _____

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces left to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.
If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.
Buyer Signature X _____ Co-Buyer Signature X _____

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION.**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day cancellation option to owners of used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date _5-03-10_   Co-Buyer Signature X _____ Date _____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other Owner Signature X _____ Address _____ N/A _____

GUARANTY: To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense or Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

| | | | |
|---|---|---|---|
| Guarantor X | N/A | Date N/A | Guarantor X N/A | Date N/A |
| Address | N/A | | Address N/A | |

Seller Signs _____ Date _5-03-10_ By X ROBERT _____ Title _____

LAW FORM NO. 553-CA REV. 9/09 U.S. PATENT NO. D493,152
©2010 The Reynolds and Reynolds Company TO ORDER: www.reysource.com · 1.800.344.0535, Or 1.800.531.9265
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR THE FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER / TRUTH IN LENDING COPY

OTHER IMPORTANT AGREEMENTS

1. FINANCE CHARGE AND PAYMENTS
   a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Creditor-Seller may receive part of the Finance Charge.
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned finance charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000; (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000; or (3) $75 if the original Amount Financed is more than $2,000.

2. YOUR OTHER PROMISES TO US
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   GAP Liability Notice. In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.
   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security Interest. You give us a security interest in:
      • The vehicle and all parts or goods installed on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle.
   d. Insurance you must have on the vehicle. You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type

f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.

g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service or other contracts. If we demand that you pay all you owe at once or if we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. WARRANTIES SELLER DISCLAIMS
   If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.
   Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. Applicable Law
   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

7. Warranties of Buyer. You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

CREDIT DISABILITY INSURANCE NOTICE
CLAIM PROCEDURE
If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.
If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays

either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only your interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

c. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES.**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.

Default means that:

- You do not pay any payment on time;
- You give false or incomplete or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property;
- The vehicle is lost, damaged or destroyed; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe including, if allowed by law, attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you. If we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay, and/or what action you must take to redeem the vehicle.

ment(s). WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must repay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | | (Assignee) of (address) |
|---|---|---|
| | | under the terms of Seller's agreement(s) with Assignee. |
| ☐ Assigned with recourse | ☐ Assigned without recourse | ☐ Assigned with limited recourse |

| Seller | By | Title |
|---|---|---|
| | | |

Form No. 553-CA 1/10

1 | ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN: 109740
2 | Christopher P. Barry, SBN: 179308
Angela J. Smith, SBN: 216876
3 | 10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
4 | TEL: (858) 348-1005 / FAX: (858) 348-1150

5 | ROMANO STANCROFF & MIKHOV, PC
Steve Mikhov, SBN: 224676
6 | 640 S. San Vicente, Suite 350
Los Angeles, California 90048
7 | TEL: (323) 936-2274 / FAX: (323) 939-7973

8 | Attorneys for Plaintiff

9

10 |            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 |            IN AND FOR THE COUNTY OF SAN DIEGO

12 | JOSE MONDRAGON, individually      CASE NO.   37-2011-00103236-CU-CO-CTL
and on behalf of all others similarly
13 | situated,                        CLASS ACTION

14 |                 Plaintiff,       AFFIDAVIT OF VENUE BY
                                     PLAINTIFF JOSE MONDRAGON
15 |        v.

16 | RON BAKER CHEVROLET, a
California Corporation;
17 | CAPITAL ONE AUTO FINANCE, a
business entity form unknown; and
18 | DOES 1 through 10, inclusive,

19

20 |                 Defendants.

21

22 | I, JOSE MONDRAGON, declare as follows:

23 |        1.     I am the Plaintiff in this action and make this declaration to the best of

24 | my knowledge, information, and belief of the facts stated herein.

25 |        Yo soy el demandante en esta acción y hacer esta declaración a lo mejor de

26 | mi conocimiento, información, y la creencia de los hechos expuestos en este

27 | documento.

28 | ///

CENTRAL DIVISION

2011 DEC 30  PM 2: 36

SAN DIEGO COUNTY, CA

COPY

1      2.     I purchased the 2008 Chevrolet Silverado (VIN: 3GCEC13CX8G220374)

2  that is the subject of this litigation from Ron Baker Chevrolet, in the City of National

3  City, County of San Diego, State of California.

4      Compré el 2008 Chevrolet Silverado (VIN: 3GCEC13CX8G220374) que es

5      objeto de este litigio de Ron Baker Chevrolet, en la ciudad de National City,

6      el Condado de San Diego, estado de California.

7      3.     I signed all paperwork for the purchase of the 2008 Chevrolet Silverado,

8  at Ron Baker Chevrolet, in the City of National City, County of San Diego, State of

9  California.

10      Yo firmé todos los papeles para la compra de la Silverado 2008 Chevrolet,

11      Chevrolet a Ron Baker, en la ciudad de National City, el Condado de San

12      Diego, estado de California.

13      I declare under penalty of perjury under the laws of the State of California that

14  the foregoing is true and correct and that this declaration was signed on the _23_ day

15  of December, 2011, at _San diego_, California.

16      Declaro bajo pena de perjurio bajo las leyes del Estado de California que lo

17      anterior es verdadera y correcta y que esta declaración fue firmada el día

18      _23_ de diciembre de 2011, en _San diego_, California.

_Jose O'Mondragon_
JOSE MONDRAGON

AFFIDAVIT OF VENUE BY PLAINTIFF JOSE MONDRAGON

EXHIBIT 2

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CLARAL DIST

2011 DEC 30  PM 2:36

SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RON BAKER CHEVROLET, a California Corporation; CAPITAL ONE AUTO
FINANCE, a business entity form unknown; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOSE MONDRAGON, individually and on behalf of all others similarly
situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* |
| SAN DIEGO SUPERIOR COURT - HALL OF JUSTICE | 37-2011-00103236-CU-CO-CTL |
| 330 West Broadway | |
| San Diego, CA 92101 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher P. Barry                                    (858)348-1005
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Rd, Ste 100, San Diego, CA 92131

DATE:
*(Fecha)* DEC 3 0 2011                Clerk, by                                    , Deputy
                                      *(Secretario)* WYNNIE S. ABELLA          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christopher P. Barry, 179308<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Rd, Ste 100, San Diego, CA 92131<br>TELEPHONE NO.: (858)348-1005    FAX NO.: (858)348-1150<br>ATTORNEY FOR *(Name):* Jose Mondragon | CENTRAL DIVISION<br><br>2011 DEC 30  PM 2: 36<br><br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice Courthouse

CASE NAME:
Mondragon, Jose v. Ron Baker Chevrolet

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2011-00103236-CU-CO-CTL |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[X] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation** (Cal. Rules of Court, rules 3.400–3.403)
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [X] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [X] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action *(specify):* Ten (10)

5. This case [X] is [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 29, 2011

Christopher P. Barry
_____
(TYPE OR PRINT NAME)

▶ *(signature)* Christopher P Barry
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

COPY

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

# EXHIBIT 4

1   ROSNER, BARRY & BABBITT, LLP
    Hallen D. Rosner, SBN: 109740
2   Christopher P. Barry, SBN: 179308
    Angela J. Smith, SBN: 216876
3   10085 Carroll Canyon Road, Suite 100
    San Diego, California 92131
4   TEL: (858) 348-1005 / FAX: (858) 348-1150

5   ROMANO STANCROFF & MIKHOV, PC
    Steve Mikhov, SBN: 224676
6   640 S. San Vicente, Suite 350
    Los Angeles, California 90048
7   TEL:  (323) 936-2274
    FAX:  (323) 939-7973
8
    Attorneys for Plaintiff
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| 12  JOSE MONDRAGON, individually and on behalf of all others similarly 13  situated, | CASE NO. 37-2011-00103236-CU-CO-CTL |
| 14              Plaintiff, | **CLASS ACTION** |
| 15      v. | FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND DAMAGES: |
| 16  RON BAKER CHEVROLET, a California Corporation; 17  CAPITAL ONE AUTO FINANCE, a business entity form unknown; and 18  DOES 1 through 10, inclusive, | 1.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS 1 CLAIM; |
| 19 | 2.  VIOLATION OF THE AUTOMOBILE SALES FINANCE ACT – INDIVIDUAL AND CLASS 1 CLAIM; |
| 20              Defendants. | 3.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES – CLASS 1 CLAIM; |
| 21 | 4.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS 2 CLAIM; |
| 22 | 5.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES – CLASS 2 CLAIM; |
| 23 | 6.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS 3 CLAIM; |
| 24 | 7.  VIOLATION OF THE AUTOMOBILE SALES FINANCE ACT – CLASS 3 CLAIM; |
| 25 | 8.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES – CLASS 3 CLAIM; |
| 26 | 9.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – INDIVIDUAL CLAIM; AND |
| 27 | 10.  UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS ACTS & PRACTICES - INDIVIDUAL CLAIM. |
| 28 | |

1     Plaintiff JOSE MONDRAGON, individually as to all causes of action, and on

2 behalf of all others similarly-situated as to the First through Eighth Causes of Action,

3 alleges as follows on information and belief, formed after an inquiry reasonable under

4 the circumstances:

5                                  **INTRODUCTION**

6     1.     Defendant Ron Baker Chevrolet ("Ron Baker") is an automobile

7 dealership in National City, California, that engages in a series of unlawful and

8 deceptive business practices. These business practices are engaged in for one purpose

9 – to sell vehicles to customers and earn extra profits. In this action Plaintiff seeks to

10 put an end to these unlawful and deceptive practices and provide remedies for other

11 affected consumers. The unlawful and deceptive practices engaged in by Ron Baker

12 for which Plaintiff seeks class-wide redress relate to Ron Baker's systematic violations

13 of California's financial disclosure laws.

14     2.     In every vehicle sale in California, dealerships – such as Ron Baker –

15 submit various fees to the California Department of Motor Vehicles ("DMV") on behalf

16 of their customers. Dealerships are legally required, under the Automobile Sales

17 Finance Act (Civil Code Section 2981 *et seq.*) ("ASFA"), to disclose fees paid to public

18 officials, including the DMV, on customers' Retail Installment Sale Contracts ("RISC").

19 For example, dealerships must disclose license fees paid to the DMV on Line 2.A. and

20 "registration, transfer, and titling fees" paid to the DMV on Line 2.B. of the RISC.

21     3.     Moreover, in new vehicle sales to California residents, vehicle purchasers

22 will ***always*** be charged registration and titling fees. (Vehicle Code Section 9250 *et*

23 *seq.*) In used vehicle sales, purchasers will ***always*** have to pay a transfer fee to the

24 DMV to transfer registration from the prior owner. (Vehicle Code Section 9255.) Thus,

25 one or more of these fees will be due in ***every*** vehicle sale in California to California

26 residents.

27     4.     However, Plaintiff is but one of many customers who, during the past four

28 years, purchased a vehicle from Ron Baker and who entered into a RISC prepared by

1   Ron Baker that failed to itemize and disclose registration, transfer, and/or titling fees.

2   Regarding new and used vehicles alike, Ron Baker misstated the amount of license,

3   registration, transfer, and titling fees due and owing to the DMV.

4          5.      Additionally, the California Department of Motor Vehicles ("DMV")

5   established a Business Partner Automation Program whereby "Business Partners" can

6   offer to perform certain registration matters in exchange for a fee.  The Code of

7   Regulations permits Business Partners to charge a fee to consumers who agree to make

8   use of the Program.  The Code of Regulations further requires Business Partners

9   disclose the fee on any purchase contract as an "Optional DMV Electronic Filing Fee."

10  Ron Baker is permitted to charge the consumers – who *agree* to participate in the

11  Program – a maximum fee. However, it has been Ron Baker's practice to automatically

12  insert a charge for the Optional DMV Electronic Filing Fee on customers' purchase

13  contracts, regardless of whether the customer was even informed of, let alone agreed

14  to pay, for the extra service.

15         6.      Plaintiff was also defrauded by Ron Baker during the course of his

16  individual transaction. First, contrary to California law, Ron Baker sold the subject

17  vehicle to Plaintiff for more than the advertised price.  Second, Ron Baker

18  misrepresented that the price of the vehicle included the cost of an alarm and then

19  charged Plaintiff extra for the alarm. Third, Ron Baker "packed" Plaintiff by selling

20  him after-market products, such as GAP insurance and a service contract, without

21  Plaintiff's knowledge or consent. Fourth, Ron Baker failed to disclose that the vehicle

22  Plaintiff was purchasing had previously been involved in an accident. Fifth, Ron Baker

23  improperly ran Plaintiff's credit without his permission.  Finally, Ron Baker failed to

24  properly disclose Plaintiff's deferred down payment.

25         7.      The conduct herein described violates, *inter alia*, the Automobile Sales

26  Finance Act ("ASFA") (Civil Code § 2981, *et seq.*), the Consumers Legal Remedies Act

27  ("CLRA") (Civil Code § 1750, *et seq.*), and the Unfair Competition Law ("UCL") (Bus.

28  & Prof. Code § 17200, *et seq.*).

1

## JURISDICTION AND VENUE

2       8.      This Court has jurisdiction over all causes of action asserted herein

3   pursuant to the California Constitution, Article VI, Section 10, because this case is a

4   cause not given by statute to other trial courts.

5       9.      This Court has jurisdiction over Defendants because each are individuals,

6   associations, or corporations that are either authorized to conduct or, in fact, do

7   conduct substantial business in the State of California, County of San Diego.

8       10.     Venue is proper in this County pursuant to Code of Civil Procedure

9   § 395(b) because the acts upon which this action is based occurred in this County. The

10  contracts for products and services at issue in this case were entered into in this

11  County and communications from Defendants were received in this County. Thereby,

12  Plaintiff and Class members were injured and/or subjected to irreparable harm in this

13  venue. Defendants received substantial compensation and profits from its products

14  and services in this County, caused misrepresentations to be disseminated, entered

15  into agreements and transactions, and breached agreements in this County. Thus,

16  Defendants' liability arose primarily in this County.

17

## PARTIES

18      11.     Plaintiff Jose Mondragon is an individual who, at all times material,

19  resided in the City of Chula Vista, County of San Diego, State of California.

20      12.     Defendant Ron Baker Chevrolet ("Ron Baker"), a California corporation,

21  is a new and used car dealership conducting business in the City of National City,

22  County of San Diego, State of California.

23      13.     Defendant Capital One Auto Finance ("Capital One"), business entity

24  form unknown, is and was, at all times material, doing business in the County of San

25  Diego, State of California. Plaintiff is informed and believes that Capital One was

26  previously doing business in California, as a Texas corporation, under the corporate

27  name of Capital One Auto Finance, Inc., but its registration with the California

28  Secretary of State was surrendered in 2011.

3

14.     Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendants sued herein as Does 1 through 10, inclusive, under the provisions of Section 474 of the California Code of Civil Procedure. Defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are legally liable to Plaintiff and the class. Plaintiff will set forth the true names and capacities of the fictitiously-named Defendants together with appropriate charging allegations when ascertained.

15.     All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

16.     Each Defendant, whether actually or fictitiously-named herein, was the principal, agent (actual or ostensible), or employees of each other Defendant and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff and the classes for the relief prayed for herein.

## CLASS ALLEGATIONS

17.     This action is brought, and may properly be maintained, as a class action pursuant to the provisions of California Code of Civil Procedure Section 382 and/or Civil Code Section 1781(a).

18.     Plaintiff brings this action on behalf of himself and all others similarly-situated as a representative member of the following proposed classes:

(a)     "**CLASS 1:**" All persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from Ron Baker for personal use to be registered in the State of California, and (2) signed a RISC that failed to separately disclose, on the RISC, the amounts paid for license fees and/or the amounts paid for registration, transfer, and/or titling fees.

/ / /

1   Plaintiff proposes a Subclass for all persons for whom Capital One is the holder and/or
2   assignee of their RISC.

3          (b)    "CLASS 2:"  All persons who, in the four years prior to the filing
4                 of this complaint, (1) purchased a vehicle from Defendant Ron
5                 Baker for personal use, (2) signed a Retail Installment Sale
6                 Contract ("RISC"), and (3) Ron Baker automatically included a
7                 charge on the RISC for the "Optional DMV Electronic Filing Fee."

8          (c)    "CLASS 3:" All persons who, in the four years prior to the filing of
9                 this complaint, (1) purchased a vehicle in California for personal
10                use to be registered in the State of California, (2) signed a RISC
11                that failed to separately disclose on the RISC the amounts paid for
12                registration/transfer/titling fees, and (3) whose RISC was assigned
13                to Capital One.

14  19.    In this lawsuit, Plaintiff and the Classes seek both equitable relief,
15  including declaratory, injunctive, restitutionary, and other equitable monetary relief
16  and economic and statutory damages as set forth more fully below, including, but not
17  limited to, full restitution and/or rescission of any RISC entered into by any Class
18  Member.

19  20.    Specifically excluded from the proposed Classes are the Court and its
20  staff, Defendants, any entity in which any of the Defendants has a controlling interest,
21  and the officers, directors, affiliates, legal representatives, heirs, successors,
22  subsidiaries, and/or assigns of any such individual or entity.

23  A.     NUMEROSITY OF THE CLASSES

24  21.    The proposed Classes are so numerous that the individual joinder of the
25  Class Members in one action is impracticable.  The exact number and the identities of
26  the Members of the Classes are unknown at this time and can only be ascertained
27  through appropriate investigation and discovery.

28  / / /

**B.    EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT**

22.    Common questions of law and fact arising out of the claims here at issue exist as to all members of the Classes and predominate over any individual issue. These common legal and factual questions include, but are not limited to, the following:

    a.    whether Ron Baker and/or Capital One violated this state's consumer protection statutes;

    b.    whether Ron Baker's failure to separately itemize and disclose license fees from registration/transfer/titling fees on customers' RISCs and Capital One's acceptance of and failure to require RISCs containing proper itemizations constitutes a violation of the ASFA, CLRA, and/or the UCL;

    c.    whether Ron Baker's practice of automatically charging consumers an "Optional DMV Electronic Filing Fee" constitutes a violation of the CLRA, and/or the UCL;

    d.    the amount of revenues and profits Ron Baker and Capital One received, and/or the amount of monies or other obligations imposed on, or lost by, Class Members as a result of such wrongdoing;

    e.    whether Class Members are threatened with irreparable harm and are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

    f.    whether Class Members are entitled to rescission, payment of actual, incidental, consequential, exemplary, punitive, and/or statutory damages plus interest thereon, and, if so, what is the nature of such relief.

**C.    TYPICALITY OF CLAIMS**

23.    Plaintiff's claims are typical of the claims of members of the Classes.

24.    Ron Baker engaged in the standard practice and/or procedure of failing to separately itemize and disclose registration, transfer, and/or titling fees paid by

1  Plaintiff and Class 1 Members on Line 2.B. of the Itemization of the Amount Financed
2  on their RISCs. In fact, Plaintiff's and Class 1 Members' RISCs failed to list any
3  amount for registration/transfer/titling fees on Line 2.B.   Rather, those RISCs
4  contained the notation "Incl." on Line 2.B.   In Plaintiff's case, there was a particular
5  amount due to the DMV for a transfer fee for the vehicle, which amount should have
6  been disclosed on Line 2.B. rather than a notation that such fees were "Incl."  The
7  notation "Incl.", which presumably is short for "Included," does not inform the customer
8  the amount of the fees due, whether they are included in another amount disclosed on
9  the contract, or the dealership is paying the fees as "included" in the amount otherwise
10 being paid for the vehicle.  The use of the notation "Incl." fails to provide the consumer
11 any information about the amount of the fees and whether the consumer is charged for
12 the fees.

13          25.     Additionally, Ron Baker engaged in the standard practice or procedure
14 of automatically including a charge in the RISCs of Plaintiff and each Class 2 Member
15 for the "Optional DMV Electronic Filing Fee" without disclosure to Plaintiff and the
16 Class 2 Members that they did not have to pay this fee.

17          26.     The RISCs entered into by Plaintiff and the Class 3 Members were all
18 assigned    to    Capital    One    and    failed    to    itemize    on    their    face    the
19 registration/transfer/titling fees due in the transaction.

20          27.     Accordingly, Plaintiff and all members of the Classes had their legal
21 rights infringed upon, sustained injuries, losses, and damages as described herein,
22 and/or are facing irreparable harm arising out of Defendant Ron Baker and Capital
23 One's common course of conduct. The right of Plaintiff and each member of the Classes
24 to payment of any actual, incidental, consequential, exemplary, and/or statutory
25 damages or restitution resulting therefrom were proximately caused by Defendants'
26 wrongful conduct, in violation of state law as alleged herein.

27 / / /

28 / / /

FIRST AMENDED COMPLAINT

1

#### D.   ADEQUATE REPRESENTATION

2    28.   Plaintiff will fairly and adequately protect the interests of the members

3 of the Classes in that he does not have irreconcilable conflicts with or interests

4 materially antagonistic to those of other Class Members.

5    29.   Plaintiff retained attorneys experienced in the prosecution of class

6 actions, including consumer class actions.

7

#### E.   SUPERIORITY AND SUBSTANTIAL BENEFITS OF CLASS

8    LITIGATION

9    30.   To the extent it is an element for establishing class certification for

10 certain causes of action, a class action is superior to other available methods for the

11 fair and efficient group-wide adjudication of this controversy and, as applicable,

12 possesses substantial benefits.   Individual joinder of all Class Members is

13 impracticable, and no other group method of adjudication of all claims asserted herein

14 is more efficient and manageable while at the same time provides all the remedies

15 available to ensure the full purpose of this State's consumer protection laws are

16 effectuated.  Furthermore, as the damages suffered by each individual Class Member

17 may be relatively small and the relief sought discrete, the expense and burden of

18 individual Class Members to redress the wrongs done to them, and the cost to the court

19 system of adjudicating such litigation on an individual basis, would be substantial. To

20 counsel's knowledge there has not been any substantial litigation concerning this

21 controversy commenced against the parties.  It is not anticipated that there will be any

22 difficulties in the management of this litigation due to the focus of the wrongdoing on

23 Ron Baker and Capital One's conduct and their knowledge of the true facts.

24 Individualized litigation would also present the potential for varying, inconsistent, or

25 contradictory judgments and would magnify the delay and expenses of all parties and

26 the court system resulting from multiple trials asserting the same factual issues.  The

27 conduct of this action as a class action presents fewer management difficulties,

28 conserves the resources of the parties and the court system, and protects the rights of

each Class Member as compared to other methods for the group-wide adjudication of this controversy. Thus, the Classes and the court system achieve substantial benefits by the prosecution of this action on a class-wide basis by avoiding the burden of multiple litigation involving identical claims, as well as by aiding legitimate business enterprises in curtailing illegitimate competition and ensuring a therapeutic effect on those companies such as Ron Baker and Capital One that indulge in fraudulent practices.

31.     Notice of the pendency of any resolution of this action can be provided to the Class Members by publication and/or individual mailed notice, as appropriate under California law, and the costs of such notice are properly imposed on Ron Baker and/or Capital One.

32.     This action should be certified to proceed on a class-wide basis because:

a.     the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Ron Baker and/or Capital One;

b.     due to the nature of the relief sought, the prosecution of separate actions by individual Class Members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications or could substantially impair or impede the ability of such Class Members to protect their interests;  and

c.     Ron Baker and Capital One act or refuse to act in respects generally applicable to the Classes, thereby making appropriate final injunctive relief with regard to the Class Members as a whole in terms of the equitable relief sought.

/ / /

/ / /

9

## SUMMARY OF FACTS COMMON TO CLASS 1

33.    During the Class period, it was Ron Baker's practice and/or procedure to fail to disclose on RISCs any amounts due and owing to the California DMV for registration, transfer, and/or titling fees.   Rather than separately itemize the registration, transfer, and/or titling fees on Line 2.B. of the Itemization of the Amount Financed Section on its customers' RISCs, Ron Baker instead uses the notation "Incl.," failing to indicate where or in what charge, if any, the registration/transfer/titling fees are included in "Incl." or "included."

34.    Each Member of Class 1 purchased a vehicle from Ron Baker for personal use to register in the State of California.  Each Class 1 Member executed a RISC with Ron Baker.  Each Class 1 Member's RISC failed to separately itemize and disclose the registration/transfer/titling fees on Line 2.B., as required by California law.  Each Class Member's RISC states the registration/transfer/titling fees are "Incl."

35.    Each member of the Subclass had their RISC assigned to Capital One, or had their RISC acquired by Capital One such that Capital One is the holder and/or assignee of their RISC.

## SUMMARY OF FACTS COMMON TO CLASS 2

36.    During the Class period, it was also Ron Baker's practice and/or procedure to charge all customers an "Optional DMV Electronic Filing Fee," regardless of whether or not the customer had agreed to pay such a fee.

37.    Each Class 2 Member purchased a vehicle from Ron Baker, for personal use, and executed a RISC with Ron Baker for that vehicle. Each Class 2 Member's RISC, which was prepared by Ron Baker, included a charge for the "Optional DMV Electronic Filing Fee" in the Itemization of the Amount Financed Section of the RISC.

## SUMMARY OF FACTS COMMON TO CLASS 3

38.    During the Class period, it was Capital One's practice to accept assignment of RISCs for vehicle purchases in California where the amount due and owing to the California DMV for registration/transfer/titling fees were not separately

1   disclosed on the RISC. Rather than only accept assignment of RISCs that properly and

2   separately itemize the registration/transfer/titling fees on Line 2.B. of the Itemization

3   of the Amount Financed section on the RISCs, Capital One accepted assignment of

4   RISCs that failed to separately disclose the registration/transfer/titling fees on the

5   RISC. The RISCs Capital One accepted assignment of fail to contain all disclosures

6   required under California law.

7         39.    Each Member of Class 3 purchased a vehicle in California for personal use

8   to be registered in the State of California. Each Class 3 Member executed a RISC that

9   was assigned to Capital One. Each Class 3 Member's RISC failed to separately itemize

10   and disclose the registration/transfer/titling fees on Line 2.B., as required by law.

11         **SUMMARY OF FACTS RELATIVE TO PLAINTIFF'S INDIVIDUAL**

12                              **PURCHASE**

13         40.    On April 28, 2010, Jose Mondragon went to Ron Baker's dealership in

14   National City to purchase a vehicle. Mr. Mondragon selected a 2008 Chevrolet

15   Silverado, VIN: 3GCEC13CX8G220374 (the "Vehicle"). The Vehicle had a window

16   sticker identifying the price as approximately $17,000.

17         41.    While negotiating with the salesman Carlos Ortiz, Mr. Mondragon was

18   told Ron Baker was including an alarm at no charge to him. Mr. Mondragon told Ron

19   Baker he could afford to pay approximately $450 as a monthly payment. Mr. Ortiz told

20   Mr. Mondragon the best he could get him was $550, and he would need to make a

21   $4,500 down payment in order to have monthly payments of approximately $550.

22         42.    Mr. Mondragon never attended high school, and is not able to read and

23   understand written English. Similarly, his ability to read and understand written

24   Spanish is also limited. Mr. Mondragon's transaction was negotiated entirely in

25   Spanish.

26         43.   When Mr. Mondragon told Mr. Ortiz he did not have $4,500 for a down

27   payment, Ron Baker told him he could pay a portion of the $4,500 that day and the rest

28

1   at a later date.  Based on Mr. Ortiz's representations, Mr. Mondragon agreed to

2   purchase the Vehicle.

3       44.    Mr. Mondragon was then introduced to Ron Baker's Finance Manager,

4   Mr. Robert Montejano.  Ron Baker prepared a Retail Installment Sale Contract

5   ("RISC #1") for Mr. Mondragon to purchase the Vehicle.  Mr. Mondragon was simply

6   instructed where to sign and initial the documents. Attached hereto as Exhibit 1 is a

7   true and correct copy of RISC #1, which was executed by Mr. Mondragon and Ron

8   Baker on April 28, 2010.

9       45.    RISC #1 states the cash price for the Vehicle is $23,995, which was almost

10  $7,000 more than the advertised price.  RISC #1 also included a charge for $500 for a

11  theft deterrent device or alarm, even though Ron Baker told Mr. Mondragon the alarm

12  was included at no cost.

13      46.    RISC #1 included a $29 charge for the "Optional DMV Electronic Filing

14  Fee," even though no one at Ron Baker asked Mr. Mondragon whether he wanted to

15  pay the fee to receive the service.

16      47.    RISC #1 included a $2,000 charge for a service contract from Western

17  General, even though Ron Baker had not discussed with Mr. Mondragon the purchase

18  of a service contract for the Vehicle.  Furthermore, contrary to California law, Ron

19  Baker did not provide Mr. Mondragon with any paperwork relating to a service

20  contract.

21      48.    Additionally, RISC #1 included a $750 charge for GAP Insurance. As with

22  the Optional DMV Electronic Filing Fee and the service contract, Ron Baker did *not*

23  discuss with Mr. Mondragon whether he wanted to purchase a Gap Contract, and

24  Mr. Mondragon does not know what Gap Insurance is.

25      49.    Moreover, RISC #1 includes a charge $427 as "license fees" on Line 2.A.

26  of the Itemization of the Amount Financed Section and includes the notation "Incl." on

27  Line 2.B. for registration, transfer, and titling fees, without disclosing the amount due

28  or what other figure on the contract the amount due might be included in. To the

1     extent the registration, transfer, and titling fees were included on another line, such

2     as the license fees line, the license fee disclosure is therefore inaccurate and overstated.

3         50.    Finally, RISC #1 states Mr. Mondragon made a $4,500 cash down

4     payment. In fact, Mr. Mondragon did not pay any money on April 28, 2010. Rather,

5     Mr. Mondragon's first payment towards the down payment on the Vehicle was only

6     $1,800, which was made on the following day, April 29, 2010. RISC #1 does not

7     disclose that Mr. Mondragon and Ron Baker agreed his down payment would be paid

8     in parts, or what the schedule was for Mr. Mondragon to make the payments.

9         51.    On May 3, 2010, Mr. Mondragon returned to Ron Baker. While there,

10     Mr. Montejano told Mr. Mondragon he had to sign a new purchase contract for the

11     Vehicle. It was not explained to Mr. Mondragon why he needed to sign a new contract,

12     nor was Mr. Mondragon told that if he did not want to sign a new contract he could

13     return the Vehicle and get his down payment back. Not knowing he had any other

14     option, Mr. Mondragon agreed to sign another contract for the Vehicle.

15         52.    In the new Retail Installment Sale Contract for the Vehicle ("RISC #2"),

16     Ron Baker raised Mr. Mondragon's Annual Percentage Rate ("APR") from 15.99% to

17     16.85%, decreased the cash price of the car by $500, and decreased the cost of the

18     service contract by $500. The net effect of the changes was to reduce Mr. Mondragon's

19     monthly payment from $554.35 to $543.42. However, none of these changes were

20     discussed with Mr. Mondragon. Attached hereto as Exhibit 2 is a true and correct copy

21     of RISC #2, which was executed by Mr. Mondragon and Ron Baker on or about

22     May 3, 2010.

23         53.    RISC #2 still included a charge for the alarm, a charge for a Gap Contract,

24     a charge for a service contract, and a charge for the "Optional DMV Electronic Filing

25     Fee," all without Mr. Mondragon's knowledge he was being charged for these items.

26         54.    Again, RISC #2 (like RISC #1) did not list an amount for registration,

27     transfer, and titling fees – merely included the notation "Incl." on Line 2.B. of the

28     Itemization of the Amount Financed Section of the RISC. Ron Baker disclosed a $427

FIRST AMENDED COMPLAINT

1   charge as "license fees" on Line 2.A. of RISC #2, which is believed to be an inflated or
2   false amount for license fees actually due and owing to the DMV.

3       55.   Finally, RISC #2 stated Mr. Mondragon had made a $4,500 cash down
4   payment. This statement was false when made by Ron Baker. As of May 3, 2010,
5   Mr. Mondragon had only paid $1,800 as a down payment. In fact, while
6   Mr. Mondragon was at the dealership on May 3, 2010, Mr. Montejano told him he had
7   30 days to pay the remaining $2,700 due on the down payment. To that end,
8   Mr. Mondragon paid Ron Baker $2,700 on June 1, 2010.

9       56.   Plaintiff is informed and believes that Ron Baker did not pay *any* money
10   to the DMV for license, registration, transfer, or titling fees for the Vehicle. The
11   Vehicle had previously been registered in July 2009 and, accordingly, the only fee due
12   and owing when Mr. Mondragon purchased it in May 2010 should have been the $15
13   transfer fee. Moreover, Mr. Mondragon received a bill from the DMV, and paid the
14   2010 license and registration fees on June 30, 2010, within a few months of purchasing
15   the Vehicle from Ron Baker. As such, Ron Baker could not have submitted to the DMV
16   the $427 it listed on RISC # 2 and that it collected from Mr. Mondragon. Ron Baker
17   has not, to this date, refunded any of the improper $427 charge to Mr. Mondragon.

18       57.   Subsequent to his purchase of the Vehicle, Mr. Mondragon has come to
19   believe the Vehicle was in an accident prior to it being sold to him, a fact Ron Baker
20   did *not* disclose to him at the time of the purchase.

21       58.   Finally, although Ron Baker obtained Mr. Mondragon's credit scores,
22   Mr. Mondragon was never asked to, and never did, sign a credit application
23   authorizing Ron Baker to obtain his credit scores.

24       59.   At some point after May 3, 2010, RISC #2 for the sale of the Vehicle to
25   Plaintiff was assigned by Ron Baker to Defendant Capital One. The improper
26   disclosure of the registration/transfer/titling fees appears on the face of RISC #2.

27       60.   RISC #2 for the Vehicle included the following language:

28

14

1    NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT
2    IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE
3    DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR
4    SERVICES OBTAINED PURSUANT HERETO OR WITH THE
5    PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR
6    SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR
7    HEREUNDER.

8        61.    This "holder" clause in RISC #2 makes Capital One liable for all claims
9    and defenses that could be raised against Ron Baker, with respect to the sale of the
10   Vehicle.

11       62.    Plaintiff has made his monthly payments to Capital One in accordance
12   with the terms of RISC #2.

13       63.    California Vehicle Code § 11614(a) provides it is unlawful for a lessor-
14   retailer licensed in this state to "Make or disseminate, or cause to be made or
15   disseminated, before the public in this state, in any newspaper or other publication, or
16   any advertising device, or by oral representation, or in any manner or  any means
17   whatsoever, any statement that is untrue or misleading and that is known, or which
18   by the exercise or reasonable care should be known, to be untrue or misleading . . . ."

19       64.    California Vehicle Code § 11713(a) provides it is unlawful for any licensed
20   dealer to "Make or disseminate, or cause to be made or disseminated, before the public
21   in this state, in any newspaper or other publication, or any advertising device, or by
22   public outcry or proclamation, or in any manner or  any means whatsoever, any
23   statement that is untrue or misleading and that is known, or which by the exercise or
24   reasonable care should be known, to be untrue or misleading . . . ."

25       65.    Ron Baker is, on information and belief, a licensed dealer and lessor-
26   retailer in this state within the terms of the California Vehicle Code Sections 285 and
27   373.

28   / / /

1  <u>**FIRST CAUSE OF ACTION**</u>

2  **Violation of Consumers Legal Remedies Act, Civil Code Section 1750,** *et*

3  *seq.* **– Class 1 Claim – Injunctive Relief Only – As Against Defendants Ron**

4  **Baker, Capital One, and Does 1-10**

5       66.    Plaintiff, on her own behalf and on behalf of the Class 1 Members,

6  incorporates by reference each and every allegation set forth in Paragraphs 1 through

7  65, inclusive, of this Complaint and further alleges as follows.

8       67.    The vehicles purchased by Plaintiff and each Class 1 Member constitute

9  "goods" bought for use primarily for personal, family, or household purposes pursuant

10  to Civil Code Section 1761(a).

11       68.    Plaintiff and each Class 1 Member are "consumers" pursuant to

12  Civil Code Section 1761(d).

13       69.    Defendants Ron Baker, Capital One, and Does 1-10 are "persons"

14  pursuant to Civil Code Section 1761(c).

15       70.    The advertisement and sale of the vehicles to Plaintiff and each Class 1

16  Member are "transactions" pursuant to Civil Code Section 1761(e).

17       71.    The acts and/or practices engaged in by Ron Baker and alleged herein

18  were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the

19  Class 1 Members primarily for personal, family, or household purposes, and violated

20  and continued to violate the CLRA in at least the following respects:

21       (a)    Ron Baker represented that the transactions had been supplied in

22            accordance with previous representations when they had not; and

23       (b)    Ron Baker represented that the transactions conferred or involved rights,

24            remedies, or obligations which they did not have or involve, or which were

25            prohibited by law.

26       72.    Plaintiff alleges the amounts disclosed as "license fees" on his RISC, and

27  the RISCs of the members of Class 1, were false and overstated.

28  / / /

FIRST AMENDED COMPLAINT

73.   Plaintiff alleges the notation "Incl." as used to disclose the amount of registration, transfer, and titling fees due is false and misleading, as it does not indicate whether the amount due for those fees is included in the purchase price, included in some other disclosure on the RISC, or being paid by Ron Baker.

74.   On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 1 identified above.  The letter was received by Ron Baker on December 14, 2011.

75.   Plaintiff and the Class 1 Members relied on Ron Baker to prepare legal and enforceable contracts as a licensed automobile dealership.  Plaintiff and Subclass Members relied on Capital One to accept for assignment only legal and enforceable contracts as an assignee and holder to their conditional sale contracts.  Plaintiff and the Class 1 and Subclass Members suffered damages by making payments pursuant to unenforceable contracts and/or paying overstated license fees to which they are entitled to refunds.  Plaintiff was not aware of Ron Baker's and Capital One's deceptive conduct until contacting attorneys in 2011.

76.   The Consumers Legal Remedies Act provides that a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a claim for damages under the Consumers Legal Remedies Act for violation of Civil Code Sections 1770(a)(14) and (16), including statutory damages of up to $1,000 per consumer and/or up to $5,000 per consumer who qualifies as a "senior citizen" under the CLRA, should the statutory thirty-day period expire without a complete cure of Ron Baker's violations.

77.   Section 1780(a)(2) of the Act provides that a consumer is entitled to an injunction prohibiting acts or practices which violate the Act.  Plaintiff alleges Ron Baker has a pattern and practice of failing to properly and separately itemize, on RISCs, the registration, transfer or titling fees owing on the vehicles it sells,

17

1    overstating the amount of license fees due, and/or violating the Single Document Rule

2    of the ASFA.

3       78.    Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to

4    Capital One and/or Capital One is the holder of these RISCs. The improper disclosure

5    of the registration/transfer/titling fees appears on the face of the RISCs.

6       79.    Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,

7    except for damages at this time, including an order enjoining Defendants from the acts,

8    methods, and practices as set forth in this Complaint, and attorneys' fees and costs

9    according to proof at time of trial.

10                **SECOND CAUSE OF ACTION**

11    **Action for Rescission of Conditional Sales Contract for the Sale of Goods**

12      **Pursuant to Civil Code § 1689(b) for Violation of the Automobile Sales**

13       **Finance Act, Civil Code Section 2981, *et seq.* – Individual and Class 1**

14      **Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

15       80.    Plaintiff, on his own behalf and on behalf of the Class 1 Members,

16    incorporates by reference each and every allegation set forth in Paragraphs 1 through

17    79, inclusive, of this Complaint and further alleges as follows.

18       81.    The RISCs executed by Plaintiff and each Class 1 Member for their

19    vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a).

20       82.    Ron Baker, Capital One, and Does 1-10 are "sellers" pursuant to Civil

21    Code Section 2981(b).

22       83.    Plaintiff and each Class 1 Member are "buyers" pursuant to Civil Code

23    Section 2981(c).

24       84.    The vehicles purchased by Plaintiff and each Class 1 Member are "motor

25    vehicles" pursuant to Civil Code Section 2981(k).

26       85.    Civil Code Section 2982(a) provides a list of the disclosures which a

27    conditional sale contract for the sale of a motor vehicle shall contain.

28    / / /

FIRST AMENDED COMPLAINT

86.    When Ron Baker disclosed, on Line 2.B. of Plaintiff's and Class 1 Members' RISCs, a notation of "Incl." as the amount paid for registration/transfer/titling fees, it violated Civil Code Section 2982(a)(2)(B) by failing to disclose the actual amount paid for those fees.

87.    Plaintiff is informed and believes Ron Baker inflated the amount due for license fees and that the amount disclosed as license fees on his RISC and the RISCs of the members of Class 1 were false and overstated.

88.    The "Single Document Rule" in Civil Code Section 2981.9 requires that all of the agreements between the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle be contained in a single document. The RISCs of Plaintiff and the Class 1 Members do not show the true and correct cost of the license and registration fees due, and therefore violate the Single Document Rule because not all of the terms of cost are set forth in the RISCs. That amount can only be learned by resorting to other documents.

89.    Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to Capital One and/or Capital One is the holder of these RISCs. The improper disclosure of the registration/transfer/titling fees appears on the face of the RISCs.

90.    Ron Baker did not correct the willful violation of the ASFA appearing on the face of Plaintiff's and the Class 1 Members' RISCs within 30 days of execution of the contracts. Capital One did not correct the willful violation of the ASFA appearing on the face of Plaintiff's and the Subclass Members' RISCs within 20 days of the assignment of such RISCs to Capital One.

137.    Plaintiff and each Class 1 Member have been damaged by Ron Baker's violations of the ASFA. Since the violations include violations of Civil Code Sections 2981.9 and 2982(a), Plaintiff and each Class 1 Member are entitled to statutory remedies pursuant to Civil Code Sections 2983 and 2983.1. Plaintiff also seeks his attorneys' fees and costs pursuant to Civil Code Section 2983.4.

/ / /

FIRST AMENDED COMPLAINT

**THIRD CAUSE OF ACTION**

**Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. &**

**Prof. Code Section 17200, *et seq.* – Class 1 Claim – As Against Defendants**

**Ron Baker, Capital One, and Does 1-10**

91.     Plaintiff, on his own behalf and on behalf of the Class 1 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 90, inclusive, of this Complaint and further alleges as follows.

92.     Ron Baker's acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful and/or unfair business acts and/or practices within the meaning of California Business & Professions Code Sections 17200, *et seq.*

93.     Plaintiff and the Class 1 Members have suffered injury in fact and have lost money as a result of Ron Baker's unfair competition, including, but not limited to, their statutory damages under the ASFA caused by Ron Baker's acts and overpaying amounts due for license fees.

94.     Ron Baker engaged in "unlawful" business acts and practices by failing to properly and separately itemize, on RISCs, the registration, transfer or titling fees owing on the vehicles it sells, overstating license fees, and failing to disclose in a single document all of the agreements as to the terms of payment for the vehicles purchased by Plaintiff and the Class 1 Members.  These business policies, acts, and/or practices were intended to and did violate, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, and the ASFA.  Accordingly, Ron Baker violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Ron Baker from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

95.     Ron Baker also engaged in an "unfair" business act or practice in that the justification for selling vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is

20

1  immoral, unscrupulous, unethical, and offensive, or causes substantial injury to

2  consumers.

3  96.    The above-described unlawful or unfair business acts and practices

4  conducted by Ron Baker continue to this day and present a threat to Plaintiff and the

5  Class 1 Members, and the general public in that Ron Baker failed to publicly

6  acknowledge the wrongfulness of its actions and provide full equitable injunctive and

7  monetary relief as required by the statute.

8  97.    Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to

9  Capital One and/or Capital One is the holder of these RISCs. The improper disclosure

10  of the registration/transfer/titling fees appears on the face of the RISCs.

11  98.    Pursuant to California Business & Professions Code Section 17203,

12  Plaintiff seeks an order of this Court requiring Defendants to immediately cease such

13  acts of unfair competition and enjoining Defendants from continuing to conduct

14  business via the unlawful and/or unfair business acts and practices set forth in this

15  Complaint and from failing to fully disclose the true nature of their

16  misrepresentations, and ordering Defendants to engage in a corrective notice and

17  advertising campaign.   Plaintiff additionally requests an order from the Court

18  requiring Defendants to provide complete equitable monetary relief so as to prevent

19  Defendants from benefitting from the practices that constitute unfair competition or

20  the use or employment of any monies resulting from the sale of these vehicles,

21  including requiring the payment of restitution of any monies as may be necessary to

22  restore any money or property which may have been acquired by means of such acts

23  of unfair competition.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

FIRST AMENDED COMPLAINT

**FOURTH CAUSE OF ACTION**

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et***

***seq.* – Class 2 Claim – Injunctive Relief Only – As Against Defendants Ron**

**Baker and Does 1-10**

99.     Plaintiff, on his own behalf and on behalf of the Class 2 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 98, inclusive, of this Complaint and further alleges as follows.

100.    The vehicles purchased by Plaintiff and each Class 2 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

101.    Plaintiff and each Class 2 Member are "consumers" pursuant to Civil Code Section 1761(d).

102.    Defendants Ron Baker and Does 1-10 are "persons" pursuant to Civil Code Section 1761(c).

103.    The advertisement and sale of the vehicles to Plaintiff and each Class 2 Member are "transactions" pursuant to Civil Code Section 1761(e).

104.    The acts and/or practices engaged in by Ron Baker and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 2 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

(a)     Ron Baker represented the transactions had been supplied in accordance with previous representations when they had not; and

(b)     Ron Baker represented that the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

105.    On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and

22

FIRST AMENDED COMPLAINT

1    demand letter, seeking both individual relief and relief on behalf of Class 2 identified
2    above.  The letter was received by Ron Baker on December 14, 2011.

3        106.   Plaintiff and the Class 2 Members relied on Ron Baker to prepare legal
4    and  enforceable  contracts  as  a  licensed  automobile  dealership.  Plaintiff  and
5    Class 2 Members suffered damages by being automatically charged, and therefore
6    paying, an optional fee and related finance charges on such amount.  Plaintiff was not
7    aware of Ron Baker's deceptive conduct until contacting attorneys in 2011.

8        107.   Plaintiff and the Class 2 Members suffered further damages as a result
9    of Ron Baker's practices in that they paid fees they would not have had to pay had Ron
10   Baker disclosed that the fees were optional, rather than automatically charging them.

11       108.   The Consumers Legal Remedies Act provides a complaint for violation of
12   the Act may be amended without leave of court should the violation not be remedied
13   within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a
14   claim for damages under the Consumers Legal Remedies Act for violation of Civil Code
15   Sections  1770(a)(14)  and  (16),  including  statutory  damages  of  up  to  $1,000  per
16   consumer and/or up to $5,000 per consumer who qualifies as a "senior citizen" under
17   the CLRA, should the statutory thirty-day period expire without a complete cure of Ron
18   Baker's violations.

19       109.   Civil Code Section 1780(a)(2) provides a consumer is entitled to an
20   injunction prohibiting acts or practices which violate the CLRA.  Plaintiff alleges Ron
21   Baker has established a pattern and/or practice of automatically charging customers
22   the "Optional DMV Electronic Filing Fee," without telling customers the fee is optional
23   and they can refuse to pay it.

24       110.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,
25   except for damages at this time, including an order enjoining Ron Baker from the acts,
26   methods, and practices as set forth in this Complaint, and attorneys' fees and costs
27   according to proof at time of trial.

28   / / /

FIRST AMENDED COMPLAINT

## FIFTH CAUSE OF ACTION

**Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Class 2 Claim – As Against Defendants Ron Baker and Does 1-10**

111.   Plaintiff, on his own behalf and on behalf of the Class 2 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 110, inclusive, of this Complaint and further alleges as follows.

112.   Defendant Ron Baker's omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful and/or unfair business acts and/or practices within the meaning of California Business & Professions Code Sections 17200, *et seq.*

113.   Plaintiff and the Class 2 Members suffered injury in fact and lost money as a result of Ron Baker's unfair competition, including, but not limited to, paying for a service they were automatically charged by Ron Baker, but were not required to pay for.

114.   Defendant Ron Baker engaged in "unlawful" business acts and/or practices by automatically charging customers the Optional DMV Electronic Filing Fee, without telling customers that the fee is optional and that they can refuse to pay it.   This business act and/or practice was intended to and did violate, *inter alia*, California Civil Code § 1709, *et seq.*, and the CLRA.   Accordingly, Ron Baker has violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act and/or practice.   Plaintiff seeks an order enjoining Ron Baker engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

115.   Ron Baker also engaged in an "unfair" business act and/or practice in that the justification for selling vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is

24

1   immoral, unscrupulous, unethical, and offensive, or causes substantial injury to

2   consumers.

3      116.   The above-described unlawful and/or unfair business acts and/or practices

4   conducted by Ron Baker continue to this day and present a threat to Plaintiff and the

5   Class 2 Members, and the general public because Ron Baker failed to publicly

6   acknowledge the wrongfulness of its actions and provide full equitable injunctive and

7   monetary relief as required by the statute.

8      117.   Pursuant to California Business & Professions Code Section 17203,

9   Plaintiff may seek an order of this Court requiring Ron Baker to immediately cease

10  such acts of unfair competition and enjoining Ron Baker from continuing to conduct

11  business via the unlawful and/or unfair business acts and/or practices set forth in this

12  Complaint   and   from   failing   to   fully   disclose   the   true   nature   of   their

13  misrepresentations, and ordering Ron Baker to engage in a corrective notice and

14  advertising campaign.   Plaintiff additionally requests an order from the Court

15  requiring Ron Baker to provide complete equitable monetary relief so as to prevent Ron

16  Baker from benefitting from the practices that constitute unfair competition or the use

17  or employment of any monies resulting from the sale of these vehicles, including

18  requiring the payment of restitution of any monies as may be necessary to restore any

19  money or property which may have been acquired by means of such acts of unfair

20  competition.

21                            **SIXTH CAUSE OF ACTION**

22  **Violation of Consumers Legal Remedies Act, Civil Code Section 1750,** *et*

23  *seq.* **– Class 3 Claim – Injunctive Relief Only – As Against Defendants**

24                       **Capital One and Does 1-10**

25      118.   Plaintiff, on his own behalf and on behalf of the Class 3 Members,

26  incorporates by reference each and every allegation set forth in Paragraphs 1 through

27  117, inclusive, of this Complaint and further alleges as follows.

28  ///

119.   The vehicles purchased by Plaintiff and each Class 3 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

120.   Plaintiff and each Class 3 Member are "consumers" pursuant to Civil Code Section 1761(d).

121.   Defendant Capital One and Does 1-10 are "persons" pursuant to Civil Code Section 1761(c).

122.   The advertisement and sale of the vehicles to Plaintiff and each Class 3 Member are "transactions" pursuant to Civil Code Section 1761(e).

123.   The acts and/or practices engaged in by Capital One and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 3 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in that Capitol One represented the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

124.   On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 3 identified above.

125.   Plaintiff and Class 3 Members relied on Capital One to accept for assignment only legal and enforceable contracts as an assignee and holder of their conditional sale contracts. Plaintiff and Class 3 Members suffered damages by making payments pursuant to unenforceable contracts.  Plaintiff was not aware of Capital One's deceptive conduct until contacting attorneys in 2011.

126.   The Consumers Legal Remedies Act provides a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a claim for damages under the Consumers Legal Remedies Act for violation of Civil Code

1   Sections 1770(a)(14), including statutory damages of up to $1,000 per consumer and/or

2   up to $5,000 per consumer who qualifies as a "senior citizen" under the CLRA, should

3   the statutory thirty-day period expire without a complete cure of Capital One's

4   violations.

5   127.   Civil Code Section 1780(a)(2) provides a consumer is entitled to an

6   injunction prohibiting acts or practices which violate the CLRA.   Plaintiff alleges

7   Capital One has a pattern and practice of accepting, for assignment, retail installment

8   sale contracts for sales made in California that fail to separately itemize and disclose

9   registration/transfer/titling fees paid to the DMV. Accordingly, Plaintiff seeks an order

10   prohibiting Defendant Capital One from accepting, for assignment, retail installment

11   sale contracts for sales made in California where the retail installment sale contract

12   fails to separately itemize and disclose registration/transfer/titling fees on Line 2.B. of

13   the Itemization of the Amount Financed section of the contracts.

14   128.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,

15   except for damages at this time, including an order enjoining Capital One from the

16   acts, methods, and/or practices as set forth in this Complaint, and attorneys' fees and

17   costs according to proof at time of trial.

18   **SEVENTH CAUSE OF ACTION**

19   **Action for Rescission of Conditional Sales Contract for the Sale of Goods**

20   **Pursuant to Civil Code § 1689(b) for Violation of the Automobile Sales**

21   **Finance Act, Civil Code Section 2981, *et seq*. – Class 3 Claim – As Against**

22   **Defendants Capital One and Does 1-10**

23   129.   Plaintiff, on his own behalf and on behalf of the Class 3 Members,

24   incorporates by reference each and every allegation set forth in Paragraphs 1 through

25   128, inclusive, of this Complaint and further alleges as follows.

26   130.   The RISCs executed by Plaintiff and each Class 3 Member for their

27   vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a).

28   / / /

FIRST AMENDED COMPLAINT

131.   Capital One is holder and assignee of Plaintiff's and each Class 3 Member's RISCs.

132.   Plaintiff and each Class 3 Member are "buyers" pursuant to Civil Code Section 2981(c).

133.   The vehicles purchased by Plaintiff and each Class 3 Member are "motor vehicles" pursuant to Civil Code Section 2981(k).

134.   Civil Code Section 2982(a) provides a list of the disclosures which a conditional sale contract for the sale of a motor vehicle shall contain.

135.   The RISCs of Plaintiff and the Class 3 Members failed to disclose on Line 2.B. of the Itemization of the Amount Financed section of the RISC the actual amount due and owing for registration/transfer/titling fees.   These improper disclosures violate Civil Code Section 2982(a).

136.   The "Single Document Rule" in Civil Code Section 2981.9 requires that all of the agreements between the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle be contained in a single document.  The RISCs of Plaintiff and the Class 3 Members do not show the true and correct cost of the registration/transfer/titling fees due, and therefore violate the Single Document Rule. That amount can only be learned by resorting to other documents.

137.   Since the violations include violations of Civil Code Sections 2981.9 and 2982(a), Plaintiff and each Class 3 Member are entitled to all statutory remedies pursuant to Civil Code Sections 2983 and 2983.1.  Plaintiff also seeks his attorneys' fees and costs pursuant to Civil Code Section 2983.4.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT

## EIGHTH CAUSE OF ACTION

### Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Class 3 Claim – As Against Defendants Capital One and Does 1-10

138.   Plaintiff, on his own behalf and on behalf of the Class 3 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 137, inclusive, of this Complaint and further alleges as follows.

139.   Capital One's acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful and/or unfair business acts and/or practices within the meaning of California Business & Professions Code Sections 17200, *et seq.*

140.   Plaintiff and the Class 3 Members have suffered injury in fact and have lost money as a result of Capital One's unfair competition, including, but not limited to, their statutory damages under the ASFA caused by Capital One's acts and any unrefunded overcharges of vehicle license fees.

141.   Capital One engaged in "unlawful" business acts and/or practices by accepting assignment of RISCs that fail to properly and separately itemize the registration, transfer, or titling owing on vehicles and failing to disclose in a single document all of the agreements as to the terms of payment for the vehicles purchased by Plaintiff and the Class 3 Members.  These business acts and/or practices were intended to and did violate, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, and the ASFA. Accordingly, Capital One violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Capital One from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

142.   Capital One also engaged in an "unfair" business act or practice in that the justification for financing vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is

FIRST AMENDED COMPLAINT

1    immoral, unscrupulous, unethical, and offensive, or causes substantial injury to

2    consumers.

3          143.   The above-described unlawful or unfair business acts and practices

4    conducted by Capital One continue to this day and present a threat to Plaintiff and the

5    Class Members, and the general public in that Capital One failed to publicly

6    acknowledge the wrongfulness of its actions and provide full equitable injunctive and

7    monetary relief as required by the statute.

8          144.   Pursuant to California Business & Professions Code Section 17203,

9    Plaintiff seeks an order of this Court requiring Capital One to immediately cease such

10   acts of unfair competition and enjoining Capital One from continuing to conduct

11   business via the unlawful and/or unfair business acts and practices set forth in this

12   Complaint and from failing to fully disclose the true nature of their

13   misrepresentations, and ordering Capital One to engage in a corrective notice and

14   advertising campaign.   Plaintiff additionally requests an order from the Court

15   requiring Capital One to provide complete equitable monetary relief so as to prevent

16   Capital One from benefitting from the practices that constitute unfair competition or

17   the use or employment of any monies resulting from the sale of these vehicles,

18   including requiring the payment of restitution of any monies as may be necessary to

19   restore any money or property which may have been acquired by means of such acts

20   of unfair competition.

21                          **NINTH CAUSE OF ACTION**

22   **Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et***

23   ***seq.* – Individual Claim – Injunctive Relief Only – As Against Defendants**

24   **Ron Baker, Capital One, and Does 1-10**

25         145.   Plaintiff incorporates by reference each and every allegation set forth in

26   Paragraphs 1 through 144, inclusive, of this Complaint, and further alleges as follows.

27   This cause of action is brought by Plaintiff individually.

28   / / /

FIRST AMENDED COMPLAINT

146. The Vehicle sold to Plaintiff constitutes "goods" purchased for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

147. Plaintiff is a "consumer" pursuant to Civil Code Section 1761(d).

148. Defendants are "persons" pursuant to Civil Code Section 1761(c).

149. The advertisement and sale of the vehicle to Plaintiff is a "transaction" pursuant to Civil Code Section 1761(e).

150. The acts and/or practices engaged in by Defendant Ron Baker and alleged herein were intended to, and did, result in the sale of the Vehicle to Plaintiff primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

    (a)    Ron Baker represented that the goods or services had sponsorship, characteristics, uses, or benefits which they did not have;

    (b)    Ron Baker represented that the goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;

    (c)    Ron Baker advertised goods with intent not to sell them as advertised;

    (d)    Ron Baker represented that the transaction had been supplied in accordance with previous representations when it had not; and

    (e)    Ron Baker represented that the transaction conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law.

151. On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual relief under the CLRA. The letter was received by Ron Baker on December 14, 2011.

222. Plaintiff relied on Ron Baker to prepare legal and enforceable purchase contracts as a licensed automobile dealership. Plaintiff suffered damages by making

31

FIRST AMENDED COMPLAINT

1   payments pursuant to an unenforceable contract and paying for products he was not

2   aware he was purchasing.  Plaintiff was not aware of Ron Baker's deceptive conduct

3   until contacting attorneys in 2011.

4        152.   The Consumers Legal Remedies Act provides a complaint for violation of

5   the Act may be amended without leave of court should the violation not be remedied

6   within thirty (30) days of notification.  Plaintiff will amend this Complaint to add a

7   claim for damages under the Consumers Legal Remedies Act for violation of Civil Code

8   Sections 1770(a)(5), (7), (9), (14) and (16) should the statutory thirty-day period expire

9   without a complete cure of Defendants' violations.

10       153.   Section 1780(a)(2) of the Act provides a consumer is entitled to an

11  injunction prohibiting acts or practices which violate the Act.  Plaintiff alleges Ron

12  Baker has established a pattern and practice of: (1) selling vehicles over advertised

13  price; (2) failing to disclose prior accident damage; (3) "packing" customers with after-

14  market products and services, such as GAP insurance and service contracts, without

15  the customers' knowledge or consent; (4) falsely representing that an alarm is being

16  provided free of charge and then charging the customer for it; (5) failing to properly

17  disclose, on a customer's RISC, that a customer has made a cash down payment, a

18  portion of which is being deferred until a later date; (6) obtaining credit reports for

19  potential purchasers without obtaining the potential purchaser's consent; and

20  (7) failing to advise customers they do not have to sign a subsequent contract for the

21  same vehicle but can, instead, return the vehicle and obtain their down payment back.

22       154.   Ron Baker assigned Plaintiff's RISC to Capital One and/or Capital One

23  is the holder of Plaintiff's RISC #2.

24       155.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,

25  except for damages at this time, including an order enjoining Defendants from the acts,

26  methods, and practices as set forth in this Complaint, and attorneys' fees and costs

27  according to proof at time of trial.

28  ///

FIRST AMENDED COMPLAINT

## TENTH CAUSE OF ACTION

**Commission of Unlawful, Unfair, and/or Fraudulent Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Individual Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

156.   Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 155, inclusive, of this Complaint, and further alleges as follows. This cause of action is brought by Plaintiff individually.

157.   Defendants' acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful, unfair, and/or fraudulent business acts and/or practices and untrue and misleading advertising within the meaning of California Business & Professions Code §§ 17200, *et seq.*

158.   Plaintiff suffered injury in fact and lost money as a result of Defendant Ron Baker's unfair competition, including, but not limited to, his statutory damages under the ASFA caused by Defendant's acts, and being charged for goods and/or services he did not agree to.

159.   Defendant Ron Baker has engaged in "unlawful" business acts and/or practices by the following: (1) selling vehicles over advertised price; (2) failing to disclose prior accident damage; (3) "packing" customers with after-market products and services, such as GAP insurance and service contracts, without the customers' knowledge or consent; (4) falsely representing that an alarm is being provided free of charge and then charging the customer for it; (5) failing to properly disclose, on a customer's RISC, that a customer has made a cash down payment, a portion of which is being deferred until a later date; (6) obtaining credit reports for potential purchasers without obtaining the potential purchaser's consent; and (7) failing to advise customers they do not have to sign a subsequent contract for the same vehicle but can, instead, return the vehicle and obtain their down payment back.   Plaintiff seeks an order enjoining Defendant Ron Baker from the acts, methods, and/or practices as set forth in the complaint and for payment of restitution. These business acts and/or practices

violated numerous provisions of both state and federal law including, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, the ASFA, Business and Professions Code Sections 17500 and 17531, and California Vehicle Code Sections 11614(a), 11713(a). Accordingly, Defendant Ron Baker has violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Defendant from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

160. Defendant Ron Baker also engaged in a "fraudulent" business act or practice in that the representations and omissions of material fact described above have a tendency and likelihood to deceive purchasers of these vehicles.

161. Defendant Ron Baker also engaged in an "unfair" business act or practice in that the justification for selling vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers.

162. The above-described unlawful, fraudulent, and/or unfair business acts and/or practices conducted by Defendant continue to this day and present a threat to Plaintiff and the general public in that Defendant failed to publicly acknowledge the wrongfulness of its actions and provide full equitable injunctive and monetary relief as required by the statute.

163. Ron Baker assigned Plaintiff's RISC to Capital One and/or Capital One is the holder of Plaintiff's RISC #2.

164. Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful, fraudulent, and/or unfair business acts and practices set

34

1   forth in this Complaint and from failing to fully disclose the true nature of their

2   misrepresentations, and ordering Defendants to engage in a corrective notice and

3   advertising campaign.   Plaintiff additionally requests an order from the Court

4   requiring Defendants to provide complete equitable monetary relief so as to prevent

5   Defendants from benefitting from the practices that constitute unfair competition or

6   the use or employment of any monies resulting from the sale of these vehicles,

7   including requiring the payment of restitution of any monies as may be necessary to

8   restore any money or property which may have been acquired by means of such acts

9   of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows, on behalf of himself, and the members of the Classes, as appropriate for the particular causes of action:

1.    An Order certifying the Classes under the appropriate provisions of California law, and appointing Plaintiff and his counsel to represent the Classes.

2.    For the declaratory, equitable, and/or injunctive relief requested as permitted under the Consumers Legal Remedies Act and Business & Professions Code Section 17203.

3.    For general, special, and actual damages according to proof at trial.

4.    For rescission and/or restitution of all monies required to be expended.

5.    For incidental and consequential damages according to proof at trial.

6.    For the specified causes of action, punitive and/or statutory damages.

7.    For pre-judgment interest at the legal rate.

8.    For reasonable attorneys' fees and costs of suit as specified under, *inter alia*, Code of Civil Procedure Section 1021.5, and Civil Code Sections 1717, 1780(d), 1794, and 2983.4.

9.    For such other and further relief as the Court deems just and proper under the circumstances.

FIRST AMENDED COMPLAINT

1    DATED: January 9, 2012              ROSNER, BARRY & BABBITT, LLP

2

3

4                                        By: _____
                                              CHRISTOPHER P. BARRY
5                                             Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        36

EXHIBIT 5

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>CHRISTOPHER P. BARRY, ESQ.                                    SBN: 179306<br>ROSNER, BARRY & BABBITT, LLP<br>10085 CARROLL CANYON RD., 1ST FLOOR  SAN DIEGO, CA 92131 | FOR COURT USE ONLY |

TELEPHONE NO.: **(858) 348-1005**     FAX NO. *(Optional)*:  **(858) 348-1150**
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:  **PLAINTIFF; MONDRAGON**

| | |
|---|---|
| SAN DIEGO SUPERIOR COURT - CENTRAL | **FILED**<br>CIVIL BUSINESS OFFICE<br>CENTRAL DIVISION<br>JAN 11 2012<br>JAN 11 '12 CP 159<br>CLERK - SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |
| STREET ADDRESS: **330 WEST BROADWAY** | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: **SAN DIEGO, CA 92101** | |
| BRANCH NAME: **CENTRAL** | |

| | |
|---|---|
| PLAINTIFF/PETITIONER:  **MONDRAGON** | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  **RON BAKER CHEVROLET, ET AL.** | **37-2011-00103236-CU-CO-CTL** |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:  **MONDRAGON** |

*(Separate proof of service is required for each party served.)*              **BY FAX**

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [X] summons
   b. [X] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents)*:   **CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT; NOTICE OF ASSIGNMENT TO IMAGING DEPARTMENT; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; STIPULATION TO USE OF  ALTERNATIVE DISPUTE RESOLUTION;**

3. a. Party served *(specify name of party as shown on documents served)*:
      **RON BAKER CHEVROLET, A CALIFORNIA CORPORATION**

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      **C. DAVID HERRING - PERSON AUTHORIZED TO ACCEPT**

4. Address where the party was served: **1001 B AVENUE, SUITE 215**
   **CORONADO, CA 92118**

5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **01/04/2012**    (2) at *(time)*: **03:50 pm**

   b. [ ] **by substituted service.** On *(date)*:   at  *(time)*:   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*:  from *(city)*:                    **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

ORIGINAL

Page 1 of 2

Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10<br>POS010-1/S74522P1

| PETITIONER: **MONDRAGON** | CASE NUMBER: |
|---|---|
| RESPONDENT: **RON BAKER CHEVROLET, ET AL.**     BY FAX | 37-2011-00103236-CU-CO-CTL |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*             (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **RON BAKER CHEVROLET, A CALIFORNIA CORPORATION**
    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)         ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)
                                     ☐ other:

7. **Person who served papers**
   a. Name: **IVAN SMITH - Advanced Attorney Services, Inc.**
   b. Address: **3500 Fifth Ave. San Diego, CA 92103**
   c. Telephone number: **(619) 299-2012**
   d. **The fee** for service was: **$ 53.45**
   e. I am:

     (1) ☐ not a registered California process server.
     (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
     (3) ☒ registered California process server:
       (i) ☐ owner      ☐ employee     ☒ independent contractor.
       (ii) Registration No.: **1715**
       (iii) County: **SAN DIEGO**

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    **or**
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **01/06/2012**

**Advanced Attorney Services, Inc.**
**3500 Fifth Ave.**
**San Diego, CA 92103**
**(619) 299-2012**

_____      ▶     *Ivan* [signature]
       **IVAN SMITH**
     (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

EXHIBIT 6

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Christopher P. Barry,  179308<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Rd, Ste 100<br>San Diego, CA 92131<br>TELEPHONE NO. (858)348-1005   FAX NO. (Optional): (858)348-1150<br>E-MAIL ADDRESS (Optional): hawk@rbblawgroup.com<br>ATTORNEY FOR (Name): Jose Mondragon | BUSINESS OFFICE 21<br>CENTRAL DIVISION<br><br>2012 JAN 20 PM 3: 26<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS:   330 West Broadway
MAILING ADDRESS:   330 West Broadway
CITY AND ZIP CODE:   San Diego, 92101
BRANCH NAME:   Hall of Justice

| PLAINTIFF/PETITIONER: Jose Mondragon | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ron Baker Chevrolet,  Capital One Auto Finance | 37-2011-00103236-CU-CO-CTL |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [X]  summons

   b. [X]  complaint

   c. [X]  Alternative Dispute Resolution (ADR) package

   d. [X]  Civil Case Cover Sheet (served in complex cases only)

   e. [ ]  cross-complaint

   f. [X]  other (specify documents): Notice of Case Assignment; Notice of Assignment to Imaging Department; Stipulation to Use of ADR

3. a.  Party served (specify name of party as shown on documents served):

   CAPITAL ONE AUTO FINANCE

   b. [ ]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a):

4. Address where the party was served:
   211 East 7th Street, Suite 620, Austin, TX 78701

5. I served the party (check proper box)

   a. [ ]  by personal service.   I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on (date):                    (2) at (time):

   b. [ ]  by substituted service.   On (date):              at (time):              I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3):

      (1) [ ]  (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ]  (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ]  (physical address unknown)   a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

      (4) [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date):              from (city):                    or  [ ]  a declaration of mailing is attached.

      (5) [ ]  I attach a declaration of diligence   stating actions taken first to attempt personal service.

Page 1 of 2

PROOF OF SERVICE OF SUMMONS

ORIGINAL

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: Jose Mondragon | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ron Baker Chevrolet,  Capital One Auto Finance | 37-2011-00103236-CU-CO-CTL |

5. c. [X] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on (date): January 4, 2012      (2)  from (city): San Diego, CA

    (3) [ ]  with two copies of the Notice and Acknowledgment of Receipt and a postage-paid return envelope addressed to me.  (Attach completed Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) [X]  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d. [ ]  **by other means** (specify means of service and authorizing code section):

    [ ]  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. [X]  as an individual defendant.
  b. [ ]  as the person sued under the fictitious name of (specify):
  c. [ ]  as occupant.
  d. [ ]  On behalf of (specify):
    under the following Code of Civil Procedure section:

    [ ] 416.10 (corporation)    [ ] 415.95 (business organization, form unknown)
    [ ] 416.20 (defunct corporation)    [ ] 416.60 (minor)
    [ ] 416.30 (joint stock company/association)    [ ] 416.70 (ward or conservatee)
    [ ] 416.40 (association or partnership)    [ ] 416.90 (authorized person)
    [ ] 416.50 (public entity)    [ ] 415.46 (occupant)
                                   [ ] other:

7. **Person who served papers**
  a.  Name: Amie Olesko
  b.  Address: 10085 Carroll Canyon Road, Suite 100, San Diego, CA 92131
  c.  Telephone number: (858) 348-1005
  d.  **The fee** for service was: $
  e.  I am:

    (1) [X]  not a registered California process server.
    (2) [ ]  exempt from registration under Business and Professions Code section 22350(b).
    (3) [ ]  a registered California process server:
      (i) [ ] owner [ ] employee [ ] independent contractor.
      (ii)  Registration No.:
      (iii)  County:

8. [X]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. [ ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: January 17, 2012

Amie Olesko
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)          (SIGNATURE )

| 2. Article Number | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| | A. Received by (Please Print Clearly) | B. Date of Delivery |
| | | 1/9/12 |
| 7160 3901 9849 1634 9358 | C. Signature | |
| | X    SA Vertrees | ☐ Agent ☐ Addressee |
| | D. Is delivery address different from item 1? ☐ Yes | |
| | If YES, enter delivery address below: ☐ No | |
| **3. Service Type   CERTIFIED MAIL** | |
| **4. Restricted Delivery?** *(Extra Fee)* ☐ Yes | |

~~Capital One~~ Auto Finance
Corporation Service Company
211 East 7th Street, Suite 620
Austin, TX 78701

Mondragon v. Ron Baker Chevrolet
AC

PS Form 3811, January 2005          Domestic Return Receipt

EXHIBIT 7

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Christopher P. Barry, 179308<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Rd, Ste 100<br>San Diego, CA 92131<br>TELEPHONE NO.: (858)348-1005    FAX NO. (Optional): (858)348-1150<br>E-MAIL ADDRESS (Optional): hawk@rbblawgroup.com<br>ATTORNEY FOR (Name): Jose Mondragon | FOR COURT USE ONLY<br>CIVIL BUSINESS OFFICE 21<br>CENTRAL DIVISION<br><br>2012 JAN 27  PM 3: 04<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Hall of Justice

| | |
|---|---|
| PLAINTIFF/PETITIONER: Jose Mondragon | CASE NUMBER:<br>37-2011-00103236-CU-CO-CTL |
| DEFENDANT/RESPONDENT: Ron Baker Chevrolet, Capital One Auto Finance | |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet (served in complex cases only)
   e. [ ] cross-complaint
   f. [X] other (specify documents): Notice of Case Assignment; Notice of Assignment to Imaging Department; Stipulation to Use of ADR

3. a. Party served (specify name of party as shown on documents served):
   CAPITAL ONE FINANCIAL CORPORATION dba CAPITAL ONE AUTO FINANCE

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a):

4. Address where the party was served:
   1680 Capital One Drive, McLean, VA 22102-3491
5. I served the party (check proper box)
   a. [ ] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date):                    (2) at (time):
   b. [ ] by substituted service. On (date):            at (time):            I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3):

   (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date):        from (city):            or [ ] a declaration of mailing is attached.

   (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

PROOF OF SERVICE OF SUMMONS     ORIGINAL     Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: Jose Mondragon | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ron Baker Chevrolet, Capital One Auto Finance | 37-2011-00103236-CU-CO-CTL |

5.  c.  [X]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

      (1)  on (date): January 4, 2012       (2)  from (city): San Diego, CA

      (3) [ ] with two copies of the Notice and Acknowledgment of Receipt and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

      (4) [X] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

    d. [ ] **by other means** (specify means of service and authorizing code section):

    [ ] Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
    a. [X] as an individual defendant.
    b. [ ] as the person sued under the fictitious name of (specify):
    c. [ ] as occupant.
    d. [ ] On behalf of (specify):
        under the following Code of Civil Procedure section:

        [ ] 416.10 (corporation)         [ ] 415.95 (business organization, form unknown)
        [ ] 416.20 (defunct corporation)         [ ] 416.60 (minor)
        [ ] 416.30 (joint stock company/association)   [ ] 416.70 (ward or conservatee)
        [ ] 416.40 (association or partnership)     [ ] 416.90 (authorized person)
        [ ] 416.50 (public entity)           [ ] 415.46 (occupant)
                                  [ ] other:

7.  **Person who served papers**
    a. Name: Amie Olesko
    b. Address: 10085 Carroll Canyon Road, Suite 100, San Diego, CA 92131
    c. Telephone number: (858) 348-1005
    d. **The fee** for service was: $
    e. I am:
      (1) [X] not a registered California process server.
      (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
      (3) [ ] a registered California process server:
        (i) [ ] owner [ ] employee [ ] independent contractor.
        (ii) Registration No.:
        (iii) County:

8.  [X] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: January 26, 2012

Amie Olesko
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)
                                      (SIGNATURE)

**2. Article Number**

7160 3901 9849 1634 9341

**3. Service Type   CERTIFIED MAIL**

**4. Restricted Delivery?** *(Extra Fee)*   ☐ Yes

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)

B. Date of Delivery

C. Signature

X

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Capital One Financial Corporation
dba Capital One Auto Finance
Attention: Richard D. Fairbank, CEO/Pres.
1680 Capital One Drive
McLean, VA 22102-3491

AO

Mondragon v. Ron Baker Chevrolet

PS Form 3811, January 2005          Domestic Return Receipt

EXHIBIT 8

| ATTORNEY OR PARTY WITHOUT ATTORNEY*(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christopher P. Barry, 179308<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Rd., Ste. 100<br>San Diego, California 92131<br>TELEPHONE NO. *(Optional):* (858)348-1005    FAX NO. *(Optional):* (858)348-1150<br>E-MAIL ADDRESS *(Optional):* hawk@rbblawgroup.com<br>ATTORNEY FOR *(Name):* Jose Mondragon | CIVIL BUSINESS OFFICE 21<br>CENTRAL DIVISION<br><br>2012 JAN 27  PM 3: 04<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
- ☒ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
- ☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
- ☐ EAST COUNTY DIVISION, RAMONA, 1428 MONTECITO RD., RAMONA, CA 92065
- ☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., SUITE, 1000, VISTA, CA 92081
- ☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

| PLAINTIFF(S) | JUDGE |
|---|---|
| Jose Mondragon | Hon. John S. Meyer |
| **DEFENDANT(S)** | **DEPARTMENT** |
| Ron Baker Chevrolet | C-61 |
| **CERTIFICATE OF SERVICE** | **CASE NUMBER** |
| | 37-2011-00103236-CU-CO-CTL |

I certify under penalty of perjury under the laws of the State of California that all defendants named in the complaint of the above-entitled case have either made a general appearance or have been properly and timely served in compliance with SDSC Local Rule 2.1.5.

Date: January 26, 2012

Christopher P. Barry
Type or print name

Signature

NOTES:

If service cannot be effected on all defendants within 60 days of filing the complaint, DO NOT USE THIS CERTIFICATE. Instead, file the form CERTIFICATE OF PROGRESS (SDSC Form #CIV-144) stating the reasons why service has not been effected on all parties and what is being done to effect service.

THE FILING OF A GENERAL APPEARANCE BY A DEFENDANT DOES NOT DISPENSE WITH THE PLAINTIFF'S OBLIGATION TO FILE THIS DOCUMENT.

# EXHIBIT 9

1   ROSNER, BARRY & BABBITT, LLP
    Hallen D. Rosner, SBN: 109740
2   Christopher P. Barry, SBN: 179308
    Angela J. Smith, SBN: 216876
3   10085 Carroll Canyon Road, Suite 100
    San Diego, California 92131
4   TEL: (858) 348-1005 / FAX: (858) 348-1150

5   ROMANO STANCROFF & MIKHOV, PC
    Steve Mikhov, SBN: 224676
6   640 S. San Vicente, Suite 350
    Los Angeles, California 90048
7   TEL: (323) 936-2274
    FAX: (323) 939-7973
8
    Attorneys for Plaintiff
9

F I L E D
Clerk of the Superior Court

FEB 2 2 2012

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11               **IN AND FOR THE COUNTY OF SAN DIEGO**

12   JOSE MONDRAGON, individually          CASE NO. 37-2011-00103236-CU-CO-CTL
     and on behalf of all others similarly
13   situated,                             **CLASS ACTION**

14                    Plaintiff,           SECOND AMENDED COMPLAINT FOR
                                           INJUNCTIVE RELIEF, RESTITUTION,
15           v.                            AND DAMAGES:

16   RON BAKER CHEVROLET, a                1.  VIOLATION OF THE CONSUMERS LEGAL
     California Corporation;                   REMEDIES ACT – CLASS 1 CLAIM;
17   CAPITAL ONE AUTO FINANCE, a           2.  VIOLATION OF THE AUTOMOBILE SALES
     business entity form unknown; and         FINANCE ACT – INDIVIDUAL AND CLASS 1
18   DOES 1 through 10, inclusive,             CLAIM;
                                           3.  UNLAWFUL, UNFAIR, FRAUDULENT
19                                             BUSINESS ACTS & PRACTICES – CLASS 1
                     Defendants.               CLAIM;
20                                         4.  VIOLATION OF THE CONSUMERS LEGAL
                                               REMEDIES ACT – CLASS 2 CLAIM;
21                                         5.  UNLAWFUL, UNFAIR, FRAUDULENT
                                               BUSINESS ACTS & PRACTICES – CLASS 2
22                                             CLAIM;
                                           6.  VIOLATION OF THE CONSUMERS LEGAL
23                                             REMEDIES ACT – CLASS 3 CLAIM;
                                           7.  VIOLATION OF THE AUTOMOBILE SALES
24                                             FINANCE ACT – CLASS 3 CLAIM;
                                           8.  UNLAWFUL, UNFAIR, FRAUDULENT
25                                             BUSINESS ACTS & PRACTICES – CLASS 3
                                               CLAIM;
26                                         9.  VIOLATION OF THE CONSUMERS LEGAL
                                               REMEDIES ACT – INDIVIDUAL CLAIM; AND
27                                         10. UNLAWFUL, UNFAIR, FRAUDULENT
                                               BUSINESS ACTS & PRACTICES -
28                                             INDIVIDUAL CLAIM.

ORIGINAL

1   Plaintiff JOSE MONDRAGON, individually as to all causes of action, and on

2   behalf of all others similarly-situated as to the First through Eighth Causes of Action,

3   alleges as follows on information and belief, formed after an inquiry reasonable under

4   the circumstances:

5   **INTRODUCTION**

6   1.    Defendant Ron Baker Chevrolet ("Ron Baker") is an automobile

7   dealership in National City, California, that engages in a series of unlawful and

8   deceptive business practices.  These business practices are engaged in for one purpose

9   – to sell vehicles to customers and earn extra profits.  In this action Plaintiff seeks to

10   put an end to these unlawful and deceptive practices and provide remedies for other

11   affected consumers.  The unlawful and deceptive practices engaged in by Ron Baker

12   for which Plaintiff seeks class-wide redress relate to Ron Baker's systematic violations

13   of California's financial disclosure laws.

14   2.    In every vehicle sale in California, dealerships – such as Ron Baker –

15   submit various fees to the California Department of Motor Vehicles ("DMV") on behalf

16   of their customers.  Dealerships are legally required, under the Automobile Sales

17   Finance Act (Civil Code Section 2981 *et seq.*) ("ASFA"), to disclose fees paid to public

18   officials, including the DMV, on customers' Retail Installment Sale Contracts ("RISC").

19   For example, dealerships must disclose license fees paid to the DMV on Line 2.A. and

20   "registration, transfer, and titling fees" paid to the DMV on Line 2.B. of the RISC.

21   3.    Moreover, in new vehicle sales to California residents, vehicle purchasers

22   will *always* be charged registration and titling fees.  (Vehicle Code Section 9250 *et*

23   *seq.*)  In used vehicle sales, purchasers will *always* have to pay a transfer fee to the

24   DMV to transfer registration from the prior owner. (Vehicle Code Section 9255.) Thus,

25   one or more of these fees will be due in *every* vehicle sale in California to California

26   residents.

27   4.    However, Plaintiff is but one of many customers who, during the past four

28   years, purchased a vehicle from Ron Baker and who entered into a RISC prepared by

1

1   Ron Baker that failed to itemize and disclose registration, transfer, and/or titling fees.

2   Regarding new and used vehicles alike, Ron Baker misstated the amount of license,

3   registration, transfer, and titling fees due and owing to the DMV.

4         5.      Additionally, the California Department of Motor Vehicles ("DMV")

5   established a Business Partner Automation Program whereby "Business Partners" can

6   offer to perform certain registration matters in exchange for a fee.   The Code of

7   Regulations permits Business Partners to charge a fee to consumers who agree to make

8   use of the Program.   The Code of Regulations further requires Business Partners

9   disclose the fee on any purchase contract as an "Optional DMV Electronic Filing Fee."

10   Ron Baker is permitted to charge the consumers – who *agree* to participate in the

11   Program – a maximum fee.  However, it has been Ron Baker's practice to automatically

12   insert a charge for the Optional DMV Electronic Filing Fee on customers' purchase

13   contracts, regardless of whether the customer was even informed of, let alone agreed

14   to pay, for the extra service.

15         6.      Plaintiff was also defrauded by Ron Baker during the course of his

16   individual transaction.  First, contrary to California law, Ron Baker sold the subject

17   vehicle to Plaintiff for more than the advertised price.   Second, Ron Baker

18   misrepresented that the price of the vehicle included the cost of an alarm and then

19   charged Plaintiff extra for the alarm.  Third, Ron Baker "packed" Plaintiff by selling

20   him after-market products, such as GAP insurance and a service contract, without

21   Plaintiff's knowledge or consent.  Fourth, Ron Baker failed to disclose that the vehicle

22   Plaintiff was purchasing had previously been involved in an accident. Fifth, Ron Baker

23   improperly ran Plaintiff's credit without his permission.  Finally, Ron Baker failed to

24   properly disclose Plaintiff's deferred down payment.

25         7.      The conduct herein described violates, *inter alia*, the Automobile Sales

26   Finance Act ("ASFA") (Civil Code § 2981, *et seq.*), the Consumers Legal Remedies Act

27   ("CLRA") (Civil Code § 1750, *et seq.*), and the Unfair Competition Law ("UCL") (Bus.

28   & Prof. Code § 17200, *et seq.*).

SECOND AMENDED COMPLAINT

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

9.     This Court has jurisdiction over Defendants because each are individuals, associations, or corporations that are either authorized to conduct or, in fact, do conduct substantial business in the State of California, County of San Diego.

10.     Venue is proper in this County pursuant to Code of Civil Procedure § 395(b) because the acts upon which this action is based occurred in this County. The contracts for products and services at issue in this case were entered into in this County and communications from Defendants were received in this County. Thereby, Plaintiff and Class members were injured and/or subjected to irreparable harm in this venue. Defendants received substantial compensation and profits from its products and services in this County, caused misrepresentations to be disseminated, entered into agreements and transactions, and breached agreements in this County. Thus, Defendants' liability arose primarily in this County.

## PARTIES

11.     Plaintiff Jose Mondragon is an individual who, at all times material, resided in the City of Chula Vista, County of San Diego, State of California.

12.     Defendant Ron Baker Chevrolet ("Ron Baker"), a California corporation, is a new and used car dealership conducting business in the City of National City, County of San Diego, State of California.

13.     Defendant Capital One Auto Finance ("Capital One"), business entity form unknown, is and was, at all times material, doing business in the County of San Diego, State of California. Plaintiff is informed and believes that Capital One was previously doing business in California, as a Texas corporation, under the corporate name of Capital One Auto Finance, Inc., but its registration with the California Secretary of State was surrendered in 2011.

SECOND AMENDED COMPLAINT

14.   Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendants sued herein as Does 1 through 10, inclusive, under the provisions of Section 474 of the California Code of Civil Procedure.  Defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are legally liable to Plaintiff and the class.  Plaintiff will set forth the true names and capacities of the fictitiously-named Defendants together with appropriate charging allegations when ascertained.

15.   All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

16.   Each Defendant, whether actually or fictitiously-named herein, was the principal, agent (actual or ostensible), or employees of each other Defendant and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff and the classes for the relief prayed for herein.

## CLASS ALLEGATIONS

17.   This action is brought, and may properly be maintained, as a class action pursuant to the provisions of California Code of Civil Procedure Section 382 and/or Civil Code Section 1781(a).

18.   Plaintiff brings this action on behalf of himself and all others similarly-situated as a representative member of the following proposed classes:

(a)   "**CLASS 1:**" All persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from Ron Baker for personal use to be registered in the State of California, and (2) signed a RISC that failed to separately disclose, on the RISC, the amounts paid for license fees and/or the amounts paid for registration, transfer, and/or titling fees.

/ / /

4

SECOND AMENDED COMPLAINT

1    Plaintiff proposes a Subclass for all persons for whom Capital One is the holder and/or

2    assignee of their RISC.

3         (b)    **"CLASS 2:"** All persons who, in the four years prior to the filing

4                of this complaint, (1) purchased a vehicle from Defendant Ron

5                Baker for personal use, (2) signed a Retail Installment Sale

6                Contract ("RISC"), and (3) Ron Baker automatically included a

7                charge on the RISC for the "Optional DMV Electronic Filing Fee."

8         (c)    **"CLASS 3:"** All persons who, in the four years prior to the filing of

9                this complaint, (1) purchased a vehicle in California for personal

10               use to be registered in the State of California, (2) signed a RISC

11               that failed to separately disclose on the RISC the amounts paid for

12               registration/transfer/titling fees, and (3) whose RISC was assigned

13               to Capital One.

14        19.    In this lawsuit, Plaintiff and the Classes seek both equitable relief,

15   including declaratory, injunctive, restitutionary, and other equitable monetary relief

16   and economic and statutory damages as set forth more fully below, including, but not

17   limited to, full restitution and/or rescission of any RISC entered into by any Class

18   Member.

19        20.    Specifically excluded from the proposed Classes are the Court and its

20   staff, Defendants, any entity in which any of the Defendants has a controlling interest,

21   and the officers, directors, affiliates, legal representatives, heirs, successors,

22   subsidiaries, and/or assigns of any such individual or entity.

23   **A.    NUMEROSITY OF THE CLASSES**

24        21.    The proposed Classes are so numerous that the individual joinder of the

25   Class Members in one action is impracticable. The exact number and the identities of

26   the Members of the Classes are unknown at this time and can only be ascertained

27   through appropriate investigation and discovery.

28   ///

**B.   EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT**

22.   Common questions of law and fact arising out of the claims here at issue exist as to all members of the Classes and predominate over any individual issue. These common legal and factual questions include, but are not limited to, the following:

a.   whether Ron Baker and/or Capital One violated this state's consumer protection statutes;

b.   whether Ron Baker's failure to separately itemize and disclose license fees from registration/transfer/titling fees on customers' RISCs and Capital One's acceptance of and failure to require RISCs containing proper itemizations constitutes a violation of the ASFA, CLRA, and/or the UCL;

c.   whether Ron Baker's practice of automatically charging consumers an "Optional DMV Electronic Filing Fee" constitutes a violation of the CLRA, and/or the UCL;

d.   the amount of revenues and profits Ron Baker and Capital One received, and/or the amount of monies or other obligations imposed on, or lost by, Class Members as a result of such wrongdoing;

e.   whether Class Members are threatened with irreparable harm and are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

f.   whether Class Members are entitled to rescission, payment of actual, incidental, consequential, exemplary, punitive, and/or statutory damages plus interest thereon, and, if so, what is the nature of such relief.

**C.   TYPICALITY OF CLAIMS**

23.   Plaintiff's claims are typical of the claims of members of the Classes.

24.   Ron Baker engaged in the standard practice and/or procedure of failing to separately itemize and disclose registration, transfer, and/or titling fees paid by

1  Plaintiff and Class 1 Members on Line 2.B. of the Itemization of the Amount Financed
2  on their RISCs. In fact, Plaintiffs and Class 1 Members' RISCs failed to list any
3  amount for registration/transfer/titling fees on Line 2.B.  Rather, those RISCs
4  contained the notation "Incl." on Line 2.B.  In Plaintiff's case, there was a particular
5  amount due to the DMV for a transfer fee for the vehicle, which amount should have
6  been disclosed on Line 2.B. rather than a notation that such fees were "Incl."  The
7  notation "Incl.", which presumably is short for "Included," does not inform the customer
8  the amount of the fees due, whether they are included in another amount disclosed on
9  the contract, or the dealership is paying the fees as "included" in the amount otherwise
10 being paid for the vehicle.  The use of the notation "Incl." fails to provide the consumer
11 any information about the amount of the fees and whether the consumer is charged for
12 the fees.

13      25.     Additionally, Ron Baker engaged in the standard practice or procedure
14 of automatically including a charge in the RISCs of Plaintiff and each Class 2 Member
15 for the "Optional DMV Electronic Filing Fee" without disclosure to Plaintiff and the
16 Class 2 Members that they did not have to pay this fee.

17      26.     The RISCs entered into by Plaintiff and the Class 3 Members were all
18 assigned to Capital One and failed to itemize on their face the
19 registration/transfer/titling fees due in the transaction.

20      27.     Accordingly, Plaintiff and all members of the Classes had their legal
21 rights infringed upon, sustained injuries, losses, and damages as described herein,
22 and/or are facing irreparable harm arising out of Defendant Ron Baker and Capital
23 One's common course of conduct. The right of Plaintiff and each member of the Classes
24 to payment of any actual, incidental, consequential, exemplary, and/or statutory
25 damages or restitution resulting therefrom were proximately caused by Defendants'
26 wrongful conduct, in violation of state law as alleged herein.

27 ///

28 ///

7

SECOND AMENDED COMPLAINT

D.    **ADEQUATE REPRESENTATION**

28.    Plaintiff will fairly and adequately protect the interests of the members of the Classes in that he does not have irreconcilable conflicts with or interests materially antagonistic to those of other Class Members.

29.    Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer class actions.

E.    **SUPERIORITY AND SUBSTANTIAL BENEFITS OF CLASS LITIGATION**

30.    To the extent it is an element for establishing class certification for certain causes of action, a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy and, as applicable, possesses substantial benefits.    Individual joinder of all Class Members is impracticable, and no other group method of adjudication of all claims asserted herein is more efficient and manageable while at the same time provides all the remedies available to ensure the full purpose of this State's consumer protection laws are effectuated.  Furthermore, as the damages suffered by each individual Class Member may be relatively small and the relief sought discrete, the expense and burden of individual Class Members to redress the wrongs done to them, and the cost to the court system of adjudicating such litigation on an individual basis, would be substantial. To counsel's knowledge there has not been any substantial litigation concerning this controversy commenced against the parties. It is not anticipated that there will be any difficulties in the management of this litigation due to the focus of the wrongdoing on Ron Baker and Capital One's conduct and their knowledge of the true facts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expenses of all parties and the court system resulting from multiple trials asserting the same factual issues. The conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of

8

1   each Class Member as compared to other methods for the group-wide adjudication of

2   this controversy.  Thus, the Classes and the court system achieve substantial benefits

3   by the prosecution of this action on a class-wide basis by avoiding the burden of

4   multiple litigation involving identical claims, as well as by aiding legitimate business

5   enterprises in curtailing illegitimate competition and ensuring a therapeutic effect on

6   those companies such as Ron Baker and Capital One that indulge in fraudulent

7   practices.

8       31.   Notice of the pendency of any resolution of this action can be provided to

9   the Class Members by publication and/or individual mailed notice, as appropriate

10  under California law, and the costs of such notice are properly imposed on Ron Baker

11  and/or Capital One.

12      32.   This action should be certified to proceed on a class-wide basis because:

13      a.   the prosecution of separate actions by the individual Class Members

14           would create a risk of inconsistent or varying adjudications with respect

15           to individual Class Members, thus establishing incompatible standards

16           of conduct for Ron Baker and/or Capital One;

17      b.   due to the nature of the relief sought, the prosecution of separate actions

18           by individual Class Members would create a risk of adjudication with

19           respect to them that would, as a practical matter, be dispositive of the

20           interests of the other Class Members not parties to such adjudications or

21           could substantially impair or impede the ability of such Class Members

22           to protect their interests;  and

23      c.   Ron Baker and Capital One act or refuse to act in respects generally

24           applicable to the Classes, thereby making appropriate final injunctive

25           relief with regard to the Class Members as a whole in terms of the

26           equitable relief sought.

27  ///

28  ///

9

## SUMMARY OF FACTS COMMON TO CLASS 1

33.     During the Class period, it was Ron Baker's practice and/or procedure to fail to disclose on RISCs any amounts due and owing to the California DMV for registration, transfer, and/or titling fees.   Rather than separately itemize the registration, transfer, and/or titling fees on Line 2.B. of the Itemization of the Amount Financed Section on its customers' RISCs, Ron Baker instead uses the notation "Incl.," failing to indicate where or in what charge, if any, the registration/transfer/titling fees are included in "Incl." or "included."

34.     Each Member of Class 1 purchased a vehicle from Ron Baker for personal use to register in the State of California.  Each Class 1 Member executed a RISC with Ron Baker.  Each Class 1 Member's RISC failed to separately itemize and disclose the registration/transfer/titling fees on Line 2.B., as required by California law.  Each Class Member's RISC states the registration/transfer/titling fees are "Incl."

35.     Each member of the Subclass had their RISC assigned to Capital One, or had their RISC acquired by Capital One such that Capital One is the holder and/or assignee of their RISC.

## SUMMARY OF FACTS COMMON TO CLASS 2

36.     During the Class period, it was also Ron Baker's practice and/or procedure to charge all customers an "Optional DMV Electronic Filing Fee," regardless of whether or not the customer had agreed to pay such a fee.

37.     Each Class 2 Member purchased a vehicle from Ron Baker, for personal use, and executed a RISC with Ron Baker for that vehicle. Each Class 2 Member's RISC, which was prepared by Ron Baker, included a charge for the "Optional DMV Electronic Filing Fee" in the Itemization of the Amount Financed Section of the RISC.

## SUMMARY OF FACTS COMMON TO CLASS 3

38.     During the Class period, it was Capital One's practice to accept assignment of RISCs for vehicle purchases in California where the amount due and owing to the California DMV for registration/transfer/titling fees were not separately

1   disclosed on the RISC. Rather than only accept assignment of RISCs that properly and

2   separately itemize the registration/transfer/titling fees on Line 2.B. of the Itemization

3   of the Amount Financed section on the RISCs, Capital One accepted assignment of

4   RISCs that failed to separately disclose the registration/transfer/titling fees on the

5   RISC. The RISCs Capital One accepted assignment of fail to contain all disclosures

6   required under California law.

7       39.     Each Member of Class 3 purchased a vehicle in California for personal use

8   to be registered in the State of California. Each Class 3 Member executed a RISC that

9   was assigned to Capital One. Each Class 3 Member's RISC failed to separately itemize

10  and disclose the registration/transfer/titling fees on Line 2.B., as required by law.

11  ## SUMMARY OF FACTS RELATIVE TO PLAINTIFF'S INDIVIDUAL

12  ## PURCHASE

13      40.     On April 28, 2010, Jose Mondragon went to Ron Baker's dealership in

14  National City to purchase a vehicle. Mr. Mondragon selected a 2008 Chevrolet

15  Silverado, VIN: 3GCEC13CX8G220374 (the "Vehicle"). The Vehicle had a window

16  sticker identifying the price as approximately $17,000.

17      41.     While negotiating with the salesman Carlos Ortiz, Mr. Mondragon was

18  told Ron Baker was including an alarm at no charge to him. Mr. Mondragon told Ron

19  Baker he could afford to pay approximately $450 as a monthly payment. Mr. Ortiz told

20  Mr. Mondragon the best he could get him was $550, and he would need to make a

21  $4,500 down payment in order to have monthly payments of approximately $550.

22      42.     Mr. Mondragon never attended high school, and is not able to read and

23  understand written English. Similarly, his ability to read and understand written

24  Spanish is also limited. Mr. Mondragon's transaction was negotiated entirely in

25  Spanish.

26      43.  When Mr. Mondragon told Mr. Ortiz he did not have $4,500 for a down

27  payment, Ron Baker told him he could pay a portion of the $4,500 that day and the rest

28

1   at a later date.  Based on Mr. Ortiz's representations, Mr. Mondragon agreed to

2   purchase the Vehicle.

3        44.    Mr. Mondragon was then introduced to Ron Baker's Finance Manager,

4   Mr. Robert Montejano.  Ron Baker prepared a Retail Installment Sale Contract

5   ("RISC #1") for Mr. Mondragon to purchase the Vehicle.  Mr. Mondragon was simply

6   instructed where to sign and initial the documents.  Attached hereto as Exhibit 1 is a

7   true and correct copy of RISC #1, which was executed by Mr. Mondragon and Ron

8   Baker on April 28, 2010.

9        45.    RISC #1 states the cash price for the Vehicle is $23,995, which was almost

10  $7,000 more than the advertised price.  RISC #1 also included a charge for $500 for a

11  theft deterrent device or alarm, even though Ron Baker told Mr. Mondragon the alarm

12  was included at no cost.

13       46.    RISC #1 included a $29 charge for the "Optional DMV Electronic Filing

14  Fee," even though no one at Ron Baker asked Mr. Mondragon whether he wanted to

15  pay the fee to receive the service.

16       47.    RISC #1 included a $2,000 charge for a service contract from Western

17  General, even though Ron Baker had not discussed with Mr. Mondragon the purchase

18  of a service contract for the Vehicle.  Furthermore, contrary to California law, Ron

19  Baker did not provide Mr. Mondragon with any paperwork relating to a service

20  contract.

21       48.    Additionally, RISC #1 included a $750 charge for GAP Insurance. As with

22  the Optional DMV Electronic Filing Fee and the service contract, Ron Baker did *not*

23  discuss with Mr. Mondragon whether he wanted to purchase a Gap Contract, and

24  Mr. Mondragon does not know what Gap Insurance is.

25       49.    Moreover, RISC #1 includes a charge $427 as "license fees" on Line 2.A.

26  of the Itemization of the Amount Financed Section and includes the notation "Incl." on

27  Line 2.B. for registration, transfer, and titling fees, without disclosing the amount due

28  or what other figure on the contract the amount due might be included in. To the

SECOND AMENDED COMPLAINT

1  extent the registration, transfer, and titling fees were included on another line, such

2  as the license fees line, the license fee disclosure is therefore inaccurate and overstated.

3        50.    Finally, RISC #1 states Mr. Mondragon made a $4,500 cash down

4  payment. In fact, Mr. Mondragon did not pay any money on April 28, 2010. Rather,

5  Mr. Mondragon's first payment towards the down payment on the Vehicle was only

6  $1,800, which was made on the following day, April 29, 2010. RISC #1 does not

7  disclose that Mr. Mondragon and Ron Baker agreed his down payment would be paid

8  in parts, or what the schedule was for Mr. Mondragon to make the payments.

9        51.    On May 3, 2010, Mr. Mondragon returned to Ron Baker. While there,

10  Mr. Montejano told Mr. Mondragon he had to sign a new purchase contract for the

11  Vehicle. It was not explained to Mr. Mondragon why he needed to sign a new contract,

12  nor was Mr. Mondragon told that if he did not want to sign a new contract he could

13  return the Vehicle and get his down payment back. Not knowing he had any other

14  option, Mr. Mondragon agreed to sign another contract for the Vehicle.

15        52.    In the new Retail Installment Sale Contract for the Vehicle ("RISC #2"),

16  Ron Baker raised Mr. Mondragon's Annual Percentage Rate ("APR") from 15.99% to

17  16.85%, decreased the cash price of the car by $500, and decreased the cost of the

18  service contract by $500. The net effect of the changes was to reduce Mr. Mondragon's

19  monthly payment from $554.35 to $543.42. However, none of these changes were

20  discussed with Mr. Mondragon. Attached hereto as Exhibit 2 is a true and correct copy

21  of RISC #2, which was executed by Mr. Mondragon and Ron Baker on or about

22  May 3, 2010.

23        53.    RISC #2 still included a charge for the alarm, a charge for a Gap Contract,

24  a charge for a service contract, and a charge for the "Optional DMV Electronic Filing

25  Fee," all without Mr. Mondragon's knowledge he was being charged for these items.

26        54.    Again, RISC #2 (like RISC #1) did not list an amount for registration,

27  transfer, and titling fees – merely included the notation "Incl." on Line 2.B. of the

28  Itemization of the Amount Financed Section of the RISC. Ron Baker disclosed a $427

1    charge as "license fees" on Line 2.A. of RISC #2, which is believed to be an inflated or

2    false amount for license fees actually due and owing to the DMV.

3        55.    Finally, RISC #2 stated Mr. Mondragon had made a $4,500 cash down

4    payment.  This statement was false when made by Ron Baker.  As of May 3, 2010,

5    Mr. Mondragon had only paid $1,800 as a down payment.  In fact, while

6    Mr. Mondragon was at the dealership on May 3, 2010, Mr. Montejano told him he had

7    30 days to pay the remaining $2,700 due on the down payment.  To that end,

8    Mr. Mondragon paid Ron Baker $2,700 on June 1, 2010.

9        56.    Plaintiff is informed and believes that Ron Baker did not pay *any* money

10   to the DMV for license, registration, transfer, or titling fees for the Vehicle.  The

11   Vehicle had previously been registered in July 2009 and, accordingly, the only fee due

12   and owing when Mr. Mondragon purchased it in May 2010 should have been the $15

13   transfer fee.  Moreover, Mr. Mondragon received a bill from the DMV, and paid the

14   2010 license and registration fees on June 30, 2010, within a few months of purchasing

15   the Vehicle from Ron Baker.  As such, Ron Baker could not have submitted to the DMV

16   the $427 it listed on RISC # 2 and that it collected from Mr. Mondragon.  Ron Baker

17   has not, to this date, refunded any of the improper $427 charge to Mr. Mondragon.

18       57.    Subsequent to his purchase of the Vehicle, Mr. Mondragon has come to

19   believe the Vehicle was in an accident prior to it being sold to him, a fact Ron Baker

20   did *not* disclose to him at the time of the purchase.

21       58.    Finally, although Ron Baker obtained Mr. Mondragon's credit scores,

22   Mr. Mondragon was never asked to, and never did, sign a credit application

23   authorizing Ron Baker to obtain his credit scores.

24       59.    At some point after May 3, 2010, RISC #2 for the sale of the Vehicle to

25   Plaintiff was assigned by Ron Baker to Defendant Capital One.  The improper

26   disclosure of the registration/transfer/titling fees appears on the face of RISC #2.

27   / / /

28   / / /

60.     RISC #2 for the Vehicle included the following language:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

61.     This "holder" clause in RISC #2 makes Capital One liable for all claims and defenses that could be raised against Ron Baker, with respect to the sale of the Vehicle.

62.     Plaintiff has made his monthly payments to Capital One in accordance with the terms of RISC #2.

63.     California Vehicle Code § 11614(a) provides it is unlawful for a lessor-retailer licensed in this state to "Make or disseminate, or cause to be made or disseminated, before the public in this state, in any newspaper or other publication, or any advertising device, or by oral representation, or in any manner or  any means whatsoever, any statement that is untrue or misleading and that is known, or which by the exercise or reasonable care should be known, to be untrue or misleading . . . ."

64.     California Vehicle Code § 11713(a) provides it is unlawful for any licensed dealer to "Make or disseminate, or cause to be made or disseminated, before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any manner or  any means whatsoever, any statement that is untrue or misleading and that is known, or which by the exercise or reasonable care should be known, to be untrue or misleading . . . ."

65.     Ron Baker is, on information and belief, a licensed dealer and lessor-retailer in this state within the terms of the California Vehicle Code Sections 285 and 373.

## FIRST CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et seq.* – Class 1 Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

66.    Plaintiff, on his own behalf and on behalf of the Class 1 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 65, inclusive, of this Complaint and further alleges as follows.

67.    The vehicles purchased by Plaintiff and each Class 1 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

68.    Plaintiff and each Class 1 Member are "consumers" pursuant to Civil Code Section 1761(d).

69.    Defendants Ron Baker, Capital One, and Does 1-10 are "persons" pursuant to Civil Code Section 1761(c).

70.    The advertisement and sale of the vehicles to Plaintiff and each Class 1 Member are "transactions" pursuant to Civil Code Section 1761(e).

71.    The acts and/or practices engaged in by Ron Baker and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 1 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

(a)     Ron Baker represented that the transactions had been supplied in accordance with previous representations when they had not; and

(b)     Ron Baker represented that the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

72.    Plaintiff alleges the amounts disclosed as "license fees" on his RISC, and the RISCs of the members of Class 1, were false and overstated.

/ / /

73.     Plaintiff alleges the notation "Incl." as used to disclose the amount of registration, transfer, and titling fees due is false and misleading, as it does not indicate whether the amount due for those fees is included in the purchase price, included in some other disclosure on the RISC, or being paid by Ron Baker.

74.     On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 1 identified above. The letter was received by Ron Baker on December 14, 2011.

75.     Plaintiff and the Class 1 Members relied on Ron Baker to prepare legal and enforceable contracts as a licensed automobile dealership. Plaintiff and Subclass Members relied on Capital One to accept for assignment only legal and enforceable contracts as an assignee and holder to their conditional sale contracts. Plaintiff and the Class 1 and Subclass Members suffered damages by making payments pursuant to unenforceable contracts and/or paying overstated license fees to which they are entitled to refunds. Plaintiff was not aware of Ron Baker's and Capital One's deceptive conduct until contacting attorneys in 2011.

76.     The Consumers Legal Remedies Act provides that a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification. Defendant Ron Baker received Plaintiff's Consumers Legal Remedies Act notification and demand letter on December 14, 2011, **and Capital One received the letter on or after December 14, 2011. Neither Ron Baker nor Capital One offered Plaintiff or the proposed Class 1 and/or Subclass an appropriate remedy within 30 days of notice of violations of the CLRA. Accordingly, Plaintiff seeks all available damages and punitive damages under the Consumers Legal Remedies Act for Defendants' violations of Civil Code Sections 1770(a)(14) and (16).**

77.     Section 1780(a)(2) of the Act provides that a consumer is entitled to an injunction prohibiting acts or practices which violate the Act. Plaintiff alleges Ron

1 | Baker has a pattern and practice of failing to properly and separately itemize, on
2 | RISCs, the registration, transfer or titling fees owing on the vehicles it sells,
3 | overstating the amount of license fees due, and/or violating the Single Document Rule
4 | of the ASFA.

5 |      78. Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to
6 | Capital One and/or Capital One is the holder of these RISCs. The improper disclosure
7 | of the registration/transfer/titling fees appears on the face of the RISCs.

8 |      79. Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,
9 | **including damages and** an order enjoining Defendants from the acts, methods, and
10 | practices as set forth in this Complaint, and attorneys' fees and costs according to proof
11 | at time of trial.

12 | ## SECOND CAUSE OF ACTION
13 | **Action for Rescission of Conditional Sales Contract for the Sale of Goods**
14 | **Pursuant to Civil Code § 1689(b) for Violation of the Automobile Sales**
15 | **Finance Act, Civil Code Section 2981, *et seq.* – Individual and Class 1**
16 | **Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

17 |      80. Plaintiff, on his own behalf and on behalf of the Class 1 Members,
18 | incorporates by reference each and every allegation set forth in Paragraphs 1 through
19 | 79, inclusive, of this Complaint and further alleges as follows.

20 |      81. The RISCs executed by Plaintiff and each Class 1 Member for their
21 | vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a).

22 |      82. Ron Baker, Capital One, and Does 1-10 are "sellers" pursuant to Civil
23 | Code Section 2981(b).

24 |      83. Plaintiff and each Class 1 Member are "buyers" pursuant to Civil Code
25 | Section 2981(c).

26 |      84. The vehicles purchased by Plaintiff and each Class 1 Member are "motor
27 | vehicles" pursuant to Civil Code Section 2981(k).

28 | ///

85.   Civil Code Section 2982(a) provides a list of the disclosures which a conditional sale contract for the sale of a motor vehicle shall contain.

86.   When Ron Baker disclosed, on Line 2.B. of Plaintiff's and Class 1 Members' RISCs, a notation of "Incl." as the amount paid for registration/transfer/titling fees, it violated Civil Code Section 2982(a)(2)(B) by failing to disclose the actual amount paid for those fees.

87.   Plaintiff is informed and believes Ron Baker inflated the amount due for license fees and that the amount disclosed as license fees on his RISC and the RISCs of the members of Class 1 were false and overstated.

88.   The "Single Document Rule" in Civil Code Section 2981.9 requires that all of the agreements between the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle be contained in a single document.  The RISCs of Plaintiff and the Class 1 Members do not show the true and correct cost of the license and registration fees due, and therefore violate the Single Document Rule because not all of the terms of cost are set forth in the RISCs.  That amount can only be learned by resorting to other documents.

89.   Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to Capital One and/or Capital One is the holder of these RISCs. The improper disclosure of the registration/transfer/titling fees appears on the face of the RISCs.

90.   Ron Baker did not correct the willful violation of the ASFA appearing on the face of Plaintiff's and the Class 1 Members' RISCs within 30 days of execution of the contracts.  Capital One did not correct the willful violation of the ASFA appearing on the face of Plaintiff's and the Subclass Members' RISCs within 20 days of the assignment of such RISCs to Capital One.

137.   Plaintiff and each Class 1 Member have been damaged by Ron Baker's violations of the ASFA.   Since the violations include violations of Civil Code Sections 2981.9 and 2982(a), Plaintiff and each Class 1 Member are entitled to

SECOND AMENDED COMPLAINT

1  statutory remedies pursuant to Civil Code Sections 2983 and 2983.1.  Plaintiff also

2  seeks his attorneys' fees and costs pursuant to Civil Code Section 2983.4.

3  **THIRD CAUSE OF ACTION**

4  **Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. &**

5  **Prof. Code Section 17200, *et seq*. – Class 1 Claim – As Against Defendants**

6  **Ron Baker, Capital One, and Does 1-10**

7       91.    Plaintiff, on his own behalf and on behalf of the Class 1 Members,

8  incorporates by reference each and every allegation set forth in Paragraphs 1 through

9  90, inclusive, of this Complaint and further alleges as follows.

10       92.    Ron Baker's acts, omissions, misrepresentations, practices, and/or non-

11  disclosures constituted unlawful and/or unfair business acts and/or practices within the

12  meaning of California Business & Professions Code Sections 17200, *et seq.*

13       93.    Plaintiff and the Class 1 Members have suffered injury in fact and have

14  lost money as a result of Ron Baker's unfair competition, including, but not limited to,

15  their statutory damages under the ASFA caused by Ron Baker's acts and overpaying

16  amounts due for license fees.

17       94.    Ron Baker engaged in "unlawful" business acts and practices by failing

18  to properly and separately itemize, on RISCs, the registration, transfer or titling fees

19  owing on the vehicles it sells, overstating license fees, and failing to disclose in a single

20  document all of the agreements as to the terms of payment for the vehicles purchased

21  by Plaintiff and the Class 1 Members.  These business policies, acts, and/or practices

22  were intended to and did violate, *inter alia*, California Civil Code Section 1709, *et seq.*,

23  the CLRA, and the ASFA.  Accordingly, Ron Baker violated Business & Professions

24  Code Section 17200's proscription against engaging in an "unlawful" business act or

25  practice. Plaintiff seeks an order enjoining Ron Baker from engaging in the acts,

26  methods, and/or practices as set forth in this Complaint and for payment of restitution.

27       95.    Ron Baker also engaged in an "unfair" business act or practice in that the

28  justification for selling vehicles based on the misrepresentations and omissions of

20

material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers.

96.     The above-described unlawful or unfair business acts and practices conducted by Ron Baker continue to this day and present a threat to Plaintiff and the Class 1 Members, and the general public in that Ron Baker failed to publicly acknowledge the wrongfulness of its actions and provide full equitable injunctive and monetary relief as required by the statute.

97.     Ron Baker assigned Plaintiff's and the Subclass Members' RISCs to Capital One and/or Capital One is the holder of these RISCs. The improper disclosure of the registration/transfer/titling fees appears on the face of the RISCs.

98.     Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful and/or unfair business acts and practices set forth in this Complaint and from failing to fully disclose the true nature of their misrepresentations, and ordering Defendants to engage in a corrective notice and advertising campaign.  Plaintiff additionally requests an order from the Court requiring Defendants to provide complete equitable monetary relief so as to prevent Defendants from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750,** *et seq.* **– Class 2 Claim – As Against Defendants Ron Baker and Does 1-10**

99.    Plaintiff, on his own behalf and on behalf of the Class 2 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 98, inclusive, of this Complaint and further alleges as follows.

100.    The vehicles purchased by Plaintiff and each Class 2 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

101.    Plaintiff and each Class 2 Member are "consumers" pursuant to Civil Code Section 1761(d).

102.    Defendants Ron Baker and Does 1-10 are "persons" pursuant to Civil Code Section 1761©.

103.    The advertisement and sale of the vehicles to Plaintiff and each Class 2 Member are "transactions" pursuant to Civil Code Section 1761(e).

104.    The acts and/or practices engaged in by Ron Baker and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 2 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

(a)    Ron Baker represented the transactions had been supplied in accordance with previous representations when they had not; and

(b)    Ron Baker represented that the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

105.    On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 2 identified above.  The letter was received by Ron Baker on December 14, 2011.

SECOND AMENDED COMPLAINT

1    106.    Plaintiff and the Class 2 Members relied on Ron Baker to prepare legal
2  and enforceable contracts as a licensed automobile dealership. Plaintiff and
3  Class 2 Members suffered damages by being automatically charged, and therefore
4  paying, an optional fee and related finance charges on such amount. Plaintiff was not
5  aware of Ron Baker's deceptive conduct until contacting attorneys in 2011.

6    107.    Plaintiff and the Class 2 Members suffered further damages as a result
7  of Ron Baker's practices in that they paid fees they would not have had to pay had Ron
8  Baker disclosed that the fees were optional, rather than automatically charging them.

9    108.    The Consumers Legal Remedies Act provides a complaint for violation of
10  the Act may be amended without leave of court should the violation not be remedied
11  within thirty (30) days of notification. **Ron Baker did not offer Plaintiff or the**
12  **proposed Class 2 an appropriate remedy within 30 days of notice of violations**
13  **of the CLRA. Accordingly, Plaintiff seeks all available damages and punitive**
14  **damages under the Consumers Legal Remedies Act for Defendant's violations**
15  **of Civil Code Sections 1770(a)(14) and (16).**

16    109.    Civil Code Section 1780(a)(2) provides a consumer is entitled to an
17  injunction prohibiting acts or practices which violate the CLRA. Plaintiff alleges Ron
18  Baker has established a pattern and/or practice of automatically charging customers
19  the "Optional DMV Electronic Filing Fee," without telling customers the fee is optional
20  and they can refuse to pay it.

21    110.    Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,
22  **including damages and** an order enjoining Ron Baker from the acts, methods, and
23  practices as set forth in this Complaint, and attorneys' fees and costs according to proof
24  at time of trial.

25  / / /
26  / / /
27  / / /
28  / / /

SECOND AMENDED COMPLAINT

1

## FIFTH CAUSE OF ACTION

2   **Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. &**

3   **Prof. Code Section 17200, *et seq*. – Class 2 Claim – As Against Defendants**

4   **Ron Baker and Does 1-10**

5       111.   Plaintiff, on his own behalf and on behalf of the Class 2 Members,

6   incorporates by reference each and every allegation set forth in Paragraphs 1 through

7   110, inclusive, of this Complaint and further alleges as follows.

8       112.   Defendant Ron Baker's omissions, misrepresentations, practices, and/or

9   non-disclosures constituted unlawful and/or unfair business acts and/or practices

10  within the meaning of California Business & Professions Code Sections 17200, *et seq*.

11      113.   Plaintiff and the Class 2 Members suffered injury in fact and lost money

12  as a result of Ron Baker's unfair competition, including, but not limited to, paying for

13  a service they were automatically charged by Ron Baker, but were not required to pay

14  for.

15      114.   Defendant Ron Baker engaged in "unlawful" business acts and/or

16  practices by automatically charging customers the Optional DMV Electronic Filing

17  Fee, without telling customers that the fee is optional and that they can refuse to pay

18  it.  This business act and/or practice was intended to and did violate, *inter alia*,

19  California Civil Code § 1709, *et seq*., and the CLRA.  Accordingly, Ron Baker has

20  violated Business & Professions Code Section 17200's proscription against engaging

21  in an "unlawful" business act and/or practice.  Plaintiff seeks an order enjoining Ron

22  Baker engaging in the acts, methods, and/or practices as set forth in this Complaint

23  and for payment of restitution.

24      115.   Ron Baker also engaged in an "unfair" business act and/or practice in that

25  the justification for selling vehicles based on the misrepresentations and omissions of

26  material fact delineated above is outweighed by the gravity of the resulting harm,

27  particularly considering the available alternatives, and offends public policy, is

28

SECOND AMENDED COMPLAINT

1   immoral, unscrupulous, unethical, and offensive, or causes substantial injury to

2   consumers.

3       116.   The above-described unlawful and/or unfair business acts and/or practices

4   conducted by Ron Baker continue to this day and present a threat to Plaintiff and the

5   Class 2 Members, and the general public because Ron Baker failed to publicly

6   acknowledge the wrongfulness of its actions and provide full equitable injunctive and

7   monetary relief as required by the statute.

8       117.   Pursuant to California Business & Professions Code Section 17203,

9   Plaintiff may seek an order of this Court requiring Ron Baker to immediately cease

10   such acts of unfair competition and enjoining Ron Baker from continuing to conduct

11   business via the unlawful and/or unfair business acts and/or practices set forth in this

12   Complaint and from failing to fully disclose the true nature of their

13   misrepresentations, and ordering Ron Baker to engage in a corrective notice and

14   advertising campaign.   Plaintiff additionally requests an order from the Court

15   requiring Ron Baker to provide complete equitable monetary relief so as to prevent Ron

16   Baker from benefitting from the practices that constitute unfair competition or the use

17   or employment of any monies resulting from the sale of these vehicles, including

18   requiring the payment of restitution of any monies as may be necessary to restore any

19   money or property which may have been acquired by means of such acts of unfair

20   competition.

21                   **SIXTH CAUSE OF ACTION**

22   **Violation of Consumers Legal Remedies Act, Civil Code Section 1750,** *et*

23   *seq.* **– Class 3 Claim – As Against Defendants Capital One and Does 1-10**

24       118.   Plaintiff, on his own behalf and on behalf of the Class 3 Members,

25   incorporates by reference each and every allegation set forth in Paragraphs 1 through

26   117, inclusive, of this Complaint and further alleges as follows.

27   / / /

28   / / /

119.   The vehicles purchased by Plaintiff and each Class 3 Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

120.   Plaintiff and each Class 3 Member are "consumers" pursuant to Civil Code Section 1761(d).

121.   Defendant Capital One and Does 1-10 are "persons" pursuant to Civil Code Section 1761(c).

122.   The advertisement and sale of the vehicles to Plaintiff and each Class 3 Member are "transactions" pursuant to Civil Code Section 1761(e).

123.   The acts and/or practices engaged in by Capital One and alleged herein were intended to, and did, result in the sales of the vehicles at issue to Plaintiff and the Class 3 Members primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in that Capitol One represented the transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which were prohibited by law.

124.   On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter, seeking both individual relief and relief on behalf of Class 3 identified above.

125.   Plaintiff and Class 3 Members relied on Capital One to accept for assignment only legal and enforceable contracts as an assignee and holder of their conditional sale contracts. Plaintiff and Class 3 Members suffered damages by making payments pursuant to unenforceable contracts.  Plaintiff was not aware of Capital One's deceptive conduct until contacting attorneys in 2011.

126.   The Consumers Legal Remedies Act provides a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification. **Capital One did not offer Plaintiff or the proposed Class 3 an appropriate remedy within 30 days of notice of violations**

1    of the CLRA.  **Accordingly, Plaintiff seeks all available damages and punitive**
2    **damages under the Consumers Legal Remedies** Act for Defendants' violations of
3    Civil Code Sections 1770(a)(14) and (16).

4        127.   Civil Code Section 1780(a)(2) provides a consumer is entitled to an
5    injunction prohibiting acts or practices which violate the CLRA.  Plaintiff alleges
6    Capital One has a pattern and practice of accepting, for assignment, retail installment
7    sale contracts for sales made in California that fail to separately itemize and disclose
8    registration/transfer/titling fees paid to the DMV. Accordingly, Plaintiff seeks an order
9    prohibiting Defendant Capital One from accepting, for assignment, retail installment
10   sale contracts for sales made in California where the retail installment sale contract
11   fails to separately itemize and disclose registration/transfer/titling fees on Line 2.B. of
12   the Itemization of the Amount Financed section of the contracts.

13       128.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief,
14   **including damages and** an order enjoining Capital One from the acts, methods,
15   and/or practices as set forth in this Complaint, and attorneys' fees and costs according
16   to proof at time of trial.

17                       **SEVENTH CAUSE OF ACTION**
18   **Action for Rescission of Conditional Sales Contract for the Sale of Goods**
19   **Pursuant to Civil Code § 1689(b) for Violation of the Automobile Sales**
20   **Finance Act, Civil Code Section 2981,** *et seq.* **– Class 3 Claim – As Against**
21                   **Defendants Capital One and Does 1-10**

22       129.   Plaintiff, on his own behalf and on behalf of the Class 3 Members,
23   incorporates by reference each and every allegation set forth in Paragraphs 1 through
24   128, inclusive, of this Complaint and further alleges as follows.

25       130.   The RISCs executed by Plaintiff and each Class 3 Member for their
26   vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a).

27   / / /

28   / / /

1    131.   Capital One is holder and assignee of Plaintiff's and each Class 3
2  Member's RISCs.

3    132.   Plaintiff and each Class 3 Member are "buyers" pursuant to Civil Code
4  Section 2981(c).

5    133.   The vehicles purchased by Plaintiff and each Class 3 Member are "motor
6  vehicles" pursuant to Civil Code Section 2981(k).

7    134.   Civil Code Section 2982(a) provides a list of the disclosures which a
8  conditional sale contract for the sale of a motor vehicle shall contain.

9    135.   The RISCs of Plaintiff and the Class 3 Members failed to disclose on
10  Line 2.B. of the Itemization of the Amount Financed section of the RISC the actual
11  amount due and owing for registration/transfer/titling fees.   These improper
12  disclosures violate Civil Code Section 2982(a).

13    136.   The "Single Document Rule" in Civil Code Section 2981.9 requires that
14  all of the agreements between the buyer and seller with respect to the total cost and
15  the terms of payment for the motor vehicle be contained in a single document.  The
16  RISCs of Plaintiff and the Class 3 Members do not show the true and correct cost of the
17  registration/transfer/titling fees due, and therefore violate the Single Document Rule.
18  That amount can only be learned by resorting to other documents.

19    137.   Since the violations include violations of Civil Code Sections 2981.9 and
20  2982(a), Plaintiff and each Class 3 Member are entitled to all statutory remedies
21  pursuant to Civil Code Sections 2983 and 2983.1.  Plaintiff also seeks his attorneys'
22  fees and costs pursuant to Civil Code Section 2983.4.

23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

SECOND AMENDED COMPLAINT

## EIGHTH CAUSE OF ACTION

### Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Class 3 Claim – As Against Defendants Capital One and Does 1-10

138.   Plaintiff, on his own behalf and on behalf of the Class 3 Members, incorporates by reference each and every allegation set forth in Paragraphs 1 through 137, inclusive, of this Complaint and further alleges as follows.

139.   Capital One's acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful and/or unfair business acts and/or practices within the meaning of California Business & Professions Code Sections 17200, *et seq.*

140.   Plaintiff and the Class 3 Members have suffered injury in fact and have lost money as a result of Capital One's unfair competition, including, but not limited to, their statutory damages under the ASFA caused by Capital One's acts and any unrefunded overcharges of vehicle license fees.

141.   Capital One engaged in "unlawful" business acts and/or practices by accepting assignment of RISCs that fail to properly and separately itemize the registration, transfer, or titling owing on vehicles and failing to disclose in a single document all of the agreements as to the terms of payment for the vehicles purchased by Plaintiff and the Class 3 Members.   These business acts and/or practices were intended to and did violate, *inter alia*, California Civil Code Section 1709, *et seq.*, the CLRA, and the ASFA. Accordingly, Capital One violated Business & Professions Code Section 17200's proscription against engaging in an "unlawful" business act or practice. Plaintiff seeks an order enjoining Capital One from engaging in the acts, methods, and/or practices as set forth in this Complaint and for payment of restitution.

142.   Capital One also engaged in an "unfair" business act or practice in that the justification for financing vehicles based on the misrepresentations and omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is

29

1    immoral, unscrupulous, unethical, and offensive, or causes substantial injury to

2    consumers.

3          143.   The above-described unlawful or unfair business acts and practices

4    conducted by Capital One continue to this day and present a threat to Plaintiff and the

5    Class Members, and the general public in that Capital One failed to publicly

6    acknowledge the wrongfulness of its actions and provide full equitable injunctive and

7    monetary relief as required by the statute.

8          144.   Pursuant to California Business & Professions Code Section 17203,

9    Plaintiff seeks an order of this Court requiring Capital One to immediately cease such

10   acts of unfair competition and enjoining Capital One from continuing to conduct

11   business via the unlawful and/or unfair business acts and practices set forth in this

12   Complaint and from failing to fully disclose the true nature of their

13   misrepresentations, and ordering Capital One to engage in a corrective notice and

14   advertising campaign.   Plaintiff additionally requests an order from the Court

15   requiring Capital One to provide complete equitable monetary relief so as to prevent

16   Capital One from benefitting from the practices that constitute unfair competition or

17   the use or employment of any monies resulting from the sale of these vehicles,

18   including requiring the payment of restitution of any monies as may be necessary to

19   restore any money or property which may have been acquired by means of such acts

20   of unfair competition.

21                          **NINTH CAUSE OF ACTION**

22   **Violation of Consumers Legal Remedies Act, Civil Code Section 1750,** *et*

23   *seq.* **– Individual Claim – As Against Defendants Ron Baker, Capital One,**

24                          **and Does 1-10**

25         145.   Plaintiff incorporates by reference each and every allegation set forth in

26   Paragraphs 1 through 144, inclusive, of this Complaint, and further alleges as follows.

27   This cause of action is brought by Plaintiff individually.

28   ///

146. The Vehicle sold to Plaintiff constitutes "goods" purchased for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

147. Plaintiff is a "consumer" pursuant to Civil Code Section 1761(d).

148. Defendants are "persons" pursuant to Civil Code Section 1761(c).

149. The advertisement and sale of the vehicle to Plaintiff is a "transaction" pursuant to Civil Code Section 1761(e).

150. The acts and/or practices engaged in by Defendant Ron Baker and alleged herein were intended to, and did, result in the sale of the Vehicle to Plaintiff primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

(a)   Ron Baker represented that the goods or services had sponsorship, characteristics, uses, or benefits which they did not have;

(b)   Ron Baker represented that the goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;

(c)   Ron Baker advertised goods with intent not to sell them as advertised;

(d)   Ron Baker represented that the transaction had been supplied in accordance with previous representations when it had not; and

(e)   Ron Baker represented that the transaction conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law.

151. On or about December 13, 2011, Plaintiff served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual relief under the CLRA. The letter was received by Ron Baker on December 14, 2011. The letter was received by Capital One on or after December 14, 2011.

///

152.   Plaintiff relied on Ron Baker to prepare legal and enforceable purchase contracts as a licensed automobile dealership.  Plaintiff suffered damages by making payments pursuant to an unenforceable contract and paying for products he was not aware he was purchasing.  Plaintiff was not aware of Ron Baker's deceptive conduct until contacting attorneys in 2011.

153.   The Consumers Legal Remedies Act provides a complaint for violation of the Act may be amended without leave of court should the violation not be remedied within thirty (30) days of notification. **Neither Ron Baker nor Capital One offered Plaintiff an appropriate remedy within 30 days of notice of violations of the CLRA.   Accordingly, Plaintiff seeks all available damages and punitive damages under the Consumers Legal Remedies Act for Defendants' violations of Civil Code Sections 1770(a)(5), (7), (9), (14) and (16).**

154.   Section 1780(a)(2) of the Act provides a consumer is entitled to an injunction prohibiting acts or practices which violate the Act.  Plaintiff alleges Ron Baker has established a pattern and practice of: (1) selling vehicles over advertised price; (2) failing to disclose prior accident damage; (3) "packing" customers with after-market products and services, such as GAP insurance and service contracts, without the customers' knowledge or consent; (4) falsely representing that an alarm is being provided free of charge and then charging the customer for it; (5) failing to properly disclose, on a customer's RISC, that a customer has made a cash down payment, a portion of which is being deferred until a later date; (6) obtaining credit reports for potential purchasers without obtaining the potential purchaser's consent; and (7) failing to advise customers they do not have to sign a subsequent contract for the same vehicle but can, instead, return the vehicle and obtain their down payment back.

155.   Ron Baker assigned Plaintiff's RISC to Capital One and/or Capital One is the holder of Plaintiff's RISC #2.

/ / /

/ / /

SECOND AMENDED COMPLAINT

156.   Pursuant to Civil Code Section 1780, Plaintiff seeks all available relief, **including damages and** an order enjoining Defendants from the acts, methods, and practices as set forth in this Complaint, and attorneys' fees and costs according to proof at time of trial.

**TENTH CAUSE OF ACTION**

**Commission of Unlawful, Unfair, and/or Fraudulent Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Individual Claim – As Against Defendants Ron Baker, Capital One, and Does 1-10**

157.   Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 155, inclusive, of this Complaint, and further alleges as follows. This cause of action is brought by Plaintiff individually.

158.   Defendants' acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful, unfair, and/or fraudulent business acts and/or practices and untrue and misleading advertising within the meaning of California Business & Professions Code §§ 17200, *et seq.*

159.   Plaintiff suffered injury in fact and lost money as a result of Defendant Ron Baker's unfair competition, including, but not limited to, his statutory damages under the ASFA caused by Defendant's acts, and being charged for goods and/or services he did not agree to.

160.   Defendant Ron Baker has engaged in "unlawful" business acts and/or practices by the following: (1) selling vehicles over advertised price; (2) failing to disclose prior accident damage; (3) "packing" customers with after-market products and services, such as GAP insurance and service contracts, without the customers' knowledge or consent; (4) falsely representing that an alarm is being provided free of charge and then charging the customer for it; (5) failing to properly disclose, on a customer's RISC, that a customer has made a cash down payment, a portion of which is being deferred until a later date; (6) obtaining credit reports for potential purchasers without obtaining the potential purchaser's consent; and (7) failing to advise customers

1  they do not have to sign a subsequent contract for the same vehicle but can, instead,
2  return the vehicle and obtain their down payment back.  Plaintiff seeks an order
3  enjoining Defendant Ron Baker from the acts, methods, and/or practices as set forth
4  in the complaint and for payment of restitution.  These business acts and/or practices
5  violated numerous provisions of both state and federal law including, *inter alia*,
6  California Civil Code Section 1709, *et seq.*, the CLRA, the ASFA, Business and
7  Professions Code Sections 17500 and 17531, and California Vehicle Code Sections
8  11614(a), 11713(a).  Accordingly, Defendant Ron Baker has violated Business &
9  Professions Code Section 17200's proscription against engaging in an "unlawful"
10 business act or practice. Plaintiff seeks an order enjoining Defendant from engaging
11 in the acts, methods, and/or practices as set forth in this Complaint and for payment
12 of restitution.

13      161.   Defendant Ron Baker also engaged in a "fraudulent" business act or
14 practice in that the representations and omissions of material fact described above
15 have a tendency and likelihood to deceive purchasers of these vehicles.

16      162.   Defendant Ron Baker also engaged in an "unfair" business act or practice
17 in that the justification for selling vehicles based on the misrepresentations and
18 omissions of material fact delineated above is outweighed by the gravity of the
19 resulting harm, particularly considering the available alternatives, and offends public
20 policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury
21 to consumers.

22      163.   The above-described unlawful, fraudulent, and/or unfair business acts
23 and/or practices conducted by Defendant continue to this day and present a threat to
24 Plaintiff and the general public in that Defendant failed to publicly acknowledge the
25 wrongfulness of its actions and provide full equitable injunctive and monetary relief
26 as required by the statute.

27      164.   Ron Baker assigned Plaintiff's RISC to Capital One and/or Capital One
28 is the holder of Plaintiff's RISC #2.

165.   Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful, fraudulent, and/or unfair business acts and practices set forth in this Complaint and from failing to fully disclose the true nature of their misrepresentations, and ordering Defendants to engage in a corrective notice and advertising campaign.   Plaintiff additionally requests an order from the Court requiring Defendants to provide complete equitable monetary relief so as to prevent Defendants from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows, on behalf of himself, and the members of the Classes, as appropriate for the particular causes of action:

1.   An Order certifying the Classes under the appropriate provisions of California law, and appointing Plaintiff and his counsel to represent the Classes.

2.   For the declaratory, equitable, and/or injunctive relief requested as permitted under the Consumers Legal Remedies Act and Business & Professions Code Section 17203.

3.   For general, special, and actual damages according to proof at trial.

4.   For rescission and/or restitution of all monies required to be expended.

5.   For incidental and consequential damages according to proof at trial.

6.   For the specified causes of action, punitive and/or statutory damages.

7.   For pre-judgment interest at the legal rate.

/ / /

8. For reasonable attorneys' fees and costs of suit as specified under, *inter alia*, Code of Civil Procedure Section 1021.5, and Civil Code Sections 1717, 1780(d), and 2983.4.

9. For such other and further relief as the Court deems just and proper under the circumstances.

DATED: February 22, 2012                    ROSNER, BARRY & BABBITT, LLP

By: _____
    CHRISTOPHER P. BARRY
    Attorneys for Plaintiff

SECOND AMENDED COMPLAINT

EXHIBIT 1

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

| Dealer Number | Contract Number | A.C.S. Number | Stock Number |
|---|---|---|---|

**Buyer Name and Address**
(including County and Zip Code)
JOSE Q MONDRAGON
350 OXFORD ST #3
CHULA VISTA CA 91911
SAN DIEGO

**Co-Buyer Name and Address**
(including County and Zip Code)

**Creditor-Seller (Name and Address)**
RON BAKER CHEVROLET
2361 NATIONAL CITY BLVD
NATIONAL CITY, CA 91933

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2008 | CHEVROLET SILVERADO | 35690 | 3GCEC13GX88220374 | ☒ personal, family, or household<br>☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 6500.00 is |
|---|---|---|---|---|
| 15.99 % | $ 14509.07 (e) | $ 25404.13 | $ 39913.20 (e) | $ 44413.20 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| 71 Payments | 554.35 | Monthly, Beginning 6-12-10 |
| N/A Payments | N/A | Monthly, Beginning N/A |
| One Final Payment | 554.35 (e) | 5-12-16 |
| N/A | N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| | | |
|---|---|---|
| 1. Total Cash Price | | |
| A. Cash Price of Motor Vehicle and Accessories | $ 23995.00 | (A) |
| 1. Cash Price Vehicle | $ 23995.00 | |
| 2. Cash Price Accessories | $ | |
| 3. Other (Nontaxable) | | |
| Describe | $ N/A | |
| Describe | $ N/A | |
| B. Document Preparation Fee (not a governmental fee) | $ 55.00 | (B) |
| C. Smog Fee Paid to Seller | $ N/A | (C) |
| D. (Optional) Theft Deterrent Device (to whom paid) ULTIMATE | $ 395.00 | (D) |
| E. (Optional) Theft Deterrent Device (to whom paid) | $ N/A | (E) |
| F. (Optional) Theft Deterrent Device (to whom paid) | $ N/A | (F) |
| G. (Optional) Surface Protection Product (to whom paid) | $ N/A | (G) |
| H. (Optional) Surface Protection Product (to whom paid) | $ N/A | (H) |
| I. Sales Tax (on taxable items in A through H) | $ 2140.13 | (I) |
| J. Optional DMV Electronic Filing Fee | $ 29.00 | (J) |
| K. (Optional) Service Contract (to whom paid) WESTERN GENERAL | $ 2000.00 | (K) |
| L. (Optional) Service Contract (to whom paid) | $ N/A | (L) |
| M. (Optional) Service Contract (to whom paid) | $ N/A | (M) |
| N. (Optional) Service Contract (to whom paid) | $ N/A | (N) |
| O. (Optional) Service Contract (to whom paid) | $ N/A | (O) |
| P. Prior Credit or Lease Balance paid by Seller to | $ N/A | (P) |
| (see downpayment and trade-in calculation) | | |
| Q. (Optional) Gap Contract (to whom paid) CLASSIC GAP | $ 759.00 | (Q) |
| R. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ N/A | (R) |
| S. Other (to whom paid) | $ N/A | (S) |
| Fee | | |
| Total Cash Price (A through S) | $ 29477.13 | (1) |
| 2. Amounts Paid to Public Officials | | |
| A. License Fees | $ 427.00 | (A) |
| B. Registration/Transfer/Titling Fees | $ Incl. | (B) |
| C. California Tire Fees | $ N/A | (C) |
| D. Other | $ N/A | (D) |
| Total Official Fees (A through D) | $ 427.00 | (2) |
| 3. Amount Paid to Insurance Companies | | |
| (Total premiums from Statement of Insurance column 1 + 6) | $ N/A | (3) |
| 4. ☐ Smog Certification or ☐ Exemption Fee Paid to State | $ N/A | (4) |

### STATEMENT OF INSURANCE
NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ N/A Ded, Comp., Fire & Theft | Mos $ N/A | |
| $ N/A Ded, Collision | Mos $ N/A | |
| Bodily Injury $ N/A Limits | Mos $ N/A | |
| Property Damage $ N/A Limits | Mos $ N/A | |
| Medical $ N/A | Mos $ N/A | |
| Total Vehicle Insurance Premiums | $ N/A | |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____

Co-Buyer X _____

Seller X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Application for Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos | N/A | $ N/A |
| Credit Disability | N/A Mos | N/A | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A |

Insurance Company Name N/A

Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the total payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

You want to buy the credit insurance.

Date X _____ Buyer Signature _____ Age

Date X _____ Co-Buyer Signature _____ Age

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge.

[Total premiums from Statement of Insurance column a + b]    $ _____ N/A

4. [ ] Smog Certification or/ Exemption Fee Paid to State    $ _____ N/A

5. Subtotal (1 through 4)    $ 29584.13 (E)

6. Total Downpayment:

   A. Agreed Trade-in Value   Yr __N/A__ Make _____ N/A (A)

   Model _____ Odom _____

   VIN _____

   B. Less Prior Credit or Lease Balance    $ _____ N/A (B)

   C. Net Trade-in (A less B) (indicate if a negative number)    $ _____ N/A (C)

   D. Deferred Downpayment    $ _____ N/A (D)

   E. Manufacturer's Rebate    $ _____ N/A (E)

   F. Other _____    $ 4500.00 (F)

   G. Cash    $ 4500.00 (G)

   Total Downpayment (C through G)    $ 4500.00

   (if negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above)

7. Amount Financed (5 less 6)    $ 25084.13

**SELLER ASSIST TO LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.   N/A

Proceeds of Loan from _____ N/A

Amount $ _____ N/A   Finance Charge $ _____ N/A

Total $ _____ N/A   Payable in _____ N/A

Installments of $ _____ N/A   $ _____ N/A

from this Loan is shown in Item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

[ ] Name of autobroker receiving fee, if applicable:
N/A

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X Buyer _____

X Co-Buyer _____

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1O of the itemization of Amount Financed. See your gap contract for details on the terms and conditions a contract, it is a part of this contract.

Term __72__ Mos.   CLASSIC GIC
     Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _Jose G. Mandrique_

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in Item 1K,1L, 1M, and/or 1O

1K Company WESTERN GENERAL _____
Term _____ Mos. or _____ Miles

1L Company N/A _____
Term _____ Mos. or _____ Miles

1M Company N/A _____
Term _____ Mos. or _____ Miles

1N Company N/A _____
Term _____ Mos. or _____ Miles

1O Company N/A _____
Term _____ Mos. or _____ Miles

Buyer X _Jose G. Mandrique_

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _Jose G. Mandrique_

Co-Buyer Signs X _____

OPTION: [ ] You pay no finance charge if the Amount Financed, Item 7, is paid in full on or before _____ N/A _____ Year _____ SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:

   YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER, HOWEVER, UNLESS OTHERWISE SPECIFIED, THIS COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.

   FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

   THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY INSURANCE TERMS AND CONDITIONS.

B/S X _Jose G. Mandrique_

Payoff Agreement: Seller asks us information from you and/or the lienholder to figure out your trade-in vehicle transfer and the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund the difference to you. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund due from the Seller.

Buyer Signature X _Jose G. Mandrique_    Co-Buyer Signature X _____

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _Jose G. Mandrique_    Co-Buyer Signature X _____

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle, subject to identification under California law. See the vehicle contract cancellation option agreement for details.

**YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.**

Buyer Signature X _Jose G. Mandrique_ Date 4-28-10    Co-Buyer Signature X _____

Co-Buyers and Other Owners — A Co-Buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____    Address _____ N/A

**GUARANTY:** To induce us to sell the vehicle to Buyer, and each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend this contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, or default and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____ N/A   Date _____   Guarantor X _____ N/A   Date _____

Address _____ N/A   Address _____ N/A

Seller signs _____   Date 4-28-10   By X ROBERT _____ Title _____   FINANCE MANAGER

**LAW** FORM NO. 553-CA Rev. 1/1/2015, PRINTED 04/22/22

CUSTOMER / TRUTH IN LENDING COPY

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Credited... until we receive part of the Finance Charge...

b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. How late payments or early payments change what you must pay. We based the Finance Charge, Amount of Payments, and Total Sale Price shown on the "Itemization of Amount Financed" on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. In these cases, the total amount that you owe us will be higher or lower...

d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As a full prepayment of your... If the minimum finance charge is greater than the earned Finance Charge you will pay the difference. The minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, or $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000...

### 2. YOUR OTHER PROMISES TO US

a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing...

b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer...

c. Security Interest. You give us a security interest in: the vehicle and all parts or goods installed in it; all money or goods received (proceeds) for the vehicle; all insurance, maintenance, service, or other contracts we finance for you; and all proceeds from insurance, maintenance, service, or other contracts...

d. Insurance you must have on the vehicle.

---

We will sell the vehicle. If you do not get it back, if you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.

g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts...

### 4. WARRANTIES SELLER DISCLAIMS

If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties express or implied on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### 8. Applicable Law

Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

Warranties of Buyer. You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

### CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE

If you become disabled, you must write us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us, in the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays...

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also, after the steps described below.

b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means that you:

• You do not pay any payment on time;
• You give false, incomplete, or misleading information on a credit application;
• You start a proceeding in bankruptcy or one is started against you or your property;
• The vehicle is lost, damaged or destroyed; or
• You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts due under this contract.

| Seller's Right to Cancel |
| --- |
| a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract. |

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | | (Assignee) at (address) |
| --- | --- | --- |
| | | under the terms of Seller's agreement with Assuras. |
| ☐ Assigned with recourse | ☐ Assigned without recourse | ☐ Assigned with limited recourse |

| Seller | By | Title |
| --- | --- | --- |

Form No. 553-CA 1/10

EXHIBIT 2

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

Dealer Number _____   Contract Number _____   R.O.S. Number _____   Stock Number _____

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| JOSE O MONDRAGON 360 OXFORD ST #3 CHULA VISTA, CA 91911 SAN DIEGO | | RON BAKER CHEVROLET 2301 NATIONAL CITY BLVD NATIONAL CITY, CA 91950 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2006 | CHEVROLET SILVERADO | 35690 | 3GCEC13CX00220374 | ☒ personal, family or household ☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 4500.00 |
|---|---|---|---|---|
| 16.95 % | $ 14765.06 (e) | $ 24360.30 | $ 39126.24 (e) | $ 43626.24 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| 71 Payments | 543.48 | Monthly, Beginning 6-17-10 |
| N/A Payments | N/A | Monthly, Beginning |
| One Final Payment | 543.48 (e) | 5-17-16 |

Late Charge. If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories .............................. $ 23495.00 (A)
      1. Cash Price Vehicle  $ 23495.00
      2. Cash Price Accessories  $ N/A
      3. Other (Nontaxable)
         Describe _____  $ N/A
         Describe _____  $ N/A
   B. Document Preparation Fee (not a governmental fee) .......................... $ 55.00 (B)
   C. Smog Fee Paid to Seller ................................................. $ N/A (C)
   D. (Optional) Theft Deterrent Device (to whom paid) ULTIMATE ................ $ 500.00 (D)
   E. (Optional) Theft Deterrent Device (to whom paid) ......................... $ N/A (E)
   F. (Optional) Theft Deterrent Device (to whom paid) ......................... $ N/A (F)
   G. (Optional) Surface Protection Product (to whom paid) ..................... $ N/A (G)
   H. (Optional) Surface Protection Product (to whom paid) ..................... $ N/A (H)
   I. Sales Tax (on taxable items in A through H) .............................. $ 2104.30 (I)
   J. Optional DMV Electronic Filing Fee ...................................... $ 29.00 (J)
   K. (Optional) Service Contract (to whom paid) WESTERN GENERAL .............. $ 1500.00 (K)
   L. (Optional) Service Contract (to whom paid) .............................. $ N/A (L)
   M. (Optional) Service Contract (to whom paid) .............................. $ N/A (M)
   N. (Optional) Service Contract (to whom paid) .............................. $ N/A (N)
   O. (Optional) Service Contract (to whom paid) .............................. $ N/A (O)
   P. Prior Credit or Lease Balance paid by Seller to .......................... $ N/A (P)
      (see downpayment and trade-in calculation)
   Q. (Optional) Gap Contract (to whom paid) CLASSIC GAP ....................... $ 750.00 (Q)
   R. (Optional) Used Vehicle Contract Cancellation Option Agreement ........... $ N/A (R)
   S. Other (to whom paid) ..................................................... $ N/A (S)
      For _____
   Total Cash Price (A through S) .............................................. $ 28433.30 (1)

2. Amounts Paid to Public Officials       Estimated
   A. License Fees ............................................................. $ 427.00 (A)
   B. Registration/Transfer/Titling Fees ...................................... $ Incl. (B)
   C. California Tire Fees ..................................................... $ N/A (C)
   D. Other .................................................................... $ N/A (D)
   Total Official Fees (A through D) ........................................... $ 427.00 (2)

3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a × b) ................... $ N/A (3)

4. ☐ Smog Certification or ☐ Exemption Fee Paid to State ...................... $ N/A (4)

### STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | Mos. $ N/A | |
| $ N/A Ded. Collision | Mos. $ N/A | |
| Bodily Injury $ N/A Limits | Mos. $ N/A | |
| Property Damage $ N/A Limits | Mos. $ N/A | |
| Medical $ N/A | Mos. $ N/A | |
| N/A | Mos. $ N/A | |
| Total Vehicle Insurance Premiums | | $ N/A (e) |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X _____
Seller X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Application for Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. $ N/A | | $ N/A |
| Credit Disability | N/A Mos. $ N/A | | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A |

Insurance Company Name N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term is shown below.

You are applying for the credit insurance marked above. Your signature below means that you agree that (1) You are not eligible for insurance if you have reached your 65th birthday, (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date, (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

N/A
Date – Buyer Signature _____   Age ___
N/A
Date – Co-Buyer Signature _____   Age ___

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra

3. Amount Paid to Insurance Companies
(Total premiums from Statement of Insurance column a + b)  $ N/A

4. Smog Certification or () Exemption Fee Paid to State  $ N/A

5. Subtotal (1 through 4)  $ 25960.38 (S)

6. Total Downpayment
   A. Agreed Trade-in Value  Yr N/A  Make _____  $ N/A (A)
      Model _____  Odom _____
      VIN _____
   B. Less Prior Credit or Lease Balance  $ N/A (B)
   C. Net Trade-In (A less B) (indicate if a negative number)  $ N/A (C)
   D. Deferred Downpayment  $ N/A (D)
   E. Manufacturer's Rebate  $ N/A (E)
   F. Other  $ N/A (F)
   G. Cash  $ 4500.00 (G)
   Total Downpayment (C through G)  $ 4500.00 (6)
   (if negative, enter zero on line 6 and enter the amount less zero as a positive number on line 1R above)

7. Amount Financed (5 less 6)  $ 24360.38 (7)

<table>
<tr><td>SELLER ASSISTED LOAN<br>BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.<br><br>Proceeds of Loan From: _N/A_<br>Amount $ N/A  Finance Charge $ N/A<br>Total $ N/A  Payable in _N/A_<br>Installments of $ N/A<br>Term of this Loan is shown in item 6D.</td><td>AUTO BROKER FEE DISCLOSURE<br>If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:<br><br>☐ Name of autobroker receiving fee, if applicable:<br>N/A</td></tr>
</table>

SELLER'S RIGHT TO CANCEL If Buyer and Co-Buyer sign here, the provisions of the Seller's Right To Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.
X _____ Buyer     Co-Buyer

OPTIONAL GAP CONTRACT A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides, it is a part of this contract.
Term _72_ Mos. _CLASSIC GAP_
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

OPTIONAL SERVICE CONTRACT(S) You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1K,1L, 1M, 1N, and/or 1O.
1K Company _WESTERN GENERAL_
Term _60_ Mos. or _75000_ Miles
1L Company _N/A_
Term _N/A_ Mos. or _N/A_ Miles
1M Company _N/A_
Term _N/A_ Mos. or _N/A_ Miles
1N Company _N/A_
Term _N/A_ Mos. or _N/A_ Miles
1O Company _N/A_
Term _N/A_ Mos. or _N/A_ Miles
Buyer X _____

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.
Buyer Signs X _____
Co-Buyer Signs X _____

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _N/A_, Year _N/A_.  SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
X/S X _____

Buyer Signature X _____  Co-Buyer Signature X _____

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.
Buyer Signature X _____  Co-Buyer Signature X _____

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, or decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day cancellation option to purchase a used vehicle with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO, THE TERMS OF THIS CONTRACT; YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____  Date 5-03-10  Co-Buyer Signature X _____  Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. This other owner agrees to the security interest in the vehicle given to us in this contract.
Other Owner Signature X _____  Address N/A

GUARANTY: To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notice of the amount owing at any time, and of any demands upon the Buyer.
Guarantor X _____  Guarantor X _____  Guarantor X _____
Address N/A  Address N/A  Address N/A

Seller Signs _____  Date 5-03-10  By ROBERT _____  Title FINANCE MGR

LAW® FORM NO. 553-CA (REV. ____) STATEMENT NO. ____

CUSTOMER / TRUTH IN LENDING COPY

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**

   a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Creditor-Seller may receive part of the Finance Charge.

   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take...

   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time...

2. **YOUR OTHER PROMISES TO US**

   a. If the vehicle is damaged, destroyed, or missing...

   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission...

   c. Security interest...

3. [illegible]

4. **WARRANTIES SELLER DISCLAIMS**

   If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose...

5. Used Car Buyers Guide...

6. **Applicable Law**

   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid...

7. **Warranties of Buyer.** You promise you have given true and correct information in your application for credit...

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**

If you become disabled, you must tell us right away...

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use For Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-CA 1/10

1   ROSNER, BARRY & BABBITT, LLP
    Hallen D. Rosner, SBN: 109740
2   Christopher P. Barry, SBN: 179308
    Angela J. Smith, SBN: 216876
3   10085 Carroll Canyon Road, Suite 100
    San Diego, California 92131
4   TEL: (858) 348-1005
    FAX: (858) 348-1150
5
    ROMANO STANCROFF & MIKHOV, PC
6   Steve Mikhov, SBN: 224676
    640 S. San Vicente, Suite 350
7   Los Angeles, CA 90048
    TEL:  (323) 936-2274
8   FAX:  (323) 939-7973
9   Attorneys for Plaintiff
10
11          SUPERIOR COURT OF THE STATE OF CALIFORNIA
12             IN AND FOR THE COUNTY OF SAN DIEGO
13
14   JOSE MONDRAGON, individually       CASE NO. 37-2011-00103236-CU-CO-CTL
     and on behalf of all others similarly
15   situated,                          **CLASS ACTION**
                                        **PROOF OF SERVICE**
16              Plaintiff,
17        v.
18   RON BAKER CHEVROLET, a
     California Corporation;
19   CAPITAL ONE AUTO FINANCE, a
     business entity form unknown; and
20   DOES 1 through 10, inclusive,
21              Defendants.
22
23
24
25
26
27
28

─────────────────────────────────────────
                PROOF OF SERVICE

F I L E D
Clerk of the Superior Court

FEB 2 2 2012

# PROOF OF SERVICE

## *MONDRAGON v. RON BAKER CHEVROLET*
CASE NO. 37-2011-00103236-CU-CO-CTL

I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 10085 Carroll Canyon Road, First Floor, San Diego, California 92131.

On February 22, 2012, I served the foregoing document(s) described as:

## SECOND AMENDED COMPLAINT

on the interested parties in this action at San Diego, California addressed as follows:

| | |
|---|---|
| Thomas R. Kelleher, Esq.<br>Walsh McKean Furcolo LLP<br>625 Broadway, Suite 1402<br>San Diego, CA 92101<br><br>Telephone:   (619) 232-8486<br>Facsimile:   (619) 232-2691<br><br>Attorneys for Defendant<br>Ron Baker Chevrolet | Hemmy So, Esq.<br>Doll Amir & Eley LLP<br>1888 Century Park East, Suite 1850<br>Los Angeles, CA 90067<br><br>Telephone:   (310) 557-9100<br>Facsimile:   (310) 557-9101<br><br>Attorneys for Defendant<br>Capital One Financial Corporation |

[X]   **BY U.S. MAIL:**  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

(1) [] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

(2) [X] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing.  Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid, at San Diego, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[]   **BY FACSIMILE:**  On the date below, the document(s) were transmitted by facsimile transmission to each of the parties at the facsimile number(s) listed above and the transmission(s) reported as complete and without error.  A true and correct copy of the said transmission report is attached hereto and incorporated herein by reference.

[]   **(BY ELECTRONIC MAIL, CRC 2.260 and CCP §2015.5):** The documents were transmitted via email from amie@rbblawgroup.com on _____ at am/pm to each of the parties at the email address(s) listed above and the transmission(s) reported complete and without error.

PROOF OF SERVICE

1    []    **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or
          package provided by an overnight delivery carrier and addressed to the persons
2         at the above addressed. I caused such envelope or package to be deposited in a
          regularly utilized drop box of the overnight delivery carrier.
3
      []    **BY PERSONAL SERVICE:** I caused to be personally delivered the documents
4         listed above to the addressee(s) named above.

5    [X]   **(STATE)** I declare under penalty of perjury under the laws of the State of
          California that the above is true and correct.
6
      []    **(FEDERAL)** I declare that I am employed in the office of a member of the bar
7         of this court at whose direction the service was made.

8         Executed on February 22, 2012 at San Diego, California.

9
10                                                 Amie Olesko
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 10

1 | **DOLL AMIR & ELEY LLP**
HUNTER R. ELEY (SBN 224321)
2 | heley@dollamir.com
HEMMY SO (SBN 259374)
3 | hso@dollamir.com
1888 Century Park East, Suite 1850
4 | Los Angeles, California 90067
Tel: 310.557.9100
5 | Fax: 310.557.9101

6 | Attorneys for Defendant,
CAPITAL ONE AUTO FINANCE,
7 | a division of CAPITAL ONE, N.A.

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SAN DIEGO, CENTRAL COURTHOUSE**

10

11

12 | JOSE MONDRAGON, individually and on behalf of all others similarly situated,

13 |             Plaintiff,

14 | v.

15 | RON BAKER CHEVROLET, a California Corporation; CAPITAL ONE AUTO FINANCE,
16 | a business entity of unknown; and DOES 1 through 10, inclusive,

17 |             Defendants.

Case No. 37-2011-00103236-CU-CO-CTL

*Assigned to Dept. C-61*
*The Hon. John S. Meyer*

**DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Date:       May 18, 2012
Time:      10:30 a.m.
Location:  330 W. Broadway
            San Diego, CA 92101

SAC Filed:     February 22, 2012
Trial Date:     TBA

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

**TO EACH PARTY AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 18, 2012 at 10:30 a.m. or as soon thereafter as the matter may be heard in Department C-61 of the San Diego Superior Court, located at 330 West Broadway, San Diego, CA 92101, Defendant Capital One Auto Finance ("Capital One") will and does hereby demur to Plaintiff Jose Mondragon's Second Amended Complaint (the "SAC").

Capital One brings this demurrer on the grounds that the SAC does not state facts sufficient to constitute a cause of action. *See* Cal. Civ. Proc. Code §§ 430.10(e). This Demurrer is based on the Notice of Demurrer, the attached Memorandum of Points and Authorities, the reply papers to be submitted in this matter, and such additional evidence as may be submitted at the hearing of this matter.

DATED:  March 28, 2012

DOLL AMIR & ELEY LLP

By:

Hunter R. Eley
Hemmy So
Attorneys for Defendant,
CAPITAL ONE AUTO FINANCE,
a division of CAPITAL ONE, N.A.

DOLL AMIR & ELEY LLP

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1

**DEMURRER**

Defendant Capital One Auto Finance ("Defendant" or "Capital One") demurs generally to Plaintiff Jose Mondragon's Second Amended Complaint on the following grounds:

**FIRST CAUSE OF ACTION**

**(Violation of the Consumer Legal Remedies Act – Class 1 Claim)**

1.      Plaintiff's cause of action for violation of the Consumer Legal Remedies Act – Class 1 Claim is subject to a general demurrer because it does not state facts sufficient to constitute a cause of action against Defendant.  Cal. Civ. Proc. Code § 430.10(e).

**SECOND CAUSE OF ACTION**

**(Violation of the Automobile Sales Finance Act – Individual and Class 1 Claim)**

2.      Plaintiff's cause of action for violation of the Automobile Sales Finance Act – Individual and Class 1 Claim – is subject to a general demurrer because it does not state facts sufficient to constitute a cause of action against Defendant.  Cal. Civ. Proc. Code § 430.10(e).

**THIRD CAUSE OF ACTION**

**(Unlawful, Unfair, Fraudulent Business Acts**

**& Practices (Cal. Bus. & Prof. Code § 17200) – Class 1 Claim)**

3.      Plaintiff's cause of action for unlawful, unfair, fraudulent business acts (violation of California Business and Professions Code section 17200) – Class 1 Claim --  is subject to a general demurrer because it does not state facts sufficient to constitute a cause of action against Defendant. Cal. Civ. Proc. Code § 430.10(e).

**FOURTH AND FIFTH CAUSES OF ACTION**

4.      The Fourth and Fifth Causes of Action are not alleged against Capital One.

**SIXTH CAUSE OF ACTION**

**(Violation of the Consumer Legal Remedies Act – Class 3 Claim)**

5.      Plaintiff's cause of action for violation of the Consumer Legal Remedies Act – Class 1 Claim is subject to a general demurrer because it does not state facts sufficient to constitute a cause of action against Defendant.  Cal. Civ. Proc. Code § 430.10(e).

1

## SEVENTH CAUSE OF ACTION

### (Violation of the Automobile Sales Finance Act – Class 3 Claim)

6.      Plaintiff's cause of action for violation of the Automobile Sales Finance Act – Individual and Class 1 Claim – is subject to a general demurrer because it does not state facts sufficient to constitute a cause of action against Defendant.  Cal. Civ. Proc. Code § 430.10(e).

## EIGHTH CAUSE OF ACTION

### (Unlawful, Unfair, Fraudulent Business Acts
### & Practices (Cal. Bus. & Prof. Code § 17200) – Class 3 Claim)

7.      Plaintiff's cause of action for unlawful, unfair, fraudulent business acts (violation of California Business and Professions Code section 17200) – Class 3 Claim -- is subject to a general demurrer because it does not state facts sufficient to constitute a cause of action against Defendant. Cal. Civ. Proc. Code § 430.10(e).

DATED:  March 28, 2012                    DOLL AMIR & ELEY LLP

By: _____
     HUNTER R. ELEY
     HEMMY SO
     Attorneys for Defendant,
     CAPITAL ONE AUTO FINANCE,
     a division of CAPITAL ONE, N.A.

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS ......................................................... 2

      A.   Jose Mondragon Alleges That He Was Misled By Statements Made By Ron
           Baker About Vehicle Price And Condition. ....................................................... 2

      B.   Plaintiff Alleges That Capital One's Liability Arises Out of The Assignment
           of The RISC to Capital One After The Alleged Misrepresentations Were
           Made. .................................................................................................................... 3

      C.   Plaintiff Alleges One Class Based On The Ron Baker Transaction And
           Another Class That Seeks To Include Vehicle Sales Transacted With Every
           Dealership, New or Used, in the Entire State of California. ................................ 4

III.  LEGAL STANDARD ..................................................................................................... 4

IV.   ARGUMENT ................................................................................................................... 5

      A.   Plaintiff's First, Second And Third Causes of Action Fail As A Matter Of
           Law. ...................................................................................................................... 5

           1.   ASFA's One-Year Statute Of Limitations Has Expired ........................... 5

           2.   Defendants Substantially Complied With ASFA. ..................................... 7

      B.   The Sixth, Seventh And Eighth Causes of Action Fail As A Matter Of Law ....... 9

           1.   Individual Questions Predominate Common Questions Of Law And
                Fact. .......................................................................................................... 9

           2.   The Class Claims Should Be Dismissed Because No Community Of
                Interest Exists With Respect To Damages. ............................................. 12

V.    CONCLUSION ............................................................................................................. 15

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2                                                                                                        Page

## CASES

3  *April Enterprises, Inc. v. KTTV*
      (1983) 147 Cal.App.3d 805, 832 ................................................................. 6
4

5  *Bozaich v. State of California*
      (1973) 32 Cal.App.3d 688 ............................................................... 12, 13

6  *Bridgeford v. Pacific Health Corp.*
      (2012) 202 Cal. App. 4th 1034, 1040 ......................................................... 5
7

8  *Brown v. Regents of Univ. of Calif.*
      (1984) 151 Cal.App.3d 982, 988 ........................................................... 5, 14

9  *Clausing v. San Francisco Unified School Dist.*
      (1990) 221 Cal. App. 1224, 1234 .......................................... 9, 10, 11, 14
10

11 *Fox v. Ethicon Endo-Surgery, Inc.*
      (2005) 35 Cal. 4th 797, 808 ...................................................................... 5

12 *General Motors Acceptance Corp. v. Kyle*
      (1960) 54 Cal.2d 101, 111 ...................................................................... 13
13

14 *Gutierrez v. California Commerce Club, Inc.*
      (2010) 187 Cal.App.4th 969, 978 ........................................................... 10

15 *Kennedy v. Baxter Healthcare Corp.*
      (1996) 43 Cal.App.4th 799, 808 ........................................ 9, 10, 11, 12, 14
16

17 *Linear Tech. Corp. v. Applied Materials, Inc.,*
      152 Cal. App. 4th 115, (2007) .................................................................. 4

18 *Maystruck v. Infinity Ins. Co.,*
      175 Cal. App. 4th 881, (2009) .................................................................. 5
19

20 *Myers v. Trendwest Resorts, Inc.*
      (2009) 178 Cal.App.4th 735, 746 ............................................................. 7

21 *Nelson v. Pearson Ford Co.*
      (2010) 186 Cal.App.4th 983, 1007 .................................................. 5, 8, 13
22

23 *Norgart v. Upjohn Co.*
      (1999) 21 Cal.4th 383, 397 ...................................................................... 6

24 *Osborne v. Subaru of America, Inc.*
      (1988) 198 Cal.App.3d 646, 657-58 ....................................................... 13
25

26 *Richmond v. Dart Industries, Inc.*
      (1981) 29 Cal.3d 462, 471 ........................................................................ 9

27 *Silva v. Block*
      (1996) 49 Cal.App.4th 345, 350 .......................................................... 5, 10
28

DOLL AMIR & ELEY LLP

ii

*Stasher v. Harger-Haldeman*
    (1962) 58 Cal.2d 23 ........................................................................................... 7, 8

Thompson v. 10,000 RV Sales, Inc.
    (2005) 130 Cal.App.4th 950, 966 ................................................................... 8

*Unruh-Haxton v. Regents of Univ. of Calif.*
    (2008) 162 Cal.App.4th  343, 358 ................................................................. 6

*Zelig v. County of Los Angeles*
    (2002) 27 Cal.4th 1112, 1126 ........................................................................ 4

## STATUTES

Business and Professions Code section 17200 ................................................. 1

Cal. Civ. Code, § 2981 et seq .............................................................................. 8

Cal. Code Civ. Proc. § 340(d) ............................................................................ 5

Code of Civ. Proc. § 430.10(e) ........................................................................... 4

## OTHER AUTHORITIES

Automobile Sales Finance Act ("ASFA") ...................................... 1, 2, 5, 6, 7, 8, 9, 11, 12

Consumer Legal Remedies Act ("CLRA") ......................................................... 1

DOLL AMIR & ELEY LLP

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1    **MEMORANDUM OF POINTS & AUTHORITIES**

2    I.    **PRELIMINARY STATEMENT**

3         Plaintiff Jose Mondragon's Second Amended Complaint ("SAC") attempts to leverage one

4    automobile dealership's alleged statutory violation to launch a fishing expedition into every new and

5    used dealership transaction Capital One has financed in the State of California over the last four

6    years.  Not surprisingly, Plaintiff's Second Amended Complaint ("SAC") is devoid of factual

7    averments sufficient to identify an ascertainable class with common questions of law and fact.

8    Rather, Plaintiff's story is of a remarkably singular and isolated occurrence.  Indeed, the SAC alleges

9    nothing more than *one* transaction between *one* consumer and *one* dealership for the purchase of *a*

10   used vehicle.  Nevertheless, Plaintiff pins his hopes on a hyper-technical reading of a consumer

11   protection statute and the theoretical possibility that other unknown dealerships out there might have

12   done something similar, the details of which are, of course, unknown.  Plaintiff's attempt to turn this

13   individual dispute into a class action is patently impermissible.

14        At the core of this individual action, Plaintiff Mondragon seeks redress for harm he suffered

15   when he entered into a retail installment sales contract ("RISC") to purchase a vehicle from

16   Defendant Ron Baker Chevrolet ("Ron Baker").  As alleged, the RISC improperly included fees and

17   costs for service packages and warranties without his knowledge or consent.  Plaintiff also alleges

18   that Ron Baker failed to itemize certain DMV fees on the RISC by using the abbreviation "Incl." on

19   a particular line on the RISC dedicated to registration/transfer/titling fees.  Against this backdrop,

20   Plaintiff alleges that Ron Baker violated the Automobile Sales Finance Act ("ASFA"), the Consumer

21   Legal Remedies Act ("CLRA") and Business and Professions Code section 17200 ("17200").

22   Plaintiff seeks to hold Capital One liable for Ron Baker's misconduct on the basis that the dealership

23   assigned the RISC to Capital One after the transaction.  As part of that assignment, Plaintiff avers,

24   Capital One is subject to Plaintiff's claims and defenses.

25        In the first, second and third causes of action, Plaintiff alleges on behalf of Class 1 violations

26   of the CLRA, ASFA and Section 17200, respectively.  Each of these causes of action fails as a

27   matter of law for two reasons.  First, the alleged ASFA violation is time-barred.  Indeed, Plaintiff

28   executed his RISC in May 2010 – more than one year before he filed this lawsuit in December 2011.

DOLL AMIR & ELEY LLP

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1    Second, even if the claim survived, Defendants substantially complied with ASFA by disclosing the

2    total amounts payable by Plaintiff on his contract.  Under this accepted standard of analysis, Capital

3    One cannot be found liable for a technical violation that turns on the mere "mode of expression"

4    used to disclose the total amount of DMV fees to be paid.

5        Another proposed class (Class 3), however, reaches into the dark to find liability under the

6    sixth, seventh and eighth causes of action.  This class action cannot be pursued for lack of a

7    community of interest among the proposed class members.  Individual factual and legal questions

8    predominate.  Who failed to itemize DMV fees on RISCs?  How did the wrongdoer fail to itemize

9    the fees?  Does that particular act, such as using the "incl." notation or some other abbreviation,

10   amount to a substantive violation of ASFA?  If a class member is entitled to rescission, how will the

11   individual prove damages for the unique vehicle purchased under individualized terms?  What has

12   the buyer done with the vehicle that must be factored into calculating the offset to which the seller is

13   entitled?  The goods at issue here are not identical fungible goods.  They consist of new and used

14   vehicles of different makes and models consumed by different mileages. The RISCs do not contain

15   identical, standard terms but instead, differing cash prices, down payments, trade-in values, annual

16   percentage rates, loan terms, and indeed, even DMV fees depending on the vehicle's condition.

17       When individual legal and factual questions predominate, a class action does not achieve the

18   purpose for which it was designed.  Efficiency and fairness slip away as the court is forced to

19   adjudicate tens of hundreds of individual actions superficially wrapped up in a purported class

20   action.  Because that is the case here, Capital One respectfully requests that its Demurrer to the

21   Second Amended Complaint be sustained without leave to amend, and Plaintiff's First, Second,

22   Third, Sixth, Seventh, and Eighth Causes of Action be dismissed.

23   **II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**

24       **A.    Jose Mondragon Alleges That He Was Misled By Statements Made By Ron**

25           **Baker About Vehicle Price And Condition.**

26       Plaintiff's individual story is alleged as follows: Plaintiff entered into two retail installment

27   sales contracts ("RISCs") for the purchase of a used 2008 Chevrolet Silverado from Defendant Ron

28   Baker Chevrolet.  (SAC, ¶¶ 40, 44, 52.) The first RISC dated April 28, 2010, includes the following

DOLL AMIR & ELEY LLP

2

1   terms that are disputed by Plaintiff: (1) cash price of $23,995; (2) down payment of $4,500; (3)

2   15.99% APR; (4) $29 optional DMV fee; (5) $2,000 service contract with Western General; (6)

3   $750 GAP insurance; (7) $427 license fees. (*Id.*, ¶¶ 45-50.)

4       Plaintiff executed a second RISC on May 3, 2010, upon Ron Baker's request. (SAC, ¶ 52.)

5   RISC #2 (as it is identified in the SAC) contains the same terms as the first RISC, except for the

6   following: (1) cash price of $23,495; (2) 16.85% APR; (3) $1,500 service contract with Western

7   General. (*Id.*, ¶52.) By entering into RISC #2, Plaintiff's monthly payment decreased from $554.35

8   to $543.42. (*Id.*, ¶52.)

9       Plaintiff now alleges that Ron Baker sold the vehicle above the advertised price of $17,000.

10  (*Id.*, ¶¶ 40, 153.) He further alleges that he did not agree to pay for the DMV fee, service contract or

11  GAP insurance. (*Id.*, ¶¶ 46-48.) He alleges that the DMV fees were excessive because he needed

12  only to pay a $15 transfer fee applicable to used vehicles. Plaintiff also alleges that Ron Baker

13  should not have charged him for license and registration fees, which Plaintiff paid on June 30, 2010

14  after receiving a bill from the DMV. (*Id.*, ¶ 56.) Plaintiff alleges that contrary to the face of the

15  RISC, he did not provide a $4,500 down payment on April 28, 2010. Instead, he paid $1,800 on

16  April 28, 2010 and the remaining balance of $2,700 on June 1, 2010, as directed by Ron Baker when

17  Plaintiff advised he could not pay the entire down payment at once. (*Id.*, ¶¶ 50, 55.)

18      **B.  Plaintiff Alleges That Capital One's Liability Arises Out of The Assignment of The**

19          **RISC to Capital One After The Alleged Misrepresentations Were Made.**

20      As alleged, none of the purported misrepresentations was made by Capital One. (*See*

21  *generally*, SAC.) Rather, Plaintiff alleges that Ron Baker assigned RISC #2 to Capital One at "some

22  point after May 3, 2010." (SAC, ¶ 59.) As alleged, RISC #2 includes language that "makes Capital

23  One liable for all claims and defenses that could be raised against Ron Baker, with respect to the sale

24  of the Vehicle." (*Id.*, ¶ 61.)

25

26  ///

27  ///

28  ///

DOLL AMIR & ELEY LLP

3

C.     **Plaintiff Alleges One Class Based On The Ron Baker Transaction And Another Class That Seeks To Include Vehicle Sales Transacted With Every Dealership, New or Used, in the Entire State of California.**

The lawsuit proposes three classes of individuals, two of whom are suing Capital One.  The two classes suing Capital One are the following:

> (1) **CLASS 1**: "All persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from Defendant Ron Baker for personal use to be registered in the State of California, and (2) signed a RISC that failed to separately disclose . . . amounts paid for license fees and/or the amounts paid for registration, transfer and/or titling fees" — with a proposed subclass of such individuals whose RISCs were assigned to Capital One; and
>
> (2) **CLASS 3**: "All persons who, in the four years prior to the filing of this complaint . . . signed a RISC that failed to separately disclose . . . the amounts paid for registration/transfer/titling fees, and (3) whose RISC was assigned to Capital One."

(SAC, ¶ 18.)  Thus, Plaintiff limits Class 1 to consumers who signed Ron Baker's purportedly defective contracts that were assigned to Capital One during the past four years.  In stark contrast, Class 3 extrapolates from Class 1 in an attempt to encompass *every* installment sales contract (containing the violation) assigned by *every* used car dealership and *every* new car dealership in the State of California to Capital One during the past four years.

III.    **LEGAL STANDARD**

A demurrer tests the legal sufficiency of the factual allegations in a complaint.  (*See Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  A complaint is subject to demurrer when it fails to state a cause of action.  (Code of Civ. Proc. § 430.10(e).)  If the complainant fails to plead any essential element of a particular cause of action, the demurrer should be sustained.  (*Linear Tech. Corp. v. Applied Materials, Inc.* (2007) 152 Cal. App. 4th 115, 122.)  In reviewing the sufficiency of a complaint against a demurrer, courts "treat the demurrer as admitting all material

4

1  facts properly pleaded." (*Delgado v. Interinsurance Change of the Auto. Club of S. Cal.* (2009) 47

2  Cal.4th 302, 307-308.)  The Court also considers "matters of which judicial notice has been taken."

3  (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal. App. 4th 1034, 1040.)  However, courts do *not*

4  assume the truth of conclusions of fact or law. (*Delgado, supra,* 47 Cal.4th at 307-08.)  Conclusory

5  allegations that do not have factual support are insufficient to support a cause of action, and are

6  "fatal to the complaint." (*See Maystruck v. Infinity Ins. Co.* (2009) 175 Cal. App. 4th 881, 888-89.)

7          Where the issue resolved on demurrer is whether an action should proceed as a class action,

8  the trial court must determine whether there is a reasonable possibility plaintiffs can plead a prima

9  facie community of interest among class members ...." (*Silva v. Block* (1996) 49 Cal.App.4th 345,

10  350, *citing Brown v. Regents of Univ. of Calif.* (1984) 151 Cal.App.3d 982, 988.) "'The ultimate

11  question in every case of this type is whether, given an ascertainable class, the issues which may be

12  jointly tried, when compared with those requiring separate adjudication, are so numerous or

13  substantial that the maintenance of a class action would be advantageous to the judicial process and

14  to the litigants.' [Citations.]  If the ability of each member of the class to recover clearly depends on

15  a separate set of facts applicable only to him, then all of the policy considerations which justify class

16  actions equally compel the dismissal of such inappropriate actions at the pleading stage.'" (*Id.,*

17  *quoting Brown, supra,* 151 Cal.App.3d at 982, 989.)

18  **IV.     ARGUMENT**

19          **A.     Plaintiff's First, Second And Third Causes of Action Fail As A Matter Of Law.**

20                  1.     ASFA's One-Year Statute Of Limitations Has Expired.

21          Plaintiff's first, second and third causes of action, which are premised on the violation of

22  ASFA, are barred by the statute of limitations.  The statute of limitations for ASFA violations is one

23  year. (Cal. Code Civ. Proc. § 340(d); *see Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983,

24  1007).  However, Plaintiff filed this lawsuit on December 30, 2011, more than one year after the

25  ASFA violations allege in this case.  The acts giving rise to the ASFA violations occurred in April

26  and May of 2010.  Moreover, since Plaintiff knew or, through the exercise of reasonable diligence,

27  should have known of the ASFA violations no later than June of 2010, Plaintiff's claim is barred as a

28  matter of law. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal. 4th 797, 808 [holding that to

DOLL AMIR & ELEY LLP

5

1   invoke discovery rule and toll statutory period, plaintiff must "specifically plead facts to show (1)

2   the time and manner of discovery and (2) the inability to have made earlier discovery despite

3   reasonable diligence" (citations omitted)].)

4         Here, Plaintiff's claims fail because each of the alleged violations underlying Plaintiff's first,

5   second and third causes of action took place in April or May of 2010.  Plaintiff's ASFA claim is

6   premised on the allegation that Ron Baker indicated on line 2.A. of the RISCs that the "License

7   Fees" were in the amount of $427.00.  Below that, on line 2.B., Ron Baker included the notation of

8   "Incl." for "Registration/Transfer/Titling Fees."  Plaintiff alleges this gives rise to three specific

9   violations.  First, Plaintiff alleges that Ron Baker improperly included the notation of "Incl." on line

10   2.B. of the RISCs.  (SAC, ¶ 86.)  According to Plaintiff, this constitutes a violation of ASFA because

11   Ron Baker failed to disclose "the actual amount paid for [registration/transfer/titling] fees."  (*Id.*)

12   Plaintiff also alleges that Ron Baker "inflated the amount due for license fees. . . ."  (*Id.*, ¶ 87.)

13   Finally, Plaintiff alleges that this violates the ASFA's "Single Document Rule."  (*Id.*, ¶ 88.)  Since

14   Plaintiff executed RISC #1 on April 28, 2010 (*id.*, ¶ 40) and RISC #2 on May 3, 2010 (*id.*, ¶ 51),

15   each of the alleged violations occurred more than a year before the December 2011 filing of the

16   complaint.

17         Despite efforts to plead around this problem, Plaintiff's claims will not be saved by

18   application of the discovery rule.  (*See April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805,

19   832 [holding that in order rebut presumption that plaintiff has knowledge of injury on date of injury,

20   plaintiff must plead facts sufficient to convince trial judge that delayed discovery was justified].)

21   This is because Plaintiff fails to meet the discovery rule requirements.  Plaintiff alleges that he "was

22   not aware of Ron Baker's and Capital One's deceptive conduct until contacting attorneys in 2011."

23   (*Id.*, ¶ 75.)  However, a plaintiff's lack of awareness of governing law is not sufficient to trigger the

24   discovery rule.  (*See Unruh-Haxton v. Regents of Univ. of Calif.* (2008) 162 Cal.App.4th  343, 358

25   [noting that "the plaintiff discovers the cause of action when he at least suspects a factual basis, as

26   opposed to a legal theory, for its elements" and discovery rule applies when facts about the "wrong"

27   are uncovered], quoting *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.)

28

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

DOLL AMIR & ELEY LLP

1    Nor can Plaintiff save his claim by arguing that he was unable to discover the violation at the

2  time the agreement was executed. (*See Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th

3  735, 746 [stating that judicial admissions may be made in pleading].)  First, Plaintiff concedes in his

4  own words that the purported ASFA violation for failure to itemize the DMV fees "appears on the

5  face of the RISCs." (*Id.*, ¶ 89.)

6  Second, Plaintiff alleges that he "received a bill from the DMV, and paid the 2010 license and

7  registration fees on June 30, 2010, within a few months of purchasing the Vehicle from Ron Baker."

8  (SAC, ¶ 56.)  Thus, it is beyond dispute that by June of 2010, Plaintiff had sufficient information to

9  discover that Ron Baker had overstated the amount of the fees.  Accordingly, Plaintiff cannot plead

10  any facts showing delayed discovery sufficient to invoke the rule, and this claim must be dismissed.

11                      2.    Defendants Substantially Complied With ASFA.

12    Plaintiff fails to allege that Defendants violated ASFA because, as a matter of law,

13  Defendants "substantially complied" with the statute. In determining whether a seller has made the

14  proper disclosures under AFSA, a court must determine whether the seller substantially complied

15  with the statute such that the buyer was adequately protected.  In *Stasher v. Harger-Haldeman*

16  (1962) 58 Cal.2d 23, the California Supreme Court defined substantial compliance as

17  "*actual* compliance in respect to the substance essential to every reasonable objective of the statute.

18  But when there is such actual compliance as to all matters of substance then mere technical

19  imperfections of form or variations in mode of expression by the seller, or such minima as obvious

20  typographical errors, should not be given the stature of noncompliance and thereby transformed into

21  a windfall for an unscrupulous and designing buyer." (*Stasher, supra*, 58 Cal.2d at 29 [italics in

22  original].)  Substantial compliance remains the standard for judging alleged ASFA violations

23  because of the risk the statute will be used "in a manner which will give a windfall to the conditional

24  purchaser," ultimately enriching the buyer rather than protecting him or her as a result of purely

25  formal violations of the statute. (*Id.* at 29-30.)

26    Here, the SAC fails to allege facts to support an ASFA violation because (1) Defendants'

27  disclosures served the objectives of the statute; (2) Plaintiff's allegations amount to unactionable

28  "technical imperfections"; and (3) case law does not support Plaintiff's claim.  Defendants

DOLL AMIR & ELEY LLP

7

DOLL AMIR & ELEY LLP

1   substantially complied with ASFA because the disclosures at issue satisfy the statute's objectives.
2   ASFA regulates the sale and financing of automobiles. (Cal. Civ. Code, § 2981 et seq.) "The
3   California Legislature enacted the ASFA to protect motor vehicle purchasers from abusive selling
4   practices and excessive charges by requiring full disclosure of all items of cost. [Citation.] Under the
5   ASFA, every conditional sale contract must disclose to the buyer all details concerning the sale,
6   financing and complete costs of purchasing the vehicle." (*Thompson v. 10,000 RV Sales, Inc.* (2005)
7   130 Cal.App.4th 950, 966.) Defendants here substantially complied with ASFA because (1) the
8   RISC unambiguously shows the amount charged ($427) as part of the purchase price to be paid by
9   Plaintiff, and (2) the disclosure of the amount charged appeared on the face of the RISC. (*See* SAC,
10  Exs. 1, 2.) A review of the subtotals and grand total lines on both RISCs show that the total purchase
11  price includes the $427 listed as DMV fees. (*See id.*)  There can be no confusion as to whether Ron
12  Baker or someone else would pay those fees – the buyer was clearly responsible for payment.
13          Plaintiff's allegations focus on a "technical imperfection of form." (*See Stasher, supra*, 58
14  Cal.2d at 29.) Indeed, the "Incl." notation as a mode of expression falls short of misrepresentations
15  seeking to charge illegal fees or generate additional taxes and finance charges. (*Contrast Nelson v.*
16  *Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1002, 1006.) DMV fees are not per se illegal, and as
17  noted above, the RISCs at issue here expressly stated that Plaintiff was responsible for $427 to be
18  paid to public officials. (*See* SAC, Exs. 1, 2.) Nor does the SAC allege that Ron Baker added DMV
19  fees into the purchase price of the vehicle, thus triggering interest or taxes. (*See generally*, SAC.)
20  The DMV fees stand alone, meaning that the parsing of that total amount into separate license,
21  registration, transfer and titling fees does not reveal whether they are illegal or excessive. Plaintiff
22  could *only* know whether these fees are illegal or excessive if he conducted his own investigation
23  into what the DMV charged for those particular fees for the year, make and model of his vehicle.
24          Plaintiff has no case law to support his theory that a technical violation of ASFA should
25  upend an otherwise enforceable contract. That is because the substantial compliance standard still
26  applies to analyzing ASFA claims. (*See Nelson, supra*, 186 Cal.App.4th at 1002 [assuming concept
27  of substantial compliance continued to apply to alleged ASFA violations]; *see also Stasher*, 58
28  Cal.2d at 29 [affirming judgment for defendant because violations amounted to technical violations

1   that would result in windfall to plaintiff].)  Because Ron Baker substantially complied with ASFA by

2   disclosing the total amount to be paid by Plaintiff to the DMV, the dealership substantially complied

3   with ASFA.  Plaintiff's claims against Capital One for rescission based on violation of the ASFA

4   should be dismissed, without leave to amend.

5   **B.  The Sixth, Seventh And Eighth Causes of Action Fail As A Matter Of Law.**

6           Each of the causes of action related to Plaintiff's "Class 3" allegations must be dismissed.

7   Even the most generous reading of Plaintiff's SAC leads to the conclusion that there is no factual

8   underpinning for this impermissibly broad and unrestricted class.  On the contrary, Plaintiff's

9   attempt to represent the purported "common interests" of "Class 3" amounts to pure conjecture.  To

10  be clear, Plaintiff has identified *one* transaction between *one* individual and *one* dealership that was

11  assigned to Capital One.  From this isolated incident, Plaintiff seeks to launch an investigation into

12  each and every new and used dealership for which Capital One has financed a vehicle purchase in

13  the last four years.  Such unwieldy class definitions are untenable, and do not serve the interests that

14  class litigation seeks to promote.  Rather, as set forth below, the sixth, seventh and eighth causes of

15  action are subject to dismissal on demurrer for the following two reasons.

16          1.   Individual Questions Predominate Common Questions Of Law And Fact.

17          On demurrer, the test as to the sufficiency of a class action allegation is whether there is a

18  "reasonable possibility" that the plaintiff in a class action can establish a community of interest

19  among potential claimants.  (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal. App.

20  1224, 1234 ["courts have routinely decided the issue of class certification on demurrer, sustaining

21  demurrers without leave to amend where it is clear that there is no reasonable possibility that the

22  plaintiffs could establish a community of interest among the potential class members"].)  The

23  "'community of interest requirement embodies three factors: (1) predominate common questions of

24  law or fact; (2) class representative with claims or defenses typical of the class; and (3) class

25  representatives who can adequately represent the class.'"  (*Kennedy v. Baxter Healthcare Corp.*

26  (1996) 43 Cal.App.4th 799, 808, *citing Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462,

27  471.)  The community of interest requirement is not satisfied if "every member of the alleged class

28  would be required to litigate numerous and substantial questions determining the member's

DOLL AMIR & ELEY LLP

9

1   individual right to recover following the class judgment." (*Silva v. Block* (1996) 49 Cal.App.4th

2   345, 350 [citations omitted].)  In other words, a class action is properly alleged when a complaint

3   alleges a single set of facts applicable to all members of the proposed class.  (*See Gutierrez v.*

4   *California Commerce Club, Inc.* (2010) 187 Cal.App.4th 969, 978.)

5           The SAC lacks the necessary "single set of facts" to support Class 3's claims.  Plaintiff

6   alleges that Class 3 members share commonality because Capital One accepted assignment of their

7   RISCs, which "failed to separately disclose the registration/transfer/titling fees on the RISC." (SAC,

8   ¶ 38.)  But the heart of this lawsuit beats not with the assignment of faulty RISCs, but instead, the

9   creation and execution of those RISCs – conduct originating at the car dealership.  The RISC notice

10  that imputes liability to a contract holder supports this position.  The notice states the holder "is

11  subject to all claims and defenses which the debtor could assert *against the seller of good or*

12  *services*," meaning that a holder's liability arises out of the seller's conduct.  (SAC, ¶ 60 [emphasis

13  added].)  Plaintiff's Class 3 claims, however, neither identify the seller nor describe the conduct.

14  Aside from Ron Baker, Plaintiff has identified no other dealership that failed to separately disclose

15  DMV fees on RISCs.  Moreover, Plaintiff has failed to state how these unidentified dealerships

16  "[failed] to separately itemize and disclose registration/transfer/titling fees paid to the DMV" – if

17  they followed Ron Baker's alleged practice of using the "incl." notation on Line 2.B. of the RISC or

18  some other method.  (*Id.*, ¶ 127.)  The result is that individual claimants present unique factual and

19  legal issues from one another – precisely the barrier to a successful class action.  (*See Kennedy*,

20  *supra*, 43 Cal.App.4th at 739.)

21          *Clausing v. San Francisco Unified School District* (1990) 221 Cal.App.3d 1224 and *Kennedy*

22  *v. Baxter Healthcare Corp.* (1996) 43 Cal. App. 4th 799 provide a sharp lens through which to view

23  the Class 3 allegations.  In *Clausing*, the plaintiff alleged that the school district authorized or failed

24  to prevent the physical, mental, emotional and psychological abuse inflicted by teachers and other

25  employees on the plaintiff, a 20-year old mentally disabled student.  (*Clausing, supra*, 221

26  Cal.App.3d at 1229.)  Similarly, Plaintiff Mondragon alleges that Capital One authorized, through

27  the acceptance of RISC assignments, unenforceable contracts created and executed by car

28  dealerships who failed to itemize DMV fees.  (SAC, ¶ 38.)  But Plaintiff's Class 3 allegations suffer

DOLL AMIR & ELEY LLP

10

1   the same defects as the class allegations in *Clausing*, which prompted the court to sustain the

2   demurrer based on the prominence of individual issues over common factual questions:

3   > In order to recover, each individual claimant would have to prove: (1) the fact
4   > that he or she was a victim of abuse; (2) the identity of the abuser; (3) the
5   > capacity in which the alleged abuser acted; (4) the fact that the alleged
    > perpetrator was acting within the scope of his or her employment by the
    > District; and (5) the existence and extent of damages. ... Even if it could be
6   > determined that the policies and practices of the District encouraged or
    > permitted physical and mental abuse of students in the asserted class, this
7   > determination could not resolve the lawsuit, which would still require a full
    > trial on each and every alleged incident of abuse with respect to fault,
8   > causation, damages, and affirmative defenses.

9   (*Clausing*, *supra*, 221 Cal.App.3d at 1233-34.)

10      The same determinations are required here, meaning individualized questions dominate.  For

11  Class 3 to prevail, each individual claimant would have to prove: (1) he or she signed an RISC

12  assigned to Capital One; (2) the identity of the dealership who failed to itemize the DMV fees; (3)

13  the way in which the dealership failed to itemize fees (*e.g.*, if a dealership stated a single dollar

14  figure on Line 2.B rather than three separate dollar figures, used the notation "Tot." or "Subtot." on

15  Line 2.B. or rounded to the whole dollar, etc.) did not satisfy the itemization requirement of ASFA;

16  (4) the fact that each dealership overstated fees, to the extent this is alleged by Class 3; and (5) the

17  extent of damages.  (*See id.*)

18      The same problems infused the complaint in *Kennedy*.  There, the court sustained the

19  demurrer without leave to amend, noting that "Individual questions clearly predominate in

20  determining liability, causation, damages and defenses. For example, plaintiffs allege defendants

21  manufactured, distributed, and sold latex gloves containing a protein that caused injury to plaintiffs.

22  The complaint indicates these gloves were manufactured in a variety of locations throughout the

23  United States, and in Sri Lanka, Malaysia, and Indonesia. Before liability can be imposed for failure

24  to warn, plaintiffs must demonstrate that each defendant knew or should have known of the danger

25  posed by this particular protein as used in each brand of latex glove. [citations]. The question of

26  liability for each defendant thus turns on separate factual issues." (*Kennedy*, *supra*, 43 Cal.App.4th

27  at 810.)

28

DOLL AMIR & ELEY LLP

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1    Like the latex gloves in *Kennedy* manufactured in several separate locations, the RISCs here

2    were allegedly created and executed at separate car dealerships in different cities and towns

3    throughout California. (*See* SAC, ¶ 18(c).)  Thus, before class liability can be imposed for failure to

4    separately itemize DMV fees, Plaintiff must demonstrate each dealership had a pattern and practice

5    of failing to itemize these fees. (*See Kennedy*, *supra*, 43 Cal.App.4th at 810.)  In addition, Plaintiff

6    must demonstrate that the specific practice used by these unidentified dealerships failed to meet the

7    itemization requirement – giving rise to individual factual and legal questions.  To use a previous

8    example, if a dealership stated a single dollar figure on Line 2.B rather than three separate dollar

9    figures, would that "fail to separately itemize and disclose registration/transfer/titling fees paid to the

10   DMV"?  (*See* SAC, ¶ 127.)  If a dealership used the notation "Tot." or "Subtot." on Line 2.B., does

11   that notation violate ASFA?  These questions make clear that the question of Capital One's liability

12   for each RISC assigned to it turns on separate factual issues.

13        The SAC highlights this problem by asserting a remarkably vague allegation regarding the

14   typicality of claims brought by Class 3: "The RISCs entered into by Plaintiff and the Class 3

15   Members were all assigned to Capital One and failed to itemize on their face the

16   registration/transfer/titling fees due in the transaction."  (SAC, ¶ 26.)  This stands in contrast to the

17   allegations posed against a specific dealership, Ron Baker, complaining about a specific practice, the

18   "Incl." notation used on Line 2.B. on the RISC.  (*Id.*, ¶ 24.)  A lack of commonality must result

19   when the alleged wrongful conduct is described in broad strokes, may be perpetrated in varying

20   ways and ascribed to an array of different entities.

21        2.   The Class Claims Should Be Dismissed Because No Community Of Interest Exists

22             With Respect To Damages.

23        Individualized questions of damages infect the proposed classes and obviate the community

24   of interest necessary to sustain a class action lawsuit. *Bozaich v. State of California* (1973) 32

25   Cal.App.3d 688, captures the inherent difficulty of proceeding with a class action lawsuit where the

26   right of each individual to recover money damages is based necessarily on facts applicable only to

27   that individual.  The court realized that damages relied on a bevy of questions such as "what was the

28   nature of the claimant's ownership in a particular parcel taken; what relocation and moving expenses

DOLL AMIR & ELEY LLP

12

1    were incurred by the claimants; were the moving and relocation expenses incurred as a direct and

2    proximate consequence of the taking; were any previous payments made to or advantageous

3    settlements bestowed upon an individual who is not included as a member of the class; was the same

4    legal issue litigated in a separate eminent domain proceeding between the state and a member of the

5    class; could it have been litigated; what affirmative defenses does the state have against each

6    individual claimant?" (*Bozaich*, *supra*, 32 Cal.App.3d at 695.)

7          This class action lawsuit raises a similar set of questions that highlight the predominance of

8    individualized questions.  Many of those questions arise out of the fact that each individual claimant

9    purchased a unique vehicle from either Ron Baker or another unidentified dealership.  The vehicles

10   at issue could range from a 10-year-old used sedan with a salvage title and 200,000 miles on the

11   odometer, to a brand new, fully loaded sports utility vehicle accompanied with service warranties.

12   These factors impact the alleged "overstated fees" because whether a vehicle is new or used affects

13   the types of DMV fees assessed, as well as license fees to operate the vehicle in California.  (*See*

14   SAC, ¶ 56 [allegation that because Plaintiff's vehicle was used, a $15 transfer fee should have been

15   charged].)

16         Moreover, California law provides that when a vehicle RISC is rescinded, the seller is

17   entitled to an offset for the buyer's use of the vehicle, so long as the offset does not exceed what the

18   buyer is entitled to recover as restitution.  (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983,

19   1012-13; *see General Motors Acceptance Corp. v. Kyle* (1960) 54 Cal.2d 101, 111.)  Thus, for each

20   class member to prove damages, the court must consider individualized questions of how many

21   miles the buyer drove the vehicle, whether the buyer caused any damage to the vehicle such as

22   collision or engine damage, whether wear and tear was exacerbated by pre-existing issues

23   (particularly for used vehicles), and how much the class member paid on the contract, since that

24   limits the offset amount.  (*See Osborne v. Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 657-

25   58 [affirming denial of class certification where class sought damages to compensate for repair,

26   maintenance and service costs, replacement transportation costs, and diminution in value

27   proximately caused by design defect – forcing assessment of individualized damages].)

28

DOLL AMIR & ELEY LLP

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1     The individualized questions of damages that arise out of Plaintiff's Class 3 allegations may

2 be summarized as follows: (1) to the extent Plaintiff alleges that Class 3's RISCs overstated or

3 falsely stated the DMV fees, each RISC may have overstated such amounts by varying amounts

4 depending on which dealership prepared the RISC, whether the vehicle sold was new or used, and

5 whether the overstatement was part of a pattern or practice by a particular dealership to generate

6 wrongful profits or separate, individual errors; (2) because each individual transaction involved a

7 unique vehicle, rescission damages must be determined on an individual basis; (3) because rescission

8 of an RISC relating to a vehicle purchase may include an offset based on the individual's use of the

9 vehicle, rescission damages must be determined on an individual basis taking into consideration

10 factors such as mileage, frame or body damage, and wear and tear; (4) the amounts paid on each

11 RISC vary, depending on the amount financed, whether the consumer defaulted on their contract or

12 remained current, and the loan's term; (5) some consumers may not seek rescission in order to keep

13 possession of their vehicles.

14     The foregoing questions evoke the same issues that arose in *Kennedy*: "The area of damages

15 also presents more individual than common questions, particularly since the proposed class may

16 include those who suffered minor skin irritation as well as those who suffered life-threatening

17 allergic reactions. Individual issues will also arise on the subject of mitigation of damages."

18 (*Kennedy*, *supra*, 43 Cal.App.4th at 811.)

19     Given these individualized questions of law and fact, Class 3 cannot be ascertained.  As the

20 *Clausing* court held, "'If the ability of each member of the class to recover clearly depends on a

21 separate set of facts applicable to only him [or her], then all of the policy considerations which

22 justify class actions equally compel the dismissal of such inappropriate actions at the pleading

23 stage.'"  (*Clausing*, *supra*, 221 Cal.App.3d at 1233, *quoting Brown v. Regents of Univ. of Calif.*

24 (1984) 151 Cal.App.3d 982, 989.)  As such, the Class 3 claims – the Sixth, Seventh and Eighth

25 Causes of Action – should be dismissed without leave to amend.

26 ///

27 ///

28 ///

DOLL AMIR & ELEY LLP

1  V.  **CONCLUSION**

2       For the foregoing reasons, Defendant Capital One Auto Finance, Inc., a division of Capital

3  One, N.A., respectfully requests that its Demurrer to the Second Amended Complaint be sustained

4  without leave to amend.

5

6  DATED:  March 28, 2012                    DOLL AMIR & ELEY LLP

7

8                                            By: _____

9                                               HUNTER R. ELEY
                                                HEMMY SO
10                                          Attorneys for Defendant,
                                            CAPITAL ONE AUTO FINANCE,
11                                          a division of CAPITAL ONE. N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **1888 Century Park East, Suite 1850, Los Angeles, California 90067.**

On March 28, 2012, I served the foregoing document described as **DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1888 Century Park East, Suite 1850,. Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported.  Said fax transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT DELIVERY:** I caused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees.  The envelope or package was deposited with delivery fees thereon fully prepaid.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 28, 2012, at Los Angeles, California.

Diana Kang

DOLL AMIR & ELEY LLP

1

**SERVICE LIST**

2

3    Hallen D. Rosner, Esq.                    T: (858) 348-1005
     Christopher P. Barry, Esq.                F: (858) 348-1150
4    Angela J. Smith, Esq.                     *Attorneys for Plaintiff, Jose Mondragon*
     Rosner, Barry & Babbitt, LLP
5    10085 Carroll Canyon Road, Suite 100
     San Diego, CA 92131
6
     Steve Mikhov, Esq.                        T: (323) 936-2274
7    Romano Stancroff & Mikhov, PC             F: (323) 939-7973
     640 S. San Vicente, Suite 350             *Attorneys for Plaintiff, Jose Mondragon*
8    Los Angeles, CA 90048
9    Thomas R. Kelleher, Esq.                  T: (619) 232-8486
     Walsh McKean Furcolo LLP                  F: (619) 232-2691
10   625 Broadway, Suite 1402                  *Attorneys for Defendant, Ron Baker Chevrolet*
     San Diego, CA 92101
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

PROOF OF SERVICE

1

2

3

4

5

6

7

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9         **FOR THE COUNTY OF SAN DIEGO, CENTRAL COURTHOUSE**

10

11

| | |
|---|---|
| 12   JOSE MONDRAGON, individually and on behalf of all others similarly situated, | Case No. 37-2011-00103236-CU-CO-CTL |
| 13             Plaintiff, | *Assigned to Dept. C-61*<br>*The Hon. John S. Meyer* |
| 14   v. | **[PROPOSED] ORDER SUSTAINING** |
| 15   RON BAKER CHEVROLET, a California Corporation; CAPITAL ONE AUTO FINANCE, | **DEFENDANT CAPITAL ONE AUTO FINANCE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S** |
| 16   a business entity of unknown; and DOES 1 through 10, inclusive, | **SECOND AMENDED COMPLAINT** |
| 17          Defendants. | Date:       May 18, 2012 |
| 18 | Time:      10:30 a.m.<br>Location:   330 W. Broadway |
| 19 |                San Diego, CA 92101 |
| 20 | SAC Filed:     February 22, 2012<br>Trial Date:     TBA |

21

22

23

24

25

26

27

28

---

[PROPOSED] ORDER SUSTAINING DEFENDANT CAPITAL ONE AUTO FINANCE'S DEMURRER TO
PLAINTIFF'S SECOND AMENDED COMPLAINT

**TO EACH PARTY AND ITS COUNSEL OF RECORD:**

The Demurrer of Defendant Capital One Auto Finance, a division of Capital One, N.A. ("Capital One") came on for hearing before this Court, located at 330 W. Broadway, San Diego, CA 92101, before the Honorable John S. Meyer in Department C-61 on May 18, 2012 at 10:30 a.m. After consideration of the pleadings and evidence on file herein, and argument of counsel, and good cause appearing, Capital One's Demurrer is **SUSTAINED** without leave to amend as follows:

1.  Plaintiff Jose Mondragon's First Cause of Action for Violation of the Consumer Legal Remedies Act is hereby dismissed *with prejudice*;

2.  Plaintiff Jose Mondragon's Second Cause of Action for Violation of the Automobile Sales Finance Act – Individual and Class 1 Claim is hereby dismissed *with prejudice*;

3.  Plaintiff Jose Mondragon's Third Cause of Action for Unlawful, Unfair, Fraudulent Business Acts & Practices (Cal. Bus. & Prof. Code § 17200) – Class 1 Claim is hereby dismissed *with prejudice*;

4.  Plaintiff Jose Mondragon's Fourth and Fifth Causes of Action is hereby dismissed *with prejudice*;

5.  Plaintiff Jose Mondragon's Sixth Cause of Action for Violation of the Consumer Legal Remedies Act – Class 3 Claim is hereby dismissed *with prejudice*;

6.  Plaintiff Jose Mondragon's Seventh Cause of Action for Violation of the Automobile Sales Finance Act – Class 3 Claim is hereby dismissed *with prejudice*;

7.  Plaintiff Jose Mondragon's Eighth Cause of Action for Unlawful, Unfair, Fraudulent Business Acts & Practices (Cal. Bus. & Prof. Code § 17200) – Class 3 Claim is hereby dismissed *with prejudice*.

**IT IS SO ORDERED.**

Dated: _____                     _____

                                            Honorable John S. Meyer
                                            Judge of the Superior Court

DOLL AMIR & ELEY LLP

1

[PROPOSED] ORDER SUSTAINING DEFENDANT CAPITAL ONE AUTO FINANCE'S DEMURRER TO
PLAINTIFF'S SECOND AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **1888 Century Park East, Suite 1850, Los Angeles, California 90067.**

On March 28, 2012, I served the foregoing document described as **[PROPOSED] ORDER SUSTAINING   DEFENDANT   CAPITAL   ONE   AUTO   FINANCE'S   NOTICE   OF DEMURRER AND DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒   **BY REGULARMAIL:**I deposited such envelope in the mail at 1888 Century Park East, Suite 1850,. Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐   **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported.  Said fax transmission(s) were directed as indicated on the service list.

☐   **BY OVERNIGHT DELIVERY:**Icaused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees.  The envelope or package was deposited with delivery fees thereon fully prepaid.

☐   **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐   **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 28, 2012, at Los Angeles, California.

Diana Kang

DOLL AMIR & ELEY LLP

PROOF OF SERVICE

1

## SERVICE LIST

2

3   Hallen D. Rosner, Esq.                        T: (858) 348-1005
    Christopher P. Barry, Esq.                    F: (858) 348-1150
4   Angela J. Smith, Esq.                         *Attorneys for Plaintiff, Jose Mondragon*
    Rosner, Barry & Babbitt, LLP
5   10085 Carroll Canyon Road, Suite 100
    San Diego, CA 92131

6

7   Steve Mikhov, Esq.                            T: (323) 936-2274
    Romano Stancroff & Mikhov, PC                 F: (323) 939-7973
    640 S. San Vicente, Suite 350                 *Attorneys for Plaintiff, Jose Mondragon*
8   Los Angeles, CA 90048

9   Thomas R. Kelleher, Esq.                      T: (619) 232-8486
    Walsh McKean Furcolo LLP                      F: (619) 232-2691
10  625 Broadway, Suite 1402                      *Attorneys for Defendant, Ron Baker Chevrolet*
    San Diego, CA 92101

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

EXHIBIT 11

1   Thomas R. Kelleher (SBN 179449)
    WALSH MCKEAN FURCOLO LLP
2   625 Broadway, Suite 1402
    San Diego, CA 92101-5420
3   Telephone: (619) 232-8486
    Facsimile: (619) 232-2691
4

5   Attorneys for Defendant RON BAKER CHEVROLET, a California corporation

6

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                   FOR THE COUNTY OF SAN DIEGO - CENTRAL DIVISION

9   JOSE MONDRAGON, individually and on       CASE NO. 37-2011-00103236-CU-CO-CTL
    behalf of all others similarly situated,
10                                              **NOTICE OF DEMURRER TO THE
            Plaintiff,                          SECOND, FOURTH AND FIFTH CAUSES
11                                              OF ACTION IN PLAINTIFF'S SECOND
            vs.                                 AMENDED COMPLAINT; DEMURRER;
12                                              MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT THEREOF;
13  RON BAKER CHEVROLET, a California           REQUEST FOR JUDICIAL NOTICE;
    corporation; CAPITAL ONE AUTO              [PROPOSED] ORDER**
14  FINANCE, a business entity form unknown;
    and DOES 1 through 10, inclusive,          [Filed Concurrently With Motion To Strike]
15
            Defendants.                         JUDGE:  Hon. John S. Meyer
16                                              DEPT.:  C-61

17                                              DATE: May 18, 2012
                                                TIME:  10:30 a.m.
18                                              DEPT.:  C-61

19                                              COMPLAINT FILED: 12/30/11
                                                TRIAL DATE: TBD
20

21

22

23          **TO THE CLERK OF THE COURT, ALL PARTIES HEREIN AND TO THEIR**

24  **COUNSEL OF RECORD:**

25          **PLEASE TAKE NOTICE** that on May 18, 2012 at 10:30 a.m., or as soon thereafter as

26  the matter may be heard in Department C-61 of the above-entitled court, located at 330 W.

27  Broadway, San Diego, California, the Honorable John S. Meyer, presiding, Defendant RON

28  BAKER CHEVROLET ("RON BAKER") will appear before this Court to move for an order

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

                                          1

NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

1  granting a demurrer to the Second, Fourth and Fifth Causes of Action in Plaintiff JOSE

2  MONDRAGON'S Second Amended Complaint pursuant to *Code of Civil Procedure*

3  §§ 430.10(e) and 430.30.

4  The demurrer is based upon this notice, the demurrer, request for judicial notice, the

5  memorandum of points and authorities served and filed herewith, and the complete pleadings and

6  records on file herein and upon such other oral and documentary evidence and argument as may

7  be presented at the hearing.

8

9  DATED: March 28, 2012                      WALSH MCKEAN FURCOLO LLP

10

11                                           By: _____

12                                               Thomas R. Kelleher
                                                 Attorneys for Defendant RON BAKER
13                                               CHEVROLET

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WALSH MCKEAN FURCOLO LLP
825 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

2

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

**DEMURRER**

Defendant RON BAKER CHEVROLET ("RON BAKER") hereby demurs to the Second Cause of Action for Violation of Automobile Sales Finance Act ("ASFA") – Individual and Class 1 Claim, Fourth Cause of Action for Violation of Consumer Legal Remedies Act ("CLRA") - Class 2 Claim, and Fifth Cause of Action for Unlawful, Unfair, Fraudulent Business Acts and Practices – Class 2 Claim contained in the Second Amended Complaint ("SAC") of Plaintiff JOSE MONDRAGON ("MONDRAGON") pursuant to California *Code of Civil Procedure* §§ 430.10(e) and 430.30 because the specified causes of action in the SAC fail to state facts sufficient to constitute a cause of action against RON BAKER.  Specifically, RON BAKER demurs as follows:

1.  MONDRAGON'S Second Cause of Action for Violation of ASFA against RON BAKER fails to state facts sufficient to constitute a cause of action under *Code of Civil Procedure* § 430.10(e) because the claim is time barred by the one-year statute of limitation found in *Code of Civil Procedure* § 340 in that MONDRAGON seeks to compel RON BAKER to forfeit and return to him all payments made to RON BAKER under the contract, and enforce the mandatory statutory penalty of rescission of the contract pursuant to *Civil Code* sections 2983 and 2983.1.  MONDRAGON filed his initial complaint in this matter alleging violation of ASFA against RON BAKER almost twenty (20) months after he purchased the subject vehicle. *Code of Civil Procedure* §§ 430.10(e) and 430.30.

2.  MONDRAGON'S Fourth Cause of Action for Violation of the CLRA against RON BAKER fails to state facts sufficient to constitute a cause of action under *Code of Civil Procedure* § 430.10(e) because RON BAKER complied with the legal requirements for disclosing to MONDRAGON the "Optional DMV Electronic Filing Fee" and there exists no legal authority showing RON BAKER acted otherwise.  *Code of Civil Procedure* §§ 430.10(e) and 430.30.

3.  MONDRAGON'S Fifth Cause of Action for Unlawful, Unfair, Fraudulent Business Acts and Practices against RON BAKER fails to state facts sufficient to

3

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5400
TELEPHONE (619) 232-8486

1  constitute a cause of action under *Code of Civil Procedure* § 430.10(e) because

2  RON BAKER complied with the legal requirements for disclosing to

3  MONDRAGON the "Optional DMV Electronic Filing Fee" and there exists no

4  legal authority showing RON BAKER acted otherwise.  *Code of Civil Procedure*

5  §§ 430.10(e) and 430.30.

6      Based upon this demurrer and below memorandum of points and authorities, request for

7  judicial notice, all pleadings, papers and records on file herein, any oral or documentary evidence

8  presented, and any oral argument of counsel at the hearing of this matter, RON BAKER

9  respectfully requests that the Court sustain this demurrer to the Second , Fourth and Fifth Causes

10 of Action in MONDRAGON'S SAC without leave to amend.

11

12 DATED: March 28, 2012               WALSH MCKEAN FURCOLO LLP

13

14                                By:_____

15                                    Thomas R. Kelleher
                                   Attorneys for Defendant RON BAKER

16                                    CHEVROLET

17

18

19

20

21

22

23

24

25

26

27

28

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

                                       4

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## I.   INTRODUCTION

MONDRAGON'S Second Cause of Action for Violation of ASFA on behalf of himself and Class 1, Fourth Cause of Action for Violation of CLRA on behalf of Class 2, and Fifth Cause of Action for Unlawful/Unfair/Fraudulent Business Acts and Practices on behalf of Class 2 should be dismissed for failure to state a cause of action.

MONDRAGON defines Classes 1 and 2 as follows:

- "CLASS 1:" all persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from Ron Baker for personal use to be registered in the State of California, and (2) signed a RISC [retail installment sales contract] that failed to separately disclose on the RISC , the amounts paid for license fees and/or the amounts paid for registration, transfer and/or titling fees."  (SAC Paragraph 18(a), Page 4, lines 22-27).

- "CLASS 2:" All persons who, in the last four years prior to the filing of this complaint (1) purchased a vehicle from Defendant Ron Baker for personal use, (2) signed a Retail Installment Sale Contract ("RISC"), and (3) Ron Baker automatically included a charge on the RISC for the "Optional DMV Electronic Filing Fee.""  (SAC, Paragraph 18(b), Page 5, lines 3-7.)

The Second Cause of Action under ASFA is time barred by the one-year statute of limitation of *Code of Civil Procedure* § 340 as "an action upon a statute for a penalty or forfeiture" in that MONDRAGON is seeking mandatory enforcement of the forfeiture and penalty provisions of ASFA, i.e., full contract rescission for alleged failure to separately list certain types of DMV fees on the contract.

Next, MONDRAGON'S Fourth and Fifth Causes of Action should both be dismissed even though they are being pursued under different statutes, since both seek to impose derivative liability under ASFA on behalf of Class 2 against RON BAKER.  There is no legal authority showing RON BAKER wronged MONDRAGON or the proposed class pursuant to the admissions in his SAC with attached exhibits providing the manner in which RON BAKER disclosed the "Optional DMV Electronic Filing Fee."

## II.   PERTINENT FACTS FROM SAC

MONDRAGON alleges in his SAC that RON BAKER sold him a used 2008 Chevrolet Silverado (the "Vehicle"). (SAC Paragraph 40, Page 11, lines 13-16; Paragraphs 51-52, Page 13,

5

WALSH McKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1   lines 9-22; Exhibit 2 attached to SAC). MONDRAGON alleges he purchased the Vehicle on or

2   about May 3, 2010 pursuant to a <u>second</u> contract. (SAC Paragraphs 51-52, Pages 13, line 9-22).

3   MONDRAGON alleges that "Ron Baker disclosed a $427 charge as "license fees" on Line 2.A.

4   of RISC [Retail Installment Sale Contract] #2, which is believed to be an inflated or false amount

5   for license fees actually due and owing to the DMV." (SAC Paragraph 54, Page 13, line 28 to

6   Page 14, line 2). The SAC then alleges that "[m]oreover, **Mr. Mondragon received a bill from**

7   **the DMV, and paid the 2010 license and registration fees on June 30, 2010,** within a few

8   months of purchasing the Vehicle from Ron Baker. As such, Ron Baker could not have

9   submitted to the DMV the $427 it listed on RISC #2 and that it collected from Mr. Mondragon."

10  (SAC Paragraph 56, Page 14, lines 9-17). (Emphasis added.)

11          After driving and using the subject vehicle for almost 20 months, MONDRAGON filed

12  his lawsuit on December 30, 2011, well more than one year after the alleged date of purchase,

13  alleging that RON BAKER failed to include certain disclosures on the face of the contract that

14  MONDRAGON signed on May 3, 2010.

15          MONDRAGON brings ten causes of action in his SAC as follows:

16          1.      Violation of Consumer Legal Remedies Act – Civil Code Section 1750, et seq.

17  ("CLRA") - Class One Claim - against RON BAKER, Capital One Auto Finance and Does 1-10;

18          2.      Violation of Automobile Sales Finance Act –Civil Code Section 2981, et seq.

19  ("ASFA") for rescission of conditional sales contract - Individual and Class One Claim - against

20  RON BAKER, Capital One Auto Finance and Does 1-10 ;

21          3.      Unlawful, Unfair, Fraudulent Business Acts & Practices – Business & Professions

22  Code Section 17200, et seq. ("Unfair Business Practices Act") - Class One Claim- against RON

23  BAKER, Capital One Auto Finance and Does 1-10;

24          4.      Violation of CLRA - Class Two Claim - against RON BAKER and Does 1-10;

25          5.      Unfair Business Practices Act - Class Two Claim- against RON BAKER and

26  Does 1-10;

27          6.      Violation of CLRA - Class Three Claim- against Capital One Auto Finance and

28  Does 1-10;

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 237-8486

6

7.    Violation of ASFA for rescission of conditional sales contract - Class Three Claim - against Capital One Auto Finance and Does 1-10;

8.    Unfair Business Practices Act - Class Three Claim - against Capital One Auto Finance and Does 1-10;

9.    Violation of CLRA - Individual Claim - against RON BAKER, Capital One Auto Finance and Does 1-10; and

10.   Unfair Business Practices Act - Individual Claim - against RON BAKER, Capital One Auto Finance and Does 1-10.

### III.    MONDRAGON FAILS TO PLEAD CAUSES OF ACTION

#### A.  Second Cause of Action Is Time Barred

In support of the Second Cause of Action for Violation of ASFA –*Civil Code* Section 2981, et seq. for rescission of conditional sales contract - Individual and Class One Claim, MONDRAGON alleges in pertinent part as follows:

- "Again, RISC [Retail Installment Sale Contract] #2 (like RISC #1) did not list an amount for registration, transfer and titling fees –merely included the notation "Incl." on Line 2.B. of the Itemization of the Amount Financed Section of the RISC. Ron Baker disclosed a $427 charge as "license fees" on Line 2.A. of RISC #2, which is believed to be an inflated or false amount for license fees actually due and owing to the DMV." (SAC Paragraph 54, Page 13, line 26 to Page 14, line 2).

- "The RISCs executed by Plaintiff and each Class 1 Member for their vehicles are "conditional sale contracts" pursuant to Civil Code Section 2981(a)." (SAC Paragraph 81, Page 18, lines 20-21).

- "When Ron Baker disclosed, on Line 2.B. of Plaintiff's and Class 1 Members' RISCs, a notation of "Incl." as the amount paid for registration/transfer/titling fees, it violated Civil Code Section 2982(a)(2)(B) by failing to disclose the actual amount paid for those fees." (SAC Paragraph 86, Page 19, lines 3-6).

- "The "Single Document Rule" in Civil Code Section 2981.9 requires that all of the agreements between the buyer and the seller with respect to the total cost of the vehicle be contained in a single document." (SAC Paragraph 88, Page 19, lines 10-12).

- "Since the violations include violations of Civil Code Sections 2981.9 and 2982(a), Plaintiff and each Class 1 Member are entitled to statutory remedies pursuant to Civil Code Sections 2983 and 2983.1." (SAC Paragraph 137 [sic], Page 19, line 26 to Page 20, line 2).

WALSH McKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

7

NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

Thus, as a remedy for the alleged violation of ASFA, MONDRAGON seeks to compel RON BAKER to forfeit and return all monies he paid, and compel the required rescission of the contract pursuant to *Civil Code* §2983 and *Civil Code* §2983.1.

Section 2983(a) of the *Civil Code* provides in pertinent part as follows:

> "...**if the seller**, except as the result of an accidental or bona fide error in computation, **violates any provision** of Section 2981.9, or of **subdivision (a)**, (j), or (k) **of Section 2982, the conditional sale contract shall not be enforceable**, except by a bona fide purchaser, assignee or pledgee for value or until after the violation is corrected as provided in Section 2984, and, if the violation is not corrected the *buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller or his assignee...*" (Emphasis added.)

Section 2983.1(d) of the *Civil Code* provides as follows:

> "When a conditional sale contract is not enforceable under Section 2983 or this section, the buyer may elect to retain the motor vehicle and continue the contract in force, or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle. The value of the motor vehicle returned shall be credited as restitution by the buyer without any decrease that results from the passage of time in the cash price of the motor vehicle as the price appears on the conditional sale contract."

In *Stone v. James* (1956) 142 Cal.App.2d 738, a similar case which was also brought under ASFA and where the plaintiff also sought to recover payments made under a conditional sale contract, the appellate court held that such language is "*clearly [that] of a section enforcing a penalty or forfeiture*" and that the one year statute set forth in *Civil Code* Section 340 applies. *Stone, supra*, 142 Cal.App.2d at 740.

Admittedly, *Stone* was decided prior to the 1991 amendments to the Automobile Sales Finance Act, however, the language in the current version of Section 2983 is substantively identical to that of the former version (then numbered Section 2982(e).) No significant, or even minor changes were made during the 1991 amendments. To illustrate this point, below is the full text of the former Section 2982(e), as cited in the *Stone* decision:

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

8

NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

"(e) If the seller, except as the result of an accidental or bona fide error in computation, shall violate any provision of subdivisions (c), or (d) of this section the conditional sale contract shall not be enforceable, except by a bona fide purchaser for value, and the *buyer may recover from the seller in a civil action the total amount paid on the contract balance by the buyer to the seller or his assignee pursuant to the terms of such contract.*" (Former Version of Section 2982(e) – emphasis added.)

*Stone, supra*, 142 Cal.App.2d at 739.

When compared to the current version (Section 2983, *supra*), it is clear that the two sections are the same and were merely renumbered when the ASFA was restructured. Thus, the rule set forth in *Stone* that the remedy sought is one enforcing a "penalty or forfeiture," and thereby invoking Section 340(a) still applies. In addition, the *Stone* decision remains good law and has not been superseded by any other case law or statute.

Moreover, "[t]he "settled rule" in California is that statutes which provide for damages that are in '"addition[ ] to actual losses incurred,' " (*Menefee, supra,* 228 Cal.App.3d at p. 243, 278 Cal.Rptr. 805), or "not based upon actual injury," (*Montalti v. Catanzariti* (1987) 191 Cal.App.3d 96, 97, 236 Cal.Rptr. 231), are generally "'considered penal in nature [citations], and thus governed by the one-year period of limitations stated in section 340, subdivision (1).' [Citation.]" [Citation omitted.] *Hypertouch v. Valueclick, Inc.* (2011) 192 Cal.App.4th 805, 842.

Furthermore, "[t]he one-year statute of limitations contemplating "forfeitures" is directed to situations where "'an individual is allowed to recover against a *wrong-doer,* ... without reference to the actual damage sustained, or [where there is] ... *punishment* for some act which is in the nature of a public wrong.'" [Citation omitted.] *Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, 1365. "[A]s used in section 340, subdivision (a), a "forfeiture" is not limited to the divestiture of money or property without compensation. It also includes the "'loss of a *right, privilege,* or property because of a crime, breach of obligation, or neglect of duty.'" [Citation omitted.] *Brandenburg, supra,* 152 Cal.App.4th at 1365.

As set forth above, MONDRAGON seeks to compel RON BAKER to forfeit and return to him all monies he paid, and forfeit all rights RON BAKER has under its contract, by demanding enforcement of ASFA's mandatory penalty to rescind the contract pursuant to *Civil Code* §2983 and *Civil Code* §2983.1. The remedy that MONDRAGON seeks is penal in nature

9

WALSH McKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1   since ASFA specifies in pertinent part that "...if the seller, ... violates any provision of ...

2   subdivision (a) ... of Section 2982, the conditional sale contract shall not be enforceable, ... and,

3   ... the buyer may recover from the seller the total amount paid, pursuant to the terms of the

4   contract, by the buyer to the seller...". *Civil Code* §2983(a).  MONDRAGON alleges that RON

5   BAKER violated *Civil Code* §2982(a)(2)(B) when it allegedly failed to disclose the amount for

6   registration/transfer/ titling fees.  (SAC Paragraph 86, Page 19, lines 3-6).  Thus, over some

7   amount less than $427.00, MONDRAGON seeks to compel RON BAKER to forfeit all of its

8   rights for the sale of the subject vehicle, i.e., his $4,500.00 down payment (SAC Paragraph 55,

9   Page 14, lines 3-8), and 22 months of monthly car payments at $543.42 (totaling $11,955.24) due

10  on the 17th of each month since June 17, 2010 which he admits he has paid "in accordance with

11  the terms of RISC #2 (SAC Paragraph 52, Page 13, lines 15-22; Paragraph 62, Page 15, lines 12-

12  13; Exhibit 2 attached to SAC).

13      Nevertheless, the supposed "actual damage" or "actual losses" that MONDRAGON

14  alleges he and Class 1 members sustained under the Second Cause of Action concern the

15  allegedly "false and overstated" "amount disclosed as license fees on" their RISCs, which

16  MONDRAGON alleges for his vehicle concerns some amount less than $427.00.  (SAC

17  Paragraph 54, Page 13, line 26 to Page 14, line 2; Paragraphs 86 to 87, Page 19, lines 3-9), *yet*

18  *MONDRAGON wants to rescind the entire contract and recoup in excess of $16,000.00.*

19  Clearly, MONDRAGON is seeking relief under ASFA that is <u>not</u> based upon actual injury and

20  which is without reference to the actual damage, if any, sustained.

21      Turning to the timeline set forth in the SAC, the alleged violation occurred on <u>May 3,</u>

22  <u>2010</u>, the date the RISC was prepared by RON BAKER and signed by MONDRAGON.  Thus,

23  under Section 340(a), MONDRAGON had to file his Complaint as to the Second Cause of

24  Action on or before May 3, <u>2011</u>.  The Complaint was filed December 30, <u>2011</u>, nearly

25  TWENTY MONTHS after the statute of limitations for this claim expired.  Thus,

26  MONDRAGON'S Second Cause of Action for Violation of ASFA is untimely.

27      It is anticipated that MONDRAGON will attempt to argue some type of "delayed

28  discovery" of the alleged violation in an attempt to toll the statute to save his claim.  However,

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

10

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1    because the "lumping" of the fees – the violation alleged - appears on the face of the RISC, and

2    because MONDRAGON signed the RISC on May 3, 2010, he is charged with knowledge of the

3    violation as of that date.    Moreover, MONDRAGON admits that he knew that the contract

4    tasked RON BAKER to pay the DMV fees for the subject vehicle but alleges RON BAKER

5    failed to do so, in that he alleges in the SAC that he "received a bill from the DMV, and paid the

6    2010 license and registration fees on June 30, 2010, within a few months of purchasing the

7    Vehicle from Ron Baker. As such, Ron Baker could not have submitted to the DMV the $427 it

8    listed on RISC #2 and that it collected from Mr. Mondragon."    (Emphasis added.)    (SAC

9    Paragraph 56, Page 14, lines 9-17).    Thus, it is certainly the case that by June 30, 2010, the

10   statute of limitations began to run on MONDRAGON's ASFA claim, which means he would

11   have needed to file his Complaint by June 30, 2011.

12        Accordingly, MONDRAGON cannot plead around the fatal filing flaw to save his claim.

13   In sum, because MONDRAGON'S Second Cause of Action seeks a "penalty or forfeiture" as a

14   remedy under *Civil Code* §2983, the one year statute of limitations set forth in *Code of Civil*

15   *Procedure* §340(a) applies and operates to bar MONDRAGON'S claim.

16        **B. Fourth and Fifth Causes of Action Should Be Dismissed for Lack of Legal**

17            **Authority That RON BAKER Failed to Properly Disclose the "Optional DMV**

18            **Electronic Filing Fee"**

19        MONDRAGON asserts two (2) causes of action against RON BAKER concerning "Class

20   2" claims, i.e., 4th cause of action under the CLRA and 5th cause of action under the Unfair

21   Business Practices Act, and incorporates said "Class 2" definition into each these causes of

22   action. Moreover, MONDRAGON alleges in his SAC (and incorporates into his 4th and 5th

23   causes of action) as follows concerning the administration of the "Optional DMV Electronic

24   Filing Fee:"

25        "Additionally, the California Department of Motor Vehicles ("DMV") established
          a Business Partner Automation Program whereby "Business Partners" can offer to
26        perform certain registration matters in exchange for a fee. The Code of
          Regulations permits Business Partners to charge a fee to consumers who agree to
27        make use of the Program. The Code of Regulations further requires Business
          Partners disclose the fee on any purchase contract as an "Optional DMV
28        Electronic Filing Fee." Ron Baker is permitted to charge the consumers – who

WALSH MCKEAN FURCOLO LLP
825 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

11

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;**
**REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1   **agree** to participate in the Program – a maximum fee.  However, it has been Ron
    Baker's practice to automatically insert a charge for the Optional DMV Electronic
2   Filing Fee on customers' purchase contracts, regardless of whether the customer
    was even informed of, let alone agreed to pay, for the extra service."  (Emphasis
3   in original).

4   (SAC, Paragraph 5, Page 2, lines 4-14.)

5          However, MONDRAGON cannot cite to any legal authority for his assertions that (a)

6   MONDRAGON and other  consumers have to specifically agree to be charged for the Optional

7   DMV Electronic Filing Fee before being so charged <u>above and beyond</u> RON BAKER disclosing

8   the fee in the contract, (b) the supposed "automatic" inclusion of a charge for the Optional DMV

9   Electronic Filing Fee in MONDRAGON'S or any other customers' purchase contracts is

10  prohibited by law, or (c) a charge for the Optional DMV Electronic Filing Fee needs to be

11  disclosed in a separate document <u>beyond</u> MONDRAGON'S or other customer's purchase

12  contract.  MONDRAGON cannot cite to any such legal authority on account that none exists,

13  such that both causes of action should be dismissed for failure to state a cause of action.

14         Neither the CLRA nor the Unfair Business Practices Act specifically addresses the

15  "Optional DMV Electronic Filing Fee."  In this instance, the CLRA and Unfair Business

16  Practices Act would need to derive liability from other sources.  However, ASFA specifically

17  addresses this fee.  ASFA provides at *Civil Code* section 2982(a) in pertinent part as follows:

18         "(a)    "The contract shall contain the following disclosures, as applicable, which shall
                   be labeled "itemization of the amount financed:
19
                              ....
20         (G)     The amount of any optional business partnership automation fee to register
                   or transfer the vehicle, which shall be labeled "Optional DMV Electronic Filing
21         Fee."

22         MONDRAGON attaches as Exhibits 1 and 2 to the SAC as "true and correct copies" the

23  first and second "Retail Installment Sale Contact – Simple Finance Charge," respectively, for his

24  vehicle purchase from RON BAKER.  (SAC, Paragraph 44, Page 12, lines 3-8; Paragraph 52,

25  Page 13, lines 15-22.)  At page 1 under "ITEMIZATION OF AMOUNT FINANCED" at Line

26  1.J. of both Exhibits 1 and 2, the disclosure of the "Optional DMV Electronic Filing Fee"

27  appears on the face of the contracts with MONDRAGON.  MONDRAGON does not dispute in

28  his SAC the amount of the fee charged.  MONDRAGON acknowledged and approved being

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1  charged the fee when he signed the contracts.  The grounds for a demurrer must appear on the

2  face of the challenged pleading or from any matter of which the court is required to or may take

3  judicial notice.  *Code of Civil Procedure* section 430.30(a).  Court are permitted to take judicial

4  notice of, and encouraged to "not close their eyes to situations where a complaint contains

5  allegations of fact inconsistent with attached documents, or allegations contrary to facts which

6  are judicially noticed".  [citations omitted.]  *Del E. Webb v. Structural Materials Corp.* (1981)

7  1234, Cal.App.3d 593, 604-607.  Thus, the Court is respectfully requested to take judicial notice

8  of Exhibits 1 and 2 which MONDRAGON incorporates by reference by attaching them to the

9  SAC.

10       The *California Code of Regulations* at Title 13 for Motor Vehicles at section 225.45

11  provides in pertinent part as follows:

12       "(a) A business partner shall complete a Business Partner Automation Disclaimer
         form, REG 4020 (Rev. 10/2008) for each DMV transaction when a customer fee
13       is charged.

14

15       **Exceptions: (1) A business partner completing a conditional sales contract or
         lease agreement pursuant to Civil Code section 2982, 2982.5 or 2985.8 may**
16       **disclose the amount of any optional Business Partnership Automation**
         **program fee to process transactions identified in Section 225.45(b)(1)**
17       **through (3) of these regulations using the sales contract or lease agreement in**
         **place of the Business Partner Automation Disclaimer form. ...**
18

19       (1) The business partner shall obtain the customer's signature on the form after the
         business partner enters on the form the fee amount that the business partner is
20       charging to process the transaction.

21                                              ....".

22  (Emphasis added.)

23       MONDRAGON admits that RON BAKER was a "business partner" participating in the

24  Business Partner Automation Program when RON BAKER charged MONDRAGON and Class 2

25  members for the Optional DMV Electronic Filing Fee.  (SAC, Paragraph 5, Page 2, lines 4-14.)

26  MONDRAGON also admits that his (any other person's) vehicle purchase from RON BAKER

27  were governed by ""conditional sale contracts" pursuant to *Civil Code* section 1981(a)."  (SAC,

28

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

13

NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

1    Paragraph 81, Page 18, lines 20-21.)  MONDRAGON further admits that the Optional DMV

2    Electronic Filing Fee is a fee which is part of the Business Partner Automation Program.  (SAC,

3    Paragraph 5, Page 2, lines 4-14.)  It is also undisputed from the face of SAC and Exhibits 1 and 2

4    attached to the SAC that RON BAKER disclosed the amount of the Optional DMV Electronic

5    Filing Fee in the conditional sale contract with MONDRAGON, i.e., Exhibits 1 and 2 attached to

6    the SAC, and that MONDRAGON signed both contracts.  (Exhibits 1 and 2 to the SAC; SAC,

7    Paragraph 5, Page 2, lines 4-14.)  MONDRAGON further admits that he "has made his payments

8    to Capital One in accordance with the terms of RISC #2."  (SAC, Paragraph 62, Page 15, lines

9    12-13.)  Lastly, MONDRAGON admits that Exhibits 1 and 2 attached to the SAC are "true and

10   correct copies" of the contracts.  (SAC, Paragraph 44, Page 12, lines 3-8; Paragraph 52, Page 13,

11   lines 15-22.)

12       In sum, the face of the SAC with attached exhibits clearly demonstrates that RON

13   BAKER followed the law in disclosing to MONDRAGON the amount of the Optional DMV

14   Electronic Filing Fee being charged to him.  However, there is no legal authority for

15   MONDRAGON'S assertions to the contrary.

16       Accordingly, MONDRAGON cannot plead around the lack of legal authorities to support

17   his claim.  In sum, MONDRAGON'S Fourth and Fifth Causes of Action fail to state a cause of

18   action such that this demurrer should be granted without leave to amend.

19       **IV.    CONCLUSION**

20       Based on the foregoing, RON BAKER respectfully requests that this Motion be granted

21   without leave to amend as to MONDRAGON'S Second Cause of Action pursuant to *Code of*

22   *Civil Procedure Section 340(a)*, and Fourth and Fifth Causes of Action pursuant to *Civil Code*

23   section 2982(a) and *California Code of Regulations*, Title 13, Section 225.45.

24   DATED: March 28, 2012                WALSH MCKEAN FURCOLO LLP

25

26                                        By:_____

27                                            Thomas R. Kelleher
                                             Attorneys for Defendant RON BAKER
28                                           CHEVROLET, a California corporation

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

14
**NOTICE OF DEMURRER; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES;
REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1   Thomas R. Kelleher (SBN 179449)
2   WALSH MCKEAN FURCOLO LLP
    625 Broadway, Suite 1402
3   San Diego, CA 92101-5420
    Telephone: (619) 232-8486
4   Facsimile: (619) 232-2691

CENTRAL DIVISION

2012 MAR 28 PM 3: 15

SAN DIEGO COUNTY, CA

5   Attorneys for Defendant RON BAKER CHEVROLET, a California corporation

6

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8              FOR THE COUNTY OF SAN DIEGO - CENTRAL DIVISION

9   JOSE MONDRAGON, individually and on        CASE NO. 37-2011-00103236-CU-CO-CTL
    behalf of all others similarly situated,
10                                             **REQUEST FOR JUDICIAL NOTICE IN**
            Plaintiff,                         **SUPPORT OF MOTION TO STRIKE AND**
11                                             **DEMURRER TO PLAINTIFF'S SECOND**
         vs.                                   **AMENDED COMPLAINT**
12
                                               [Filed Concurrently With Motion To Strike and
13  RON BAKER CHEVROLET, a California           Demurrer]
    corporation; CAPITAL ONE AUTO
14  FINANCE, a business entity form unknown;    JUDGE: Hon. John S. Meyer
    and DOES 1 through 10, inclusive,           DEPT.: C-61
15
            Defendants.                         DATE: May 18, 2012
16                                             TIME: 10:30 a.m.
                                               DEPT.: C-61
17
                                               COMPLAINT FILED: 12/30/11
18                                             TRIAL DATE: TBD

19

20

21       **TO THE HONORABLE JOHN S. MEYER, JUDGE OF THE SAN DIEGO**

22  **COUNTY SUPERIOR COURT:**

23       In connection with its motion to strike and demurrer, motion for summary judgment,

24  Defendant RON BAKER CHEVROLET, respectfully requests, pursuant to Sections 452 and 453

25  of the California *Evidence Code*, that this Court take judicial notice of the following:

26  ///

27  ///

28

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

1

REQUEST FOR JUDICIAL NOTICE FOR MOTION TO STRIKE AND DEMURRER

1       1.      Exhibit "1" attached to the Second Amended Complaint of Plaintiff JOSE

2    MONDRAGON in the instant matter.

3       2.      Exhibit "2" attached to the Second Amended Complaint of Plaintiff JOSE

4    MONDRAGON in the instant matter.

5    DATED: March 28, 2012                    WALSH MCKEAN FURCOLO LLP

6

7                                             By:_____

8                                                Thomas R. Kelleher
                                                 Attorneys for Defendant RON BAKER
9                                                CHEVROLET

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

2

**REQUEST FOR JUDICIAL NOTICE FOR MOTION TO STRIKE AND DEMURRER**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and A | TELEPHONE NO. | FOR COURT USE ONLY |
|---|---|---|
| Thomas R. Kelleher (SBN 179449)<br>WALSH MCKEAN FURCOLO LLP<br>625 BROADWAY, SUITE 1402<br>San Diego, C A 92101<br>ATTORNEY FOR: Defendant RON BAKER CHEVROLET, a California corporation | (619) 232-8486 | CENTRAL DIVISION<br><br>2012 MAR 28 PM 3: 15<br><br>SAN DIEGO COUNTY, CA |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS:    330 West Broadway | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE:    San Diego, CA 92101 | |
| BRANCH NAME:    Central Division | |

| PLAINTIFF:    JOSE MONDRAGON | |
|---|---|
| DEFENDANT:    RON BAKER CHEVROLET, et al. | |

| PROOF OF SERVICE<br>C.C.P. 1013a and 2015.5 | Case Number:<br>37-2011-00103236-CU-CO-CTL |
|---|---|

I, the undersigned, declare that: I am over the age of 18 years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California, where the mailing occurs; and my business address is 625 Broadway, Suite 1402, San Diego, CA 92101, telephone no. (619) 232-8486, facsimile no. (619) 232-2691.  I further declare that I am readily familiar with the business' practice for collection and processing of correspondence, pleadings and discovery for Electronic Transfer through CourtLink, mailing via U.S. Mail, UPS Overnight Mail, Facsimile and/or Personal Service pursuant to which practice I served the following original document(s) or true copies thereof, with all exhibits:

1. **NOTICE OF DEMURRER TO THE SECOND, FOURTH AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S SECOND AMENDED COMPLAINT; DEMURRER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER;**

2. **NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER;**

3. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO STRIKE AND DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; and**

4. **[PROPOSED] ORDER ON DEFENDANT RON BAKER CHEVROLET'S DEMURRER AND MOTION TO STRIKE AS TO PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT.**

by one or more of the following methods of service for each addressee respectively as follows:

### SEE ATTACHED SERVICE

[ XXX ]  **By U.S. Mail ONLY AS INDICATED ON SERVICE LIST.** I sealed such document(s) in envelopes, and with the correct postage thereon fully prepaid, either deposited each in the United States Postal Service or placed each for collection and mailing on March 28, 2012, at San Diego, California, following ordinary business practices.

[ XXX ]  **By Personal Service/Delivery.** On March 28, 2012, at approximately 2:00 pm, I caused **American Messenger Service** to serve a copy of the above-referenced documents on the interested parties by personally delivering a copy of said document(s) to **Christopher P. Barry, ESQ.** at the following address:

ROSNER, BARRY & BABBITT, LLP
10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131
Tel: (858) 348-1005; Fax: (858) 348-1150
hawk@rbblawgroup.com
angela@rbblawgroup.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed: _____ March 28, 2012 _____

MICHELLE Y. DAVIS

### SERVICE LIST
*Jose Mondragon v. Ron Baker Chevrolet, et al.*
*San Diego Superior Court Case No. 37-2011-00103236-CU-CO-CTL*

| PARTY | | COUNSEL |
|---|---|---|
| **Plaintiff JOSE MONDRAGON** | | Hallen D. Rosner, Esq.<br>Christopher P. Barry, Esq.<br>Angela J. Smith, Esq.<br>ROSNER, BARRY & BABBITT, LLP<br>10085 Carroll Canyon Road, Suite 100<br>San Diego, CA 92131<br>Tel: (858) 348-1005; Fax: (858) 348-1150<br>hawk@rbblawgroup.com<br>angela@rbblawgroup.com<br>***VIA PERSONAL SERVICE ONLY*** |
| **Plaintiff JOSE MONDRAGON** | | Steve Mikhov, Esq.<br>ROMANO STANCROFF & MIKHOV, PC<br>640 S. San Vicente, Suite 350<br>Los Angeles, CA 90048<br>Tel: (323) 936-2274; Fax: (323) 939-7973<br>***VIA U.S. MAIL ONLY*** |
| **Defendant CAPITAL ONE AUTO FINANCE** | | Hunter R. Eley, Esq.<br>DOLL AMIR & ELEY LLP<br>1888 Century Park East, Suite 1850<br>Los Angeles, CA 90067<br>Tel: (310) 557-9100; Fax: (310) 557-9101<br>HEley@dollamir.com<br>***VIA U.S. MAIL ONLY*** |

EXHIBIT 12

Thomas R. Kelleher (SBN 179449)
WALSH MCKEAN FURCOLO LLP
625 Broadway, Suite 1402
San Diego, CA 92101-5420
Telephone: (619) 232-8486
Facsimile: (619) 232-2691

Attorneys for Defendant RON BAKER CHEVROLET, a California corporation

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO - CENTRAL DIVISION

| | |
|---|---|
| JOSE MONDRAGON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>RON BAKER CHEVROLET, a California corporation; CAPITAL ONE AUTO FINANCE, a business entity form unknown; and DOES 1 through 10, inclusive,<br><br>      Defendants. | CASE NO. 37-2011-00103236-CU-CO-CTL<br><br>**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**<br><br>[Filed Concurrently With Demurrer]<br><br>JUDGE: Hon. John S. Meyer<br>DEPT.: C-61<br><br>DATE: May 18, 2012<br>TIME: 10:30 a.m.<br>DEPT.: C-61<br><br>COMPLAINT FILED: 12/30/11<br>TRIAL DATE: TBD |

**TO THE CLERK OF THE COURT, ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 18, 2012 at 10:30 a.m., or as soon thereafter as the matter may be heard in Department C-61 of the above-entitled court, located at 330 W. Broadway, San Diego, California 92101, the Honorable John. S. Meyer presiding, Defendant RON BAKER CHEVROLET ("RON BAKER") will appear before this Court to move and

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

1

NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

hereby does move to strike the following portions of the Second Amended Complaint ("SAC")

filed by Plaintiff JOSE MONDRAGON ("MONDRAGON"):

1. All references to "exemplary" and/or "punitive" damages against RON BAKER in the

SAC, specifically:

Paragraph 22(f), Page 6, lines 22-24 ("whether Class Members are entitled to …

exemplary, punitive …damages …").

Paragraph 27, Page 7, lines 23-26 ("The right of Plaintiff and each member of the Classes

to payment of any … exemplary …damages …").

Paragraph 76, Page 17, lines 24-26 ("Accordingly, Plaintiff seeks all available …punitive

damages under the Consumer Legal Remedies Act for Defendants' violations of Civil

Code Sections 1770(a)(14) and (16)").

Paragraph 108, Page 23, lines 13-15 ("Accordingly, Plaintiff seeks all available

…punitive damages under the Consumer Legal Remedies Act for Defendant's violations

of Civil Code Sections 1770(a)(14) and (16)").

Paragraph 153, Page 32, lines 10-12 ("Accordingly, Plaintiff seeks all available

…punitive damages under the Consumer Legal Remedies Act for Defendants' violations

of Civil Code Sections 1770(a)(5), (7), (9), (14) and (16)").

PRAYER FOR RELIEF, Paragraph 6, Page 35, line 26 ("For the specified causes of

action, punitive … damages").

2. All references to, and/or relating to, "Optional DMV Electronic Filing Fee" and/or

"Class 2" against RON BAKER in the SAC, specifically:

Entirety of Paragraph 5, Page 2, lines 4-14.

Paragraph 18(b), Page 5, lines 3-7 (""CLASS 2:" All persons who, in the last four years

prior to the filing of this complaint, (1) purchased a vehicle from Defendant Ron Baker

for personal use, (2) signed a Retail Installment Sale Contract ("RISC"), and (3) Ron

Baker automatically included a charge on the RISC for the "Optional DMV Electronic

Filing Fee"").

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND
AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; |PROPOSED| ORDER**

Paragraph 22(c), Page 6, lines 13-15 ("whether Ron Baker's practice of automatically charging consumers an "Optional DMV Electronic Filing Fee" constitutes a violation of the CLRA, and/or the UCL").

Entirety of Paragraph 25, Page 7, lines 13-16.

Entirety of Heading: "SUMMARY OF FACTS COMMON TO CLASS 2," and entirety of Paragraphs 36-37, Page 10, lines 17-24.

Entirety of Paragraph 46, Page 12, lines 13-15.

Paragraph 48, Page 12, lines 21-24 ("…As with the Optional DMV Electronic Filing Fee and …").

Paragraph 53, Page 13, lines 23-25 ("…and a charge for the "Optional DMV Electronic Filing Fee,"….").

Entirety of Fourth Cause of Action for "Violation of Consumers Legal Remedies Act, Civil Code Section 1750, et seq. – Class 2 Claim – As Against Defendants Ron Baker and Does 1-10," Paragraph 99, Page 22, line 1 through Paragraph 110, Page 23, line 24.

Entirety of Fifth Cause of Action for "Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. & Prof. Code Section 17200, et seq. – Class 2 Claim – As Against Defendants Ron Baker and Does 1-10," Paragraph 111, Page 24, line 1 through Paragraph 117, Page 25, line 20.

RON BAKER'S motion to strike is made pursuant to Sections 435, 436(a), 436(b), 431.10(b), and 437 of the California *Code of Civil Procedure* on the grounds that the above portions of the SAC are legally irrelevant, improper and not drawn or filed in conformity with the laws of California.

///

///

///

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1        RON BAKER'S motion to strike is based upon this notice, motion itself, request for

2   judicial notice, the memorandum of points and authorities is support thereof, and the complete

3   pleadings and records on file herein and upon such additional evidence and argument as may

4   hereafter be presented.

5

6        DATED: March 28, 2012            WALSH MCKEAN FURCOLO LLP

7

8                            By:_____

9                            Thomas R. Kelleher
                           Attorneys for Defendant RON BAKER

10                           CHEVROLET

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

4

**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND
AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PORTIONS OF MONDRAGON'S SAC**

## I.     INTRODUCTION

MONDRAGON'S request for "exemplary" and "punitive" damages against RON BAKER should be stricken as irrelevant, improper and not drawn or filed in conformity with the laws of California, since insufficient facts are pled warranting any award of exemplary or punitive damages, as well as that the Unfair Business Practices claims do not allow for such an award.    Moreover, any and all references to "Optional DMV Electronic Filing Fee" and/or the purported existence of a "Class 2," including the entirety of the 4th and 5th causes of action, should also be stricken as irrelevant, improper and not drawn or filed in conformity with the laws of California, since the laws of California do not even preclude RON BAKER from automatically including on the conditional sale contract a charge for the "Optional DMV Electronic Filing Fee" as MONDRAGON alleges occurred.

MONDRAGON alleges in his SAC that RON BAKER sold him a used 2008 Chevrolet Silverado (the "Vehicle"). (SAC Paragraph 40, Page 11, lines 13-16; Paragraphs 51-52, Page 13, lines 9-22; Exhibit 2 attached to SAC). MONDRAGON alleges he purchased the Vehicle on or about May 3, 2010. (SAC Paragraphs 51-52, Page 13, lines 9-22). MONDRAGON filed his lawsuit on December 30, 2011, well more than one year after the alleged date of purchase.

MONDRAGON brings ten causes of action in his SAC as follows:

1.       Violation of Consumer Legal Remedies Act – Civil Code Section 1750, et seq. ("CLRA") - Class One Claim - against RON BAKER, Capital One Auto Finance and Does 1-10;

2.       Violation of Automobile Sales Finance Act –Civil Code Section 2981, et seq. ("ASFA") for rescission of conditional sales contract - Individual and Class One Claim - against RON BAKER, Capital One Auto Finance and Does 1-10 ;

3.       Unlawful, Unfair, Fraudulent Business Acts & Practices – Business & Professions Code Section 17200, et seq. ("Unfair Business Practices Act") - Class One Claim- against RON BAKER, Capital One Auto Finance and Does 1-10;

4.       Violation of CLRA - Class Two Claim - against RON BAKER and Does 1-10;

5

SH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
AN DIEGO, CALIFORNIA
92101-5420
LEPHONE (619) 232-8486

5.      Unfair Business Practices Act - Class Two Claim- against RON BAKER and Does 1-10;

6.      Violation of CLRA - Class Three Claim- against Capital One Auto Finance and Does 1-10;

7.      Violation of ASFA for rescission of conditional sales contract - Class Three Claim - against Capital One Auto Finance and Does 1-10;

8.      Unfair Business Practices Act - Class Three Claim - against Capital One Auto Finance and Does 1-10;

9.      Violation of CLRA - Individual Claim - against RON BAKER, Capital One Auto Finance and Does 1-10; and

10.      Unfair Business Practices Act - Individual Claim - against RON BAKER, Capital One Auto Finance and Does 1-10.

MONDRAGON incorporates by reference his request for exemplary damages into each of his causes of action, and prays for punitive damages in the Prayer.  MONDRAGON asserts two (2) causes of action as Class 2 claims alleging that RON BAKER wrongfully charged MONDRAGON and others for the "Optional DMV Electronic Filing Fee."

MONDRAGON'S allegations at paragraphs 22(f), 27, 76, 108, 153 and Prayer at paragraph 6 seeking '"exemplary" and/or "punitive" damages," are irrelevant, unsupported by any factual allegation or legal basis, and should be stricken under *Code of Civil Procedure* §§ 436(a) and/or 436(b).  Additionally, all of MONDRAGON'S allegations in support of his "Class 2" claims at paragraphs 5, 18(b), 22(c), 25, 36-37, 46, 48, and 53, as well as the entirety of the 4th and 5th causes of action, which relate to how RON BAKER allegedly improperly charged MONDRAGON and others for the "Optional DMV Electronic Filing Fee," should be stricken as well as plainly irrelevant, and unsupported by any legal basis pursuant to *Code of Civil Procedure* §§ 436(a) and/or 436(b).

## II.      LEGAL STANDARD FOR MOTION TO STRIKE

The Court may strike from any pleading "irrelevant, false or improper matter inserted in any pleading" as long as appropriate notice requirements have been met. (*Code Civ. Proc.* §

6

436(a).) "Irrelevant matter," as the term is used in Section 436(a), means "immaterial allegation." (*Code Civ. Proc.* § 431.10(c).)  *Code of Civil Procedure* section 431.10, subdivision (b), defines "immaterial allegation" as:

"(1)    An allegation that is not essential to the statement of a claim or defense.

(2)    An allegation that is neither pertinent to nor supported by an otherwise sufficient claim or defense.

(3) A demand for judgment requesting relief not supported by the allegations of the complaint or cross-complaint."

Also, a court may "[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state . . ." (*Code Civ. Proc.* § 436(b).)  A court may also strike an entire cause of action.   *California Rules of Court*, Rule 3.1322.

As shown below, the requests for exemplary and/or punitive damages are immaterial allegations that are not drawn in conformity with the law because they are not supported by the claims or allegations of the SAC, and are unsupported by California law because exemplary and/or punitive damages are <u>not</u> recoverable under the Unfair Business Practices Act relied upon. MONDRAGON has not properly pled facts to support even an inference that he may someday produce clear and convincing evidence of fraud, oppression, or malice to justify exemplary damages.  They should be stricken pursuant to *Code of Civil Procedure* §§ 436(a) and (b).

MONDRAGON'S "Class 2" claims, i.e., 4th and 5th causes of action, and those portions of and/or entire paragraphs which relate to how RON BAKER allegedly wrongfully charged MONDRAGON and others for the "Optional DMV Electronic Filing Fee" are unsupported by California law and as such are immaterial allegations of the SAC.

Thus, the Court may and should strike the above allegations and requests for relief.

## III.    STANDARD OF PLEADING REGARDING EXEMPLARY AND/OR PUNITIVE DAMAGES

California courts have long disfavored the imposition of exemplary or punitive damages. (*Dyna-Med, Inc. v. Fair Employment & Housing Commission* (1987) 43 Cal.3d 1379, 1391-1392.)  In *Dyna-Med,* the Court stated:

ALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1    *Civil Code* section 3294, subdivision (a) allows the award of exemplary damages
2    only when the defendant has been guilty of "oppression, fraud, or malice." This
3    provision codifies the universally recognized principle that "[t]he law does not
4    favor punitive damages and they should be granted with the greatest caution."
5    (*Id.* at 1391-1392 citing *Beck v. State Farm Mutual Automobile Insurance Company* (1976) 54
6    Cal.App.3d 347, 355.)

7    [W]e must be guided by the well-established principle that punitive damages are
8    not favored in law. Such damages constitute a windfall, which, though supported
9    by law in proper cases [citation omitted], creates the anomaly of excessive
10   compensation which makes the remedy an unappealing one.

11   (*Rosener v. Sears, Roebuck & Company* (1980) 110 Cal.App.3d 740, 750 (citations
12   omitted).

13   Consistent with this judicial attitude disfavoring exemplary damages claims, *Civil Code* §
14   3294 as amended in 1992 sets forth heightened pleading and evidentiary standards. Section 3294
15   provides that in order to sufficiently plead a claim for exemplary damages, plaintiff must allege
16   *specific* facts showing that the defendant is "guilty of oppression, fraud, or malice." *Civil Code* §
17   3294(a); *See also Cyrus v. Haveson* (1976) 65 Cal.App.3d 306, 316-317.

18   Under *Civil Code* § 3294, malice, oppression and fraud are defined as follows:

19   (1)    "Malice" means conduct which is intended by the defendant to cause injury to the
20          plaintiff or despicable conduct which is carried on by the defendant with a willful
21          and conscious disregard of the rights or safety of others.

22   (2)    "Oppression" means despicable conduct that subjects a person to cruel and unjust
23          hardship and conscious disregard of that person's rights.

24   (3)    "Fraud" means an intentional misrepresentation, deceit, or concealment of a
25          material fact known to the defendant with the intention on the part of the
26          defendant of thereby depriving a person of property or legal rights or otherwise
27          causing injury.

28   *Civil Code* § 3294, subd. (c)(1).

SH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
AN DIEGO, CALIFORNIA
92101-5420
EPHONE (619) 232-8486

8

NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND
AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

Moreover, punitive damages should only be allowed in "the clearest of cases." *Woolstrum v. Mailloux* (1983) 141, Cal.App.3d Supp. 1. In accord with that principle, it is established that in pleading punitive damages, specific facts must be alleged in order to afford the opposing party adequate notice of the kind of conduct charged against him. *See Brousseau v. Jarrett* (1977) 73 Cal.App.3d 864, 872. A conclusory characterization of the defendant's conduct is insufficient to state a claim for recovery of exemplary damages. *Ibid.; see also Blake v. Aetna Life Ins. Co.* (1979) 99 Cal. App.3d 901 [holding that an insured must allege sufficient facts to show that an insurance company's actions were of such egregious conduct to warrant a claim for punitive damages].

## IV.  MONDRAGON'S EXEMPLARY AND/OR PUNITIVE DAMAGES CLAIMS IN ALL OF HIS COUNTS SHOULD BE STRICKEN FROM THE SAC

MONDRAGON 'S claims for exemplary and/or punitive damages are conclusory and unsupported by sufficient factual allegations in the SAC and attached Exhibits 1 and 2. Therefore, they are "immaterial" as defined by *Code of Civil Procedure* § 431.10(b). The SAC (and attached Exhibits 1 and 2) does not allege sufficient facts showing that RON BAKER intended to cause injury to MONDRAGON, engaged in despicable conduct, or intentionally misrepresented or concealed a known fact in order to harm MONDRAGON. The SAC does not allege any facts showing wanton or despicable conduct to support an award of exemplary damages, as required by law is set forth with any factual basis. The contract disclosed everything to MONDRAGON of which he approved before signing. (Exhibit 2 to SAC.) Alongside of MONDRAGON'S signature at page 2 of the contract it states: "YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT." (Exhibit 2 to SAC.) As stated earlier, MONDRAGON admits he signed the contract and that it is a true and correct copy.

Thus, the claims for exemplary and/or punitive damages is "immaterial" as defined by *Code of Civil Procedure* § 431.10(b), it is not drawn in conformity with law, and the Court should strike those claims pursuant to *Code of Civil Procedure* §§ 436(a) and (b).

V. **MONDRAGON'S UNFAIR BUSINESS PRACTICES ACT CLAIMS DO NO PERMIT RECOVERY OF EXEMPLARY OR PUNITIVE DAMAGES**

Exemplary or punitive damages are not permitted under the Unfair Business Practices Act at *Business & Professions Code* § 17200. See, *People v. Sup.Ct. (Jayhill Corp.)* (1973) 9 C3d 283, 287—no punitive damages in action brought by the Attorney General; *Czechowski v. Tandy Corp.* (ND CA 1990) 731 F.Supp. 406—no punitive damages available; *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.* (ND CA 1990) 720 F.Supp. 805 (same).

MONDRAGON incorporates by reference all of his prior paragraphs seeking exemplary and/or punitive damages into his causes of action under the Unfair Business Practices Act. Thus, MONDRAGON'S claims for exemplary and/or punitive damages under his 3rd, 5th, and 10th causes of action for Unfair Business Practices Act cannot be sustained.

VI. **MONDRAGON'S ALLEGATIONS OF WRONGDOING AGAINST RON BAKER CONCERNING ANY "CLASS 2" AND/OR "OPTIONAL DMV ELECTRONIC FILING FEE" CLAIMS, INCLUDING THE FOURTH AND FIFTH CAUSES OF ACTION, ARE UNSUPPORTED BY CALIFORNIA LAW AND SHOULD BE STRICKEN**

MONDRAGON defines "Class 2" as follows: ""CLASS 2:" All persons who, in the last four years prior to the filing of this complaint (1) purchased a vehicle from Defendant Ron Baker for personal use, (2) signed a Retail Installment Sale Contract ("RISC"), and (3) Ron Baker automatically included a charge on the RISC for the "Optional DMV Electronic Filing Fee."" (SAC, Paragraph 18(b), Page 5, lines 3-7.) MONDRAGON asserts two (2) causes of action against RON BAKER concerning "Class 2" claims, i.e., 4th cause of action under the CLRA and 5th cause of action under the Unfair Business Practices Act, and incorporates said "Class 2" definition into each of these causes of action.

:H MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
AN DIEGO, CALIFORNIA
92101-5420
EPHONE (619) 232-8486

**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

1   Moreover, MONDRAGON alleges in his SAC (and incorporates into his 4th and 5th

2   causes of action) as follows concerning the administration of the "Optional DMV Electronic

3   Filing Fee."

4       "Additionally, the California Department of Motor Vehicles ("DMV") established
        a Business Partner Automation Program whereby "Business Partners" can offer to
5       perform certain registration matters in exchange for a fee.  The Code of
        Regulations permits Business Partners to charge a fee to consumers who agree to
6       make use of the Program.  The Code of Regulations further requires Business
        Partners disclose the fee on any purchase contract as an "Optional DMV
7       Electronic Filing Fee."  Ron Baker is permitted to charge the consumers – who
        **agree** to participate in the Program – a maximum fee.  However, it has been Ron
8       Baker's practice to automatically insert a charge for the Optional DMV Electronic
        Filing Fee on customers' purchase contracts, regardless of whether the customer
9       was even informed of, let alone agreed to pay, for the extra service." (Emphasis
        in original).

10

11  (SAC, Paragraph 5, Page 2, lines 4-14.)

12      However, MONDRAGON cannot cite to any legal authority for his assertions that (a)

13  MONDRAGON and other  consumers have to specifically agree to be charged for the Optional

14  DMV Electronic Filing Fee before being so charged above <u>beyond</u> RON BAKER disclosing the

15  fee in the contract, (b) the supposed "automatic" inclusion of a charge for the Optional DMV

16  Electronic Filing Fee in MONDRAGON'S or any other customers' purchase contracts is

17  prohibited by law, or (c) a charge for the Optional DMV Electronic Filing Fee needs to be

18  disclosed in a separate document <u>beyond</u> MONDRAGON'S or other customer's purchase

19  contract.  MONDRAGON cannot cite to any such legal authority on account that none exists.

20      Neither the CLRA nor the Unfair Business Practices Act specifically addresses the

21  "Optional DMV Electronic Filing Fee."  However, ASFA specifically does so.  ASFA provides

22  at *Civil Code* section 2982(a) in pertinent part as follows:

23      "(a)    "The contract shall contain the following disclosures, as applicable, which shall
        be labeled "itemization of the amount financed:
24                          ....
        (G)     The amount of any optional business partnership automation fee to register
25      or transfer the vehicle, which shall be labeled "Optional DMV Electronic Filing
        Fee."
26

27      MONDRAGON attaches as Exhibits 1 and 2 to the SAC as "true and correct copies" the

28  first and second "Retail Installment Sale Contact – Simple Finance Charge," respectively, for his

SH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
AN DIEGO, CALIFORNIA
92101-5420
LEPHONE (619) 232-8486

11

subject vehicle purchase from RON BAKER. (SAC, Paragraph 44, Page 12, lines 3-8; Paragraph 52, Page 13, lines 15-22.) At page 1 under "ITEMIZATION OF AMOUNT FINANCED" at Line 1.J. of both Exhibits 1 and 2, the disclosure of the "Optional DMV Electronic Filing Fee" appears on the face of the contracts with MONDRAGON. MONDRAGON does not dispute in his SAC the amount of the fee charged. MONDRAGON acknowledged and approved being charged the fee when he signed the contracts. Similar to a demurrer, "[t]he grounds for a motion to strike shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." *Code of Civil Procedure* section 437(a); *Code of Civil Procedure* section 430.30(a). Court are permitted to take judicial notice of, and encouraged to "not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed". [citations omitted.] *Del E. Webb v. Structural Materials Corp.* (1981) 1234, Cal.App.3d 593, 604-607. Thus, the Court is respectfully requested to take judicial notice of Exhibits 1 and 2 which MONDRAGON incorporates by reference by attaching them to the SAC.

The *California Code of Regulations* at Title 13 for Motor Vehicles at section 225.45 provides in pertinent part as follows:

> "(a) A business partner shall complete a Business Partner Automation Disclaimer form, REG 4020 (Rev. 10/2008) for each DMV transaction when a customer fee is charged.
>
> **Exceptions: (1) A business partner completing a conditional sales contract or lease agreement pursuant to Civil Code section 2982, 2982.5 or 2985.8 may disclose the amount of any optional Business Partnership Automation program fee to process transactions identified in Section 225.45(b)(1) through (3) of these regulations using the sales contract or lease agreement in place of the Business Partner Automation Disclaimer form.** ...
>
> (1) The business partner shall obtain the customer's signature on the form after the business partner enters on the form the fee amount that the business partner is charging to process the transaction.
> ....".

GH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
W DIEGO, CALIFORNIA
92101-5420
.EPHONE (619) 232-8486

12

NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER

(Emphasis added.)

MONDRAGON admits that RON BAKER was a "business partner" participating in the Business Partner Automation Program when RON BAKER charged MONDRAGON and Class 2 members for the Optional DMV Electronic Filing Fee. (SAC, Paragraph 5, Page 2, lines 4-14.) MONDRAGON also admits that his (any other person's) vehicle purchase from RON BAKER were governed by ""conditional sale contracts" pursuant to *Civil Code* section 1981(a)." (SAC, Paragraph 81, Page 18, lines 20-21.) MONDRAGON further admits that the Optional DMV Electronic Filing Fee is a fee which is part of the Business Partner Automation Program, as identified in *Civil Code* section 2982(a) and *California Code of Regulations*, Title 13, section 225.45, above. (SAC, Paragraph 5, Page 2, lines 4-14.) It is also undisputed from the face of SAC and Exhibits 1 and 2 attached to the SAC that RON BAKER disclosed the amount of the Optional DMV Electronic Filing Fee in the conditional sale contract with MONDRAGON, i.e., Exhibits 1 and 2 attached to the SAC, and that MONDRAGON signed both of the aforesaid contracts. (Exhibits 1 and 2 to the SAC; SAC, Paragraph 5, Page 2, lines 4-14.) MONDRAGON further admits that he "has made his payments to Capital One in accordance with the terms of RISC #2." (SAC, Paragraph 62, Page 15, lines 12-13.) Lastly, MONDRAGON admits that Exhibits 1 and 2 attached to the SAC are "true and correct copies" of the contracts. (SAC, Paragraph 44, Page 12, lines 3-8; Paragraph 52, Page 13, lines 15-22.)

In sum, the face of the SAC with attached exhibits clearly demonstrates that RON BAKER followed the law in disclosing to MONDRAGON the amount of the Optional DMV Electronic Filing Fee being charged to him. However, there is no legal authority for MONDRAGON'S assertions to the contrary.

Thus, the Court should strike those portions of and/or entire paragraphs which relate to "Class 2" claims, how RON BAKER allegedly wrongfully charged MONDRAGON and others for the "Optional DMV Electronic Filing Fee," and the entirety of the 4th and 5th causes of action, as unsupported by California law and as being immaterial allegations of the SAC.

///

///

SH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
AN DIEGO, CALIFORNIA
92101-5420
LEPHONE (619) 232-8486

13

## VII.    **CONCLUSION**

For the foregoing reasons, RON BAKER respectfully requests that this Court strike from MONDRAGON'S SAC the above-specified portions pertaining to (1) exemplary and punitive damages in the SAC, and (2) Class 2" claims, how RON BAKER allegedly wrongfully charged MONDRAGON and others for the "Optional DMV Electronic Filing Fee," and the entirety of the 4th and 5th causes of action.

DATED: March 28, 2012

WALSH MCKEAN FURCOLO LLP

By:_____
Thomas R. Kelleher
Attorneys for Defendant RON BAKER
CHEVROLET, a California corporation

WALSH MCKEAN FURCOLO LLP
625 BROADWAY
SUITE 1402
SAN DIEGO, CALIFORNIA
92101-5420
TELEPHONE (619) 232-8486

14

**NOTICE OF MOTION TO STRIKE AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

EXHIBIT 13

MAY 8 2012

1 | ROSNER, BARRY & BABBITT, LLP
Christopher P. Barry, SBN: 179308
2 | Angela J. Smith, SBN: 216876
Dana R. Turner, SBN: 280039
3 | 10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
4 | TEL: (858) 348-1005 / FAX: (858) 348-1150

5 | Attorneys for Plaintiff

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SAN DIEGO

10 | JOSE MONDRAGON, individually
and on behalf of all others similarly
11 | situated,

12 |              Plaintiff,

13 |     v.

14 | RON BAKER CHEVROLET, a
California Corporation;
15 | CAPITAL ONE AUTO FINANCE, a
business entity form unknown; and
16 | DOES 1 through 10, inclusive,

17 |              Defendants.

CASE NO. 37-2011-00103236-CU-CO-CTL

**CLASS ACTION**

**Plaintiff's Opposition to Defendant Ron Baker Chevrolet's Motion to Strike Portions of Plaintiff's Second Amended Complaint**

Date:      May 18, 2012
Time:     10:30 a.m.
Judge:    Hon. John S. Meyer
Dept.:     61

Complaint Filed: December 30, 2011

18

19

20

21

22

23

24

25

26

27

28

I.     Introduction and Summary of Argument

Defendant Ron Baker Chevrolet asks this court to strike Plaintiff's claims for punitive damages associated with the three claims against Ron Baker for violation of the Consumers Legal Remedies Act ("CLRA") in Plaintiff's Second Amended Complaint as "immaterial." Essentially, Ron Baker contends Plaintiff only made factually-deficient "conclusory" allegations in support of his request for punitive damages. Ron Baker is incorrect.

Plaintiff's complaint does not just make "conclusory" allegations. Rather, because Ron Baker engaged in so many deceptive and fraudulent acts during Plaintiff's purchase, the complaint contains numerous factual allegations of fraudulent conduct. As long as these allegations are sufficient to state a claim for fraud, they are sufficient to state a claim for punitive damages. (*See Stevens v. Superior Court* (1986) 180 Cal.App.3d 605, 610.) In addition, even if they were pleaded separately and not already part of a claim for fraud, these factual allegations contend Ron Baker misrepresented information in the contract itself, deceived customers by sneaking in fees for optional services without their permission and lied to Plaintiff. Moreover, Plaintiff doesn't just allege these were isolated instances of fraud, but alleges some of the fraudulent conduct was actually Ron Baker's normal practice. Allegations of ongoing, repeated intentionally fraudulent statements provide even more justification for seeking punitive damages. Whether read separately or together as a scheme to systematically cheat unsuspecting car buyers, the allegations state a claim for fraud under the definition in Civil Code § 3294(c) and, therefore, state a claim for punitive damages.

Ron Baker also asks this court to strike all of Plaintiff's allegations relating to the automatic charging of an optional fee. As set forth in Plaintiff's opposition to Ron Baker's demurrer, Plaintiff has properly pleaded a claim for violation of the CLRA and the Unfair Competition Law. Therefore, Plaintiff's allegations relating to the Optional DMV Electronic Filing Fee should not be stricken.

1

1    Accordingly, Plaintiff's allegations are sufficient to support both claims at this
2  point.  Defendant's motion to strike should be denied in its entirety.

3  II.    Standards For Motions To Strike

4    Motions to strike are disfavored, particularly in consumer cases like this one.
5  (*See, e.g.*, Robert I. Weil & Ira A. Brown, Jr. California Practice Guide: Civil Procedure
6  Before Trial 7:197 (The Rutter Group 1999).)  Rather, complaints are to be construed
7  "liberally . . . with a view to substantial justice." (C.C.P. § 452.)  Thus, motions to
8  strike must be used with caution and sparingly.  (*PH II, Inc. v. Sup. Ct.* (1995) 33
9  Cal.App.4th 1680, 1682-83.)  Finally, as with demurrers, on a motion to strike, the
10  Court must accept the statement of facts alleged in the Second Amended Complaint as
11  true, construed in the light most favorable to Plaintiff, to determine if such claims are
12  properly alleged as a matter of law.  (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*
13  (1998) 17 Cal.4th 553, 558.)

14  III.    Standards For Pleading A Punitive Damages Claim

15    Ron Baker's motion is premised on its contention there are heightened pleading
16  requirements to state a claim for punitive damages.  This used to be the rule. Prior to
17  the 1980 and 1988 amendments to Civil Code § 3295, plaintiffs could be tempted to use
18  baseless allegations of punitive damages to request discovery into a defendant's
19  sensitive financial records in order to pressure defendants into settling cases.  Thus,
20  in 1980, the Legislature enacted Civil Code § 3295(c), which limits a plaintiff's ability
21  to obtain pretrial discovery of a defendant's financial condition.  (*See Jabro v. Superior*
22  *Court* (2002) 95 Cal.App.4th 754, 756-757.)  Then, in 1988, Civil Code § 3295(d) was
23  added, permitting a defendant to bifurcate punitive damages until after there is a
24  finding of malice, oppression, or fraud as required by Civil Code § 3294.

25    These statutory changes created more protections for defendants.  Prior to the
26  amendment to Civil Code § 3295, courts needed to scrutinize the allegations closely to
27  prevent harassment.   Now, Civil Code § 3295 provides sufficient protections for
28  defendants, allowing a plaintiff to investigate whether such claims can be proven

2

1  without the risk of defendants being harassed. In light of the new protections afforded

2  by the amendments, regular pleading standards are sufficient. Thus, it is questionable

3  whether a heightened pleading requirement still exists for pleading anything in a

4  California complaint other than stating a cause of action for fraud. (*See Committee on*

5  *Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216 (stating

6  that fraud claims are the only area where the common law rule of heightened pleading

7  still exists) (superseded by statute on other grounds, *see* Bus. & Prof. Code § 17204 and

8  Proposition 64); Weil & Brown, Cal. Prac. Guide: Civ. Pro. Before Trial, § 6:158 (The

9  Rutter Group 2011).) As long as the basis for the claim is apparent from the context

10 of the entire complaint, no further specificity is required. (*See Perkins v. Superior*

11 *Court* (1981) 117 Cal.App.3d 1, 6.) Even in the specific context of punitive damages,

12 it is accepted practice for a plaintiff to plead the language of Civil Code § 3294 when

13 sufficient facts are alleged to support the allegation. (*See id.*, at 6-7.) Allegations of

14 "ultimate facts" are all that is necessary to survive a motion to strike punitive damage

15 allegations. (*See Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255.)

16      Indeed, now, allegations of fraud – without more – are sufficient to survive a

17 motion to strike punitive damages at the pleading stage. (*See* Civil Code § 3294(a);

18 *Stevens,* 180 Cal.App.3d at 610 ("A fraud cause seeking punitive damages need not

19 include an allegation that the fraud was motivated by the malicious desire to inflict

20 injury upon the victim. The pleading of fraud is sufficient.").)

21 IV.    **Plaintiff's Complaint Properly Alleges a Claim for Punitive Damages**

22      A.    **Plaintiff Clearly Alleged Facts Supporting "Fraud" Under Civil Code**

23           **§ 3294**

24      Plaintiff's allegations satisfy these tests. Plaintiff pleaded "unfair or deceptive

25 acts or practices" in violation of the CLRA, which specifically authorizes punitive

26 damages. (Civil Code § 1780(a)(4).) This is sufficient at this point in the litigation.

27      Specifically, Defendants attack the requests for punitive damages attached to

28 each of the three CLRA claims against Ron Baker in the Second Amended Complaint

3

1   (in the First, Fourth, and Ninth Causes of Action). Among other portions of the CLRA,
2   each of these claims contains allegations Defendant "represented the transactions
3   conferred or involved rights, remedies, or obligations which they did not have or
4   involve, or which were prohibited by law," which is a violation of Civil Code
5   § 1770(a)(14). (*See* SAC, ¶¶ 71(b), 104(b), and 150(e).) The Court of Appeal has noted
6   Civil Code § 1770(a)(14) is the codification of a specific type of fraud claim. (*See Wang*
7   *v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 870.) Thus, because Plaintiff has
8   adequately pleaded claims for a violation of Civil Code § 1770(a)(14), he has pleaded
9   a type of fraud claim and that is also enough to plead a claim for punitive damages for
10  the same conduct. (*See Stevens,* 180 Cal.App.3d at 610.) The Court does not need to
11  go any further to find sufficient allegations to survive a motion to strike.

12      If the Court did look further, Plaintiff's SAC contains other allegations to
13  support his claim for punitive damages. The SAC starts off alleging "a series of
14  unlawful and deceptive business practices." (SAC, ¶ 1.) Plaintiffs allege "[t]hese
15  business practices are engaged in for one purpose – to sell vehicles to customers and
16  earn extra profits." (*Ibid.*) In other words, Plaintiff's very first allegation makes it
17  clear he is claiming misrepresentations and deceit "on the part of the defendant
18  thereby depriving a person of property or legal rights or otherwise causing injury."
19  (Civil Code § 3294(c)(3).)

20      Having set the tone, the rest of the SAC continues with the specifics of the
21  alleged deceptive and fraudulent conduct supporting for each of the three CLRA claims
22  requesting punitive damages. For example, for Class 1 CLRA claim (the First Cause
23  of Action), Plaintiff alleges Ron Baker had a practice of falsely disclosing license fees
24  and concealing the amount of registration, transfer, and titling fees due. (*See* SAC,
25  ¶¶ 72-73.) For the Class 2 CLRA claim (the Fourth Cause of Action), Plaintiff alleges
26  Ron Baker had a practice of automatically charging all of its customers for an
27  "optional" fee, without ever getting their permission, thereby depriving the customers
28  of property and legal rights. (*See* SAC, ¶ 106.) Finally, for his individual CLRA claim

4

Plaintiff's Opposition to Defendant Ron Baker Chevrolet's Motion to Strike Portions of Plaintiff's
Second Amended Complaint

(the Ninth Cause of Action), Plaintiff alleges Ron Baker engaged in a slew of misrepresentations which were meant to – and did – deprive Plaintiff of property and legal rights, such as selling vehicles over advertised price,  failing to disclose prior accident damage, and "packing" customers with after-market products and services. (*See* SAC ¶ 154.)  These allegations all constitute allegations of "fraud" sufficient to state a claim for punitive damages under Civil Code § 3294(c).

Because the allegations of fraud are sufficient to state a claim for punitive damages, Plaintiff did not focus on their possible, additional allegations regarding malice in the form of "conduct which is intended by the defendant to cause injury." (Civil Code § 3294(c)(1).)  However, if the Court is concerned about the sufficiency of the pleadings for some reasons, Plaintiff requests leave not only to clarify his fraud allegations but to add allegations about how Defendants' conduct was intended to cause injury in the form of the deprivation of property and legal rights.

## V.   Ron Baker's Motion to Strike Allegations Relating To The Optional DMV Fee Claims Must Be Denied

### A.   Background on the Optional DMV Electronic Filing Fee

The Department of Motor Vehicles established a Business Partner Automation Program whereby vehicle dealerships could perform certain registration matters electronically in exchange for a fee.  Pursuant to the California Code of Regulations, dealerships are permitted to offer their customers the option of having the car registered electronically instead of using manual forms.  As set out on the DMV's website, this program provides numerous benefits to the dealership.  If the customer agrees to pay the fee, not only does the dealership save time and effort completing the registration paperwork, the dealership makes money doing so. is permitted to charge the consumers – who *agree* to participate in the Program – a maximum fee.  To that end, the DMV issued DMV Form 4020 which states the fee may be charged *if the purchaser elects to utilize the service*.  A true and correct copy of DMV Form 4020 is attached to Plaintiff's Request for Judicial Notice as Exhibit 1.

5

1    Dealerships are required to disclose this fee on any purchase contract or lease
2    as an "Optional DMV Electronic Filing Fee" and to make such fee truly an option (not
3    an automatic, mandatory fee) for its customers. (*See, e.g.*, Cal. Civ. Code
4    §§ 2982(a)(1)(E), 2985.8(c)(6).)   Rather than discuss the DMV's electronic filling
5    program and the fee with its customers and provide them with the option to pay the
6    fee as required by law, however, the SAC alleges Ron Baker unilaterally decided to
7    charge every one of its customers the fee, regardless of the customers' desire to pay the
8    fee.  Further, Ron Baker automatically charged this fee by hiding it in the middle of
9    a dense, lengthy document rather than to actually give the customer the option of
10   selecting it.

11    Ron Baker argues the allegations should be ignored because the charges are
12   disclosed on the contracts.  But this is a lawsuit alleging Ron Baker unfairly and
13   unlawfully snuck terms into a consumer contract. The CLRA recognizes consumers are
14   not always sophisticated and require protection.  Thus, it specifically prohibits this
15   type of situation, where a sophisticated retailer provides a less sophisticated customer
16   with a written transaction that does not contain all of the agreed upon terms.  (*See,
17   e.g.*, Civil Code § 1770(a)(14) & (16).)   Ignoring the purpose of the CLRA and its
18   requirements, Ron Baker essentially claims, so long as the words "Optional DMV
19   Electronic Filing Fee" appear somewhere in print on the sales contract, no amount of
20   fraud or deception regarding the fee could ever be a violation of any law. For example,
21   if Ron Baker told its customers it was not the customers' option whether to pay and
22   that the fee was mandatory, or if the dealership simply imposed the fee on everyone
23   automatically and regardless of any attempt to decline the fee, or if the dealership
24   refused to tell anyone what the fee was for, or if the dealership in any way hid what
25   was written on the contract from the consumer, or if the fee was never effectively
26   presented to the customer with a realistic chance to decline, the California Legislature
27   has proclaimed all those acts to be perfectly legal so long as the fee was titled correctly
28   on the contract. In Ron Baker's eyes, whether the fee was *truly* optional for consumers

6

1   is irrelevant. . All that matters is that it was somewhere labeled "Optional DMV

2   Electronic Filing Fee" on the contract. Such a result would be completely contrary to

3   any fair notion of what the Legislature intended when it created the program.

4        Moreover, just because Plaintiff did not notice Ron Baker was sneaking this fee

5   in among all the other terms and numbers on the face of the lengthy, dense sale

6   contract, does not establish Ron Baker complied with its legal obligation to make the

7   fee truly optional. More importantly, if the fee is truly optional, why would a customer

8   have to ask to have the fee removed from the contract? A fee that is imposed unless

9   the consumer requests otherwise is not optional. Rather, if no fee is charged unless the

10  consumer requests the service, then the fee is truly optional.

11       Here, the SAC alleges Ron Baker violated the CLRA by representing the

12  contracts contained the terms of the deal as previously stated and/or by representing

13  the contracts involved rights, remedies, or obligations which it did not. (SAC, ¶ 104.)

14  Ron Baker's conduct in automatically charging customers for the fee and failing to

15  make the fee truly optional by discussing it with customers first and obtaining

16  agreement to pay the fee *before* including the charge in the contracts makes the fee

17  anything but "optional."

18      **B.**    **Plaintiff Stated a Claim for Violation of the CLRA**

19       The CLRA prohibits representing a transaction involves obligations which it

20  does not have. (Civil Code § 1770(a)(14).) Plaintiff alleges that by automatically

21  charging him a fee he had the option to decline, Ron Baker represented the transaction

22  included the obligation that Plaintiff had to pay the Optional DMV Electronic Filing

23  Fee. Plaintiff alleges this misrepresentation caused him damage because he would not

24  have agreed to pay the fee had he been given an option not to pay it. (SAC, ¶ 107.)

25  Therefore, he is damaged, at a minimum, in the amount of $29.

26       In *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 641, the Supreme Court

27  held that "some kind of damage must result" from the unlawful practice alleged to

28  violate the CLRA. Since Plaintiff alleges he paid a fee he would not have paid had he

1  been given the option, then he have suffered monetary damage as a result of Ron

2  Baker's automatic imposition of the fee. Accordingly, Plaintiff properly pleaded a claim

3  under the CLRA.

4        C.    **Plaintiff Stated a Claim for Violation of the UCL**

5        The UCL prohibits unlawful, unfair or fraudulent business acts or practices.

6  (Bus. & Prof. Code §§ 17200, *et seq.*)  Plaintiff alleges automatically charging the

7  Optional DMV Electronic Filing Fee is unlawful (it violates the CLRA) and/or unfair

8  (because you shouldn't have to pay an optional fee if you don't want to). (SAC. ¶¶ 114-

9  115.) Plaintiff alleges he suffered injury in fact and lost money as a result of the unfair

10  competition because he paid a fee he did not have to pay. (*Id.,* ¶ 113.)

11        In *Kwikset v. Superior Court* (2011) 51 Cal.4th 310, 327 (citations omitted), the

12  Supreme Court held that reliance "was an immediate cause of the injury-producing

13  conduct." Here, Plaintiff alleges he would not have paid the fee if given an option not

14  to. By being automatically charged the fee, he was immediately damaged by incurring

15  a cost he would otherwise not have paid.  The Supreme Court also held a consumer

16  satisfies the UCL's standing requirement by alleging they would not have paid for a

17  product but for the misrepresentation. (*Id.,* at 330.) Since Plaintiff alleges he would

18  not have paid for the Optional DMV Electronic Filing Fee had he been given an option

19  not to pay it, he has adequately pleaded a claim under the UCL.

20  **V.    Conclusion**

21        Ron Baker's motion to strike should be denied in its entirety.  Alternatively, if

22  the Court is inclined to grant the motion, Plaintiff requests leave to amend the SAC

23  to address any purported deficiencies. (*See Aubry v. Tri-City Hospital Dist.* (1992) 2

24  Cal.4th 962, 967; *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631,

25  635-36.)

26  DATED: May 4, 2012               ROSNER, BARRY & BABBITT, LLP

27                                 By: _____

28                                    CHRISTOPHER P. BARRY
                                  Attorneys for Plaintiff

1 | ROSNER, BARRY & BABBITT, LLP
   | Hallen D. Rosner, SBN: 109740
2 | Christopher P. Barry, SBN: 179308
   | Angela J. Smith, SBN: 216876
3 | 10085 Carroll Canyon Road, Suite 100
   | San Diego, California 92131
4 | TEL: (858) 348-1005
   | FAX: (858) 348-1150
5
   | Attorneys for Plaintiff
6

7         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8           **IN AND FOR THE COUNTY OF SAN DIEGO**

9

10 | JOSE MONDRAGON, individually     CASE NO. 37-2011-00103236-CU-CO-CTL
    | and on behalf of all others similarly
11 | situated,                  <u>**CLASS ACTION**</u>

12            Plaintiff,         **PROOF OF SERVICE**

13       v.

14 | RON BAKER CHEVROLET, a
    | California Corporation;
15 | CAPITAL ONE AUTO FINANCE, a
    | business entity form unknown; and
16 | DOES 1 through 10, inclusive,

17

18            Defendants.

19

20

21

22

23

24

25

26

27

28

## <u>PROOF OF SERVICE</u>

*MONDRAGON v. RON BAKER CHEVROLET*
CASE NO. 37-2011-00103236-CU-CO-CTL

    I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 10085 Carroll Canyon Road, First Floor, San Diego, California 92131.

    On May 7, 2012, I served the foregoing document(s) described as:

**Plaintiff's Opposition to Defendant Ron Baker Chevrolet's Motion to Strike Portions of Plaintiff's Second Amended Complaint**

on the interested parties in this action at San Diego, California addressed as follows:

| | |
|---|---|
| Thomas R. Kelleher, Esq.<br>Walsh McKean Furcolo LLP<br>625 Broadway, Suite 1402<br>San Diego, CA 92101<br><br>Telephone:   (619) 232-8486<br>Facsimile:    (619) 232-2691<br><br>Attorneys for Defendant<br>Ron Baker Chevrolet | Hemmy So, Esq.<br>Doll Amir & Eley LLP<br>1888 Century Park East, Suite 1850<br>Los Angeles, CA 90067<br><br>Telephone:   (310) 557-9100<br>Facsimile:    (310) 557-9101<br><br>Attorneys for Defendant<br>Capital One Financial Corporation |

☐    **BY U.S. MAIL:**  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing.  Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid, at San Diego, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY FACSIMILE:**  On the date below, the document(s) were transmitted by facsimile transmission to each of the parties at the facsimile number(s) listed above and the transmission(s) reported as complete and without error.  A true and correct copy of the said transmission report is attached hereto and incorporated herein by reference.

☐    **(BY ELECTRONIC MAIL, CRC 2.260 and CCP §2015.5):** The documents were transmitted via email from amie@rbblawgroup.com on _____ at am/pm to each of the parties at the email address(s) listed above and the transmission(s) reported complete and without error.

1

1

[X]   **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the above addressed. I caused such envelope or package to be deposited in a regularly utilized drop box of the overnight delivery carrier.

2

3

[]    **BY PERSONAL SERVICE:** I caused to be personally delivered the documents listed above to the addressee(s) named above.

4

5

[X]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

6

[]    **(FEDERAL]** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

7

8

Executed on May 7, 2012 at San Diego, California.

9

10                                              Amie Olesko

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE