# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MONDRAGON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RON BAKER CHEVROLET, a California corporation; CAPITAL ONE AUTO FINANCE, a business entity form unknown; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 13-CV-0363-H (RBB)<br><br>**FINAL JUDGMENT AND ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASSES;**<br><br>**(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENTS;**<br><br>**(3) APPROVING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS**<br><br>[Doc. Nos. 51, 53] |

On January 30, 2015, Jose Mondragon ("Plaintiff") filed a motion for final approval of two class settlements and certification of two settlement classes. (Doc. No. 53.) On January 30, 2015, Plaintiff also filed a motion for attorneys' fees, expenses and costs, and an incentive award for the class representative. (Doc. No. 51.) No class members filed an objection to the settlement agreements. The Court held a hearing on

April 6, 2015. No objectors appeared at the hearing. Attorney Gregory T. Babbitt appeared for Plaintiff. Attorney Hunter R. Eley appeared for Defendant Capital One Auto Finance. Attorney Thomas R. Kelleher appeared for Defendant Ron Baker Chevrolet. After due consideration, the Court certifies the settlement classes, grants final approval of the settlements, approves Plaintiff's request for attorneys' fees, costs, and expenses, approves the incentive awards for the class representative, and enters final judgment.

## Background

### I.  Factual and Procedural Background

On December 30, 2011, Plaintiff filed a purported class action against Defendants Ron Baker Chevrolet ("Ron Baker") and Capital One Auto Finance ("Capital One") in the Superior Court for the County of San Diego. See Mondragon v. Ron Baker Chevrolet, et al., Case No. 37-2011-00103236-CU-CO-CTL. Plaintiff alleged that Defendants violated the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750 et seq.), the Automobile Sales Finance Act (Cal. Civ. Code § 2981 et seq.), and the Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) by failing to separately itemize certain fees in their customers' retail installment sale contracts. (Doc. No. 1-1 at 111.) Defendants removed the action to federal court on February 13, 2013 following extensive discovery in state court. (Doc. No. 1; Doc. No. 53-1 at 2.)

On March 8, 2013, Plaintiff filed a motion to remand the case to state court, arguing that the Court lacked subject matter jurisdiction because the "local controversy" exception to the Class Action Fairness Act ("CAFA") applied. (Doc. No. 12 at 2.) On April 15, 2013, the Court granted Plaintiff's motion to remand. (Doc. No. 15.) The Ninth Circuit vacated, holding that Plaintiff had failed to provide sufficient evidence that CAFA's local controversy exception applied. See Mondragon v. Capital One Auto Fin., et al., 736 F.3d 880 (9th Cir. 2013). The Ninth Circuit remanded with the instruction that Plaintiff could choose to renew his motion to remand if he gathered evidence proving that CAFA's local controversy exception applied. Id. at 886.

After the Ninth Circuit remanded, Plaintiff and Defendants entered into mediation. (Doc. No. 51-1 at 3.) On November 17, 2014, Plaintiff filed a motion for preliminary approval of two class action settlement agreements and conditional certification of two settlement classes. (Doc. No. 42.) On December 15, 2014, the Court granted preliminary approval of the settlement agreements, provisionally certified two settlement classes under Federal Rule of Civil Procedure 23(b)(3), and approved the form and manner of notice. (Doc. No. 46 at 2.)

On January 30, 2015, Plaintiff filed a motion for final approval of the class settlement agreements. (Doc. No. 53.) Also on January 30, 2015, Plaintiff filed a motion for attorneys' fees, expenses and costs, and incentive awards for the class representative. (Doc. No. 51.) No member of either class filed an objection to the settlement agreements.

**II.   The Settlement Agreements**

The settlement agreements benefit two classes, the Capital One Settlement Class and the Ron Baker Settlement Class. The "Capital One Settlement Class" includes:

> [A]ll persons who, between December 30, 2007, and December 30, 2011, (1) purchased a vehicle in California for personal use to be registered in the State of California, (2) signed a Retail Installment Sale Contract that left blank, or included the disclosures "Incl." (or any word or abbreviation conveying the concept "Included"), "N/A", "None", or "0" as the amount due for "Registration/ Transfer/Titling Fees" on Line 2.B. of the Itemization of Amount Financed Section of the Retail Installment Sale Contract, and (3) whose Retail Installment Sale Contract was assigned to Capital One. The Settlement Class excludes all employees of Capital One and its agents and affiliates. (Doc. No. 42-2 at 16-17, ¶ 2.33.)

The "Ron Baker Settlement Class" includes:

> [A]ll persons who, between December 30, 2007, and December 30, 2011, (1) purchased a vehicle from Defendant Ron Baker Chevrolet ("Ron Baker") for personal use to be registered in the State of California, and (2) signed a Retail Installment Sale Contract ("RISC") that included the disclosure "Incl." as the amount due for "registration/transfer/titling fees" on Line 2.B. of the Itemization of Amount Financed Section of the RISC[.] The Settlement Class excludes all employees of Ron Baker Chevrolet and its agents and affiliates. (Id. at 53, ¶ 2.33.)

Under the Capital One settlement agreement, Capital One will establish a

settlement fund of $2,485,000.00 (Id. at 17, ¶ 2.35.) Plaintiff states that 9,834 Capital One Settlement Class members exist and that each class member will receive a straight-pay settlement of approximately $185 per qualifying transaction. (Doc. No. 51-1 at 4; Doc. No. 53-1 at 7.) Ron Baker will establish a settlement fund of $480,000. (Doc. No. 42-2 at 53, ¶ 2.35.) Plaintiff states that 4,831 Ron Baker Settlement Class members exist and that each class member will receive a straight-pay settlement of approximately $67.[1] (Doc. No. 51-1 at 4; Doc. No. 53-1 at 7.) Both settlement agreements provide that the settlement funds will pay claimants, administrative costs, the class representative incentive awards, notice costs, and class counsel's costs, fees, and expenses. (Doc. No. 42-2 at 17, 53.) In return, members of both classes release the class claims Plaintiff has pursued in this lawsuit. (Id. at 25, 62.) If any class member's check fails to clear within 120 days after distribution, the settlement fund will redistribute it equally between class members who did cash checks during a second round of distribution. (Id. at 19-20, 56.) Consumers for Auto Reliability and Safety ("CARS"), the *cy pres* recipient, will receive any money that remains after the second round of distribution. (Id. at 25, 62.) Class counsel will receive a maximum of 25% of the settlement funds for reasonable fees, costs, and expenses. (Id. at 20, 56-57.) The class representative will receive a $5,000 incentive award per class. (Id.)

**III.  Class Members' Notice of Settlement**

Defendants Capital One and Ron Baker Chevrolet provided their class lists to the settlement administrator on December 18, 2014. (Doc. No. 58-1, Declaration of Karen Rogen ("Rogen Decl.") ¶ 3.) The Ron Baker Class Member List contained 4,913 persons and the Capital One Class Member List contained 10,651 persons. (Id. at ¶¶ 3, 6.) On January 12, 2015, the settlement administrator mailed the Notices of Proposed Class Action and Settlement Hearing ("Ron Baker Notice Package" and "Capital One

---

[1] The per-transaction settlement amounts are lower than the amounts set out in the motion for preliminary approval because each class had more members than the parties initially estimated. (Doc. No. 53-1 at 7.)

1  Notice Package") via first class mail after updating the class members' addresses. (Id.
2  at ¶ 4; Doc. No. 53-3, Declaration of Christopher P. Barry ("Barry Decl.") ¶ 12.) As of
3  March 27, 2015, the settlement administrator has delivered 4,649 of the Ron Baker
4  Notice Packages and 10,258 of the Capital One Notice Packages. (Doc. No. 58-1 at ¶¶
5  5, 8.)

6        The deadline for members of both the Ron Baker Settlement Class and the
7  Capital One Settlement Class to request to be excluded from their classes was a
8  postmarked deadline of February 9, 2015. As of March 30, 2015, the settlement
9  administrator had received two requests for exclusion from the Ron Baker Class
10 Members and one request for exclusion from a Capital One Class Member. (Id. at ¶ 9.)
11 Additionally, class members had a postmarked deadline of February 9, 2015 to file
12 objections to their settlement agreements. As of March 30, 2015, the settlement
13 administrator had not received any objections. (Id. at ¶ 10.)

14 **Discussion**

15       When the parties reach a settlement agreement prior to class certification, the
16 Court is under an obligation to "peruse the proposed compromise to ratify both the
17 propriety of the certification and the fairness of the settlement." Staton v. Boeing Co.,
18 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class
19 exists, and second, determine whether the proposed settlement is "fundamentally fair,
20 adequate, and reasonable." Id.

21 **I.   Class Certification**

22       A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of
23 Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b).
24 Once subsection (a) is satisfied, the purported class must then fulfill the requirements
25 of Rule 23(b)(3). Here, Plaintiff seeks to certify two classes for settlement purposes:
26 the Capital One Settlement Class and the Ron Baker Settlement Class. (Doc. No. 53-1.)
27 //
28 //

### A. Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff asserts that the Capital One Settlement Class consists of 9,834 consumers and that the Ron Baker Settlement Class consists of 4,831 consumers. (Doc. No. 53-3 at 3.) Accordingly, the class satisfies the numerosity requirement. See, e.g., Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (forty class members numerous enough to fulfill Rule 23(a)(1)).

Commonality requires a showing that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe Rule 23(a)(2) permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). Here, there are questions of law and fact that are common to both classes, such as whether the fee disclosures prepared by Ron Baker or assigned to Capital One were adequate. (Doc. No. 53-1 at 4-5.) Accordingly, the classes meet the commonality prerequisite.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiff and the Ron Baker and Capital One class

members share the same injury: they signed contracts that failed to comply with the Automobile Sales Finance Act. (Doc. No. 53-1 at 5.) As Plaintiff's claims are reasonably co-extensive with the claims of absent class members, the class meets the typicality prerequisite.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there are no conflicts of interest between Plaintiff and the absent class members. Plaintiff and his counsel have vigorously participated in the litigation process thus far, and class counsel has extensive experience in automobile financing class actions. (Doc. No. 51-1 at 4, 11; Doc. No. 51-2, Declaration of Jose Mondragon ("Mondragon Decl."), at ¶¶ 6, 7, 8, 11.) Moreover, class members of both the Ron Baker Settlement Class and the Capital One Settlement Class can opt out of the settlements. (Doc. No. 42-2 at 14, 22, 50, 59-60.) As a result, Plaintiff and his counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiff has met all of the requirements of Rule 23(a).

**B.     Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Vinole v. Countywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009). Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Products, Inc. v. Windsor, 521

U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

"The main concern in the predominance inquiry [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009). This analysis requires more than proof of common issues of law and fact. Hanlon, 150 F.3d at 1022. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (internal quotation omitted). Here, Plaintiff and the members of both classes have contracts with the same allegedly deficient disclosures. (Doc. No. 53-1 at 4-5.) Moreover, their legal remedies are the same. (Id.) Consequently, Plaintiff has met his burden of showing that the issues common to the classes predominate over any individual issues. Fed. R. Civ. P. 23(b)(3).

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." Wolin, 617 F.3d at 1175-76. Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members from either the Capital One Settlement Class or the Ron Baker Settlement Class wish to pursue their claims individually. Moreover, class-wide treatment of these issues will be efficient because the settlement class members' claims appear to involve a relatively small amount of damages per member. (Doc. No. 53-1 at 7.) Because Plaintiff has satisfied the requirements of Rule 23(b)(3), the Court grants preliminary certification to the settlement classes.

**II.    Settlement Agreements**

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting

Hanlon, 150 F.3d at 1026). To make this determination, a court must consider a number of factors, including: (1) the strength of plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed, and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of class members to the proposed settlement. Staton, 327 F.3d at 959. In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party, in this instance, a private mediator and a magistrate judge. See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

**A.  The Strength of Plaintiff's Case and Risk of Further Litigation**

All parties have expended significant time, effort, and resources supporting their positions, and would continue to do so if the settlement failed to get final approval. (Doc. No. 51-1 at 3-4, 11; Doc. No. 51-2, Mondragon Decl., at ¶¶ 6, 7, 8, 11; Doc. No. 51-3, Declaration of Hallen D. Rosner ("Rosner Decl."), at 6-15.) The disputed factual and legal issues would be complex and costly to resolve before and at trial. (Doc. No.

1  51-1 at 3.) All parties have considered the uncertainty and risk of the outcome of future
2  litigation, the burdens of proof for liability and damages, as well as the general
3  difficulties and delays of litigation. (Id.; Doc. No. 53-1 at 6.) These considerations led
4  the parties to conclude that a timely settlement would be best for all involved parties.
5  See Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t
6  is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive
7  litigation that induce consensual settlement.") (emphasis, internal quotation marks, and
8  citation omitted). The Court agrees that the recovery through settlement confers a
9  substantial benefit to the class that outweighs the potential recovery that could have
10 been obtained through full litigation.

11 **B.     The Amount Offered in Settlement**

12 The proposed settlement provides class members with immediate monetary relief
13 by establishing a common fund of $2,485,000 for the Capital One Settlement Class and
14 $480,000 for the Ron Baker Settlement Class. (Doc. No. 42-2 at 17, 53.) Capital One
15 Settlement Class members will recover a straight-pay settlement of approximately $185
16 per qualifying transaction, while Ron Baker Settlement Class members will recover a
17 straight-pay settlement of approximately $67 per qualifying transaction. (Doc. No. 53-1
18 at 7.) If a class member's check does not clear within 120 days of distribution, the
19 settlement fund will redistribute it equally between class members who did cash checks
20 during a second round of distribution. (Doc. No. 42-2 at 19-20, 56.) If money remains
21 in the settlement fund after all valid claims, fees, and expenses are paid, the remaining
22 amount will be distributed to the cy pres recipient. This settlement is a good result for
23 the class and eliminates the risks, expenses, and delay associated with continued
24 litigation. Moreover, the settlement amount is the result of arm's-length negotiation
25 conducted by experienced counsel. Accordingly, the Court concludes that the amount
26 offered in settlement weighs in favor of granting final approval of the settlement.
27 //
28 //

### C. The Extent of Discovery Completed and Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The parties reached the settlement agreements almost three years after the first complaint was filed in state court and after conducting extensive discovery and analysis of Plaintiff's claims. (Doc. No. 1; Doc. No. 53-1 at 2.) Among other efforts, the parties deposed the class representative, Ron Baker Chevrolet's corporate designee, Capital One's corporate designee, El Cajon Ford's corporate designee, the Department of Motor Vehicle's corporate designee. (Doc. No. 1-16 at 34; Doc. No. 51-2, Mondragon Decl., ¶7.) Class counsel was able to negotiate the settlement based on a full record and a thorough understanding of the strengths and weaknesses of the claims. Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh in favor of granting final approval.

### D. The Experience and Views of Counsel

Plaintiff's counsel has extensive experience acting as class counsel in consumer class action cases, including those arising under the Automobile Sales Finance Act. (Doc. No. 51-3, Rosner Decl., ¶¶ 8-9; Doc. No. 53-3, Barry Decl., ¶ 12.) Class counsel recommends the settlement as both fair and adequate, a factor that weighs in favor of granting final approval. (Id.)

### E. The Reaction of the Class Members to the Proposed Settlement

The members of the Ron Baker and Capital One Settlement Classes had a postmarked deadline of February 9, 2015 to request an exclusion from the settlements or to object to the settlement agreements. The settlement administrator reported that, as of March 30, 2015, two members of the Ron Baker Settlement Class and one member of the Capital One Settlement Class had requested to be excluded from their classes. (Doc. No. 58-1, Rogan Decl., ¶ 10.) The settlement administrator also reported that, as

of March 30, 2015, no members of either class had objected to the settlement. (Id.) The lack of objectors supports the fairness, reasonableness, and adequacy of the settlement. See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had filed no opposition). Accordingly, the reaction of the class members weighs in favor of granting final approval.

### F. No Evidence of Collusion Between the Parties

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Stanton, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The two $5,000 incentive awards for Plaintiff Jose Mondragon do not appear to be the result of collusion. The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . .[and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Plaintiff has protected the interests of the classes by engaging in investigation and discovery, attending depositions, and assisting counsel with other aspects of the case. (Doc. No. 51-1 at 11; Doc. No. 51-2, Mondragon Decl. ¶¶ 6-8, 11.) Therefore, the $5,000 awards to the class representative appears to be reasonable in light of his effort in this litigation.

Moreover, the cy pres award does not appear to be the result of collusion. Where a proposed settlement contains a charitable gift, known as a cy pres award, a court must "ensure that the settlement retains some connection to the plaintiff class and the

underlying claims." <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 865 (9th Cir. 2012). Otherwise, the award may "answer to the whims and self interests of the parties, their counsel, or the court." <u>Nachshin v. AOL, LLC</u>, 663 F.3D 1034, 1039 (9th Cir. 2011). Therefore, "a driving nexus between the plaintiff class and the cy pres beneficiaries" must exist. <u>Nachshin</u>, 663 F.3d at 1038. In this instance, CARS, the cy pres recipient, has provided a declaration that describes its dedication to preventing motor vehicle-related losses, including economic losses through. (Doc. No. 52-3 at ¶ 2.) There is no reason to believe the proposed cy pres awards are the result of collusion.

Finally, the attorneys' fees do not appear to be the result of collusion. Plaintiff's counsel may simultaneously negotiate the merits of the action and their attorneys' fees. <u>Stanton</u>, 327 F.3d at 971. The attorneys' fees, litigation costs, and administration costs sought by Plaintiff's counsel are reasonable under the circumstances.

After considering all applicable factors, the Court concludes the settlement agreements are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); <u>Staton</u>, 327 F.3d at 959. Accordingly, the Court grants Plaintiff's motion for final approval of the settlements.

**III.  Cy Pres Distribution**

Further, the Court approves the parties' choice in cy pres recipients. "Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." <u>Nachsin</u>, 663 F.3d at 1036 (9th Cir. 2011). Courts have criticized cy pres distributions that "fail to (1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." <u>Id.</u> at 1040; <u>see also</u> <u>Six Mexican Workers v. Arizona Citrus Growers, Inc.</u>, 904 F.2d 1301, 1308-09 (9th Cir. 1990). Here, however, CARS, the cy pres recipient under the settlement agreements, is a national, non-profit consumer advocacy group that promotes vehicle safety and consumer protections. Among other efforts, CARS has led the enactment of automobile-related consumer protection laws

in California. (Doc. No. 53-2 at ¶ 2.) CARS' mission and work have a strong nexus to the underlying lawsuit, laws, and class member interests. (Doc. No. 53-1 at 15.) Accordingly, CARS is an appropriate organization to receive cy pres distributions in the settlement of this action.

## IV. Attorneys' Fees and Expenses

With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark" for common fund cases. <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." <u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (1990). Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. <u>Powers v. Eichen</u>, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, Plaintiff has requested an award of $621,250 in attorneys' fees, costs, and expenses from the Capital One Settlement Fund and $120,000 in attorneys' fees, costs, and expenses from the Ron Baker Settlement Fund, for a total of $741,250.00. (Doc. No. 52 at ¶¶ 6-7; Doc. No. 55 at 2.) The requested amounts of attorneys' fees, costs, and expenses is 25% of each fund.

The results achieved in this case are favorable. Class members are provided with immediate monetary and injunctive relief, and the overall award is substantial. Additionally, the risks of litigation were real and substantial. Further, the complexity and potential duration of the case, coupled with the intensity of settlement negotiations, indicate that a 25% award is reasonable. The request for attorneys' fees in the amount

of 25% of the common funds meets the Ninth Circuit's 25% benchmark. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"). Finally, class counsel has represented that $741,250 reflects a multiplier of 1.63 from the amount that would have been calculated using the lodestar method. (Doc. No. 51-1 at 9.) See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944-45 (9th Cir. 2011) (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method). Class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation. (Doc. No. 51-1 at 9.) In light of the risks borne by class counsel, the quality of representation, and the resulting settlement agreement, a 1.63 multiplier from the lodestar method calculation is reasonable.

Plaintiff has represented to the Court that the settlement administrator has incurred costs of $28,243 for the Capital One Settlement Fund and $17,470 for the Ron Baker Settlement Fund. (Doc. No. 52 at ¶¶ 7-8.) Plaintiff's request is reasonable because the settlement classes are larger than initially estimated.[2] (Compare Doc. No. 42 at 14 with Doc. No. 52 at ¶ 15.)

For these reasons, the Court concludes that an award of attorneys' fees, costs, and expenses in the amount of $621,250 from the Capital One Settlement Fund and $120,000 from the Ron Baker Settlement Fund are reasonable and warranted in this case. The Court further concludes that settlement administration fees in the amount of $28,243 for the Capital One Settlement Fund and $17,470 for the Ron Baker Settlement Fund are reasonable. Accordingly, the Court grants Plaintiff's request for attorneys' fees, costs and expenses and settlement administrator fees.

//

---

[2] Plaintiff initially estimated that the settlement administrator would incur costs of $25,053 for the Capital One Settlement Fund and $13,565 for the Ron Baker Settlement Fund. (Doc. No. 52 at ¶ 15.)

**V.     Incentive Payments to Class Representatives**

Finally, the $5,000 incentive awards for Plaintiff Jose Mondragon are reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

After reviewing the factors announced in Van Vranken, the Court concludes that the requested incentive awards for the named Plaintiff are reasonable. The $5,000 awards are well within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000). The named Plaintiff advanced the interests of the absent class members by engaging in investigation and discovery, attending depositions, and assisting counsel with other aspects of the case. (See Doc. No. 51-1 at 11; Doc. No. 51-2, Mondragon Decl. ¶¶ 6-8, 11.) Accordingly, the Court approves the two $5,000 incentive awards for Plaintiff Mondragon.

**Conclusion**

For the reasons stated above, it is ordered that:

1. This Judgment incorporates by reference the definitions in the Class Settlement Agreements filed with the Court on November 17, 2014 (Doc. No. 42-2, "Ron Baker Settlement" and "Capital One Settlement" or "Settlements") and all terms used in this Judgment shall have the same meanings as set forth in the Settlements.

2. The Court has jurisdiction over the subject matter of this action and all parties to the action, including all Ron Baker and Capital One Settlement

Class Members.

3. The Court certifies the Capital One Settlement Class as: All persons who, between December 30, 2007, and December 30, 2011, (1) purchased a vehicle in California for personal use to be registered in the State of California, (2) signed a Retail Installment Sale Contract that left blank, or included the disclosures "Incl." (or any word or abbreviation conveying the concept "Included"), "N/A", "None", or "0" as the amount due for "Registration/ Transfer/Titling Fees" on Line 2.B. of the Itemization of Amount Financed Section of the Retail Installment Sale Contract, and (3) whose Retail Installment Sale Contract was assigned to Capital One. The Settlement Class excludes all employees of Capital One and its agents and affiliates.

4. The Court certifies the Ron Baker Settlement Class as: All persons who, between December 30, 2007, and December 30, 2011, (1) purchased a vehicle from Defendant Ron Baker Chevrolet ("Ron Baker") for personal use to be registered in the State of California, and (2) signed a Retail Installment Sale Contract ("RISC") that included the disclosure "Incl." as the amount due for "registration/transfer/titling fees" on Line 2.B. of the Itemization of Amount Financed Section of the RISC[.] The Settlement Class excludes all employees of Ron Baker Chevrolet and its agents and affiliates.

5. All Persons who satisfy the Capital One Settlement Class and/or Ron Baker Settlement Class definitions above, except those Class Members who timely and validly excluded themselves from the Class, are Settlement Class Members bound by this Judgment.

6. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715 ("CAFA"), and the United States Constitution, including the Due Process Clause.

7. No part of the Settlements, this Judgment, nor the fact of the settlement constitutes any admission by any of the Parties of any liability, wrongdoing or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Litigation.

8. Class Counsel is awarded $621,250 in attorneys' fees, costs, and expenses from the Capital One Settlement Fund and $120,000 in attorneys' fees, costs, and expenses from the Ron Baker Settlement Fund.

9. The Plaintiff Class Representative is entitled to an incentive award of $5,000 per class.

10. The Settlement Administrator is entitled to costs of $28,243 for the Capital One Settlement Fund and $17,470 for the Ron Baker Settlement Fund. The attorneys' fees and expense award, Plaintiff's incentive awards, and the Settlement Administrator costs are to be paid out of the Settlement Funds created by Ron Baker Chevrolet and Capital One Auto Finance pursuant to the time table set forth in the Settlement.

11. Any unclaimed portions of the Settlement Funds must be paid to CARS, the cy pres recipient, in accordance with the terms of the Settlement Agreements.

12. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement, and all matters arising thereunder.

//
//
//
//
//
//
//

13. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.  Final Judgment in this action is entered.  The Court dismisses with prejudice the action, and all Released Claims against each and all Released Persons and without costs to any of the Parties as against the others.

**IT IS SO ORDERED.**

DATED: April 6, 2015

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT